Christina Gilbertson (California Bar No. 236877)
christina@jfnvlaw.com
Jennings & Fulton, LTD
2580 Sorrel Street
Las Vegas, NV 89146
Phone: 702-979-3565

Gregory J. Glaser (California Bar No. 226706)
greg@gregglaser.com
Greg Glaser, Attorney at Law
4399 Buckboard Drive #423
Copperopolis, CA 95228
Phone: 925-642-6651

Joseph S. Gilbert (Nevada Bar No. 9033)
joey@joeygilbertlaw.com
Joey Gilbert & Associates
405 Marsh Avenue
Reno, NV 89509
Phone: 775-284-7700
(Subject to pro hac vice admission)

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT CALIFORNIA

| | |
|---|---|
| AMERICA'S FRONTLINE DOCTORS; Carly Powell; and Deborah Choi, <br><br> *Plaintiffs*, <br><br> v. <br><br> KIM A. WILCOX, in his official capacity as CHANCELLOR OF THE UNIVERSITY OF | **Complaint for Declaratory and Injunctive Relief** |

CALIFORNIA RIVERSIDE; HOWARD GILLMAN, in his official capacity as CHANCELLOR OF THE UNIVERSITY OF CALIFORNIA IRVINE; THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, a Corporation; MICHAEL V. DRAKE, in his official capacity as President of the UNIVERSITY OF CALIFORNIA; and John and Jane Does 1-100,

*Defendants*.

*Federal Jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, and 1343(a).*

## INTRODUCTION

Plaintiffs are students enrolled with the University of California ("UC"), which recently mandated Covid-19 vaccination upon them (even though Plaintiffs have already recovered swiftly from Covid-19 with natural immunity), and upon all other students attending UC this Autumn.  Plaintiffs continue to have robust natural immunity superior to the vaccine-induced immunological response now mandated by State Defendants.

Plaintiffs, and others similarly situated, can work with their healthcare providers to prove their natural immunity through accepted clinical definition and laboratory testing where indicated ("Prescreening"), including, but not limited to, patient history, or a T-cell test.

Covid-19 vaccination is classified as genetic medical intervention.[1]  It

---

[1] For clarity of reference, Plaintiffs are using the names given to the medical products by their manufacturers and Defendants. However, Plaintiffs reject the highly misleading use of the term "vaccine" to describe these medical products, since they are not vaccines within the settled meaning of the term and, instead, are more precisely described as a form of experimental genetic manipulation.

carries both known and unknown risk of harm to Plaintiffs and others, such as serious illness and death.

Plaintiffs seek the issuance of an order to show cause, shifting the burden to Defendants to prove that Defendants' decision to reject scientifically accepted Prescreening methods meets a compelling State interest, and that such decision to reject accepted Prescreening science is narrowly tailored to avoid unnecessary infringement upon Plaintiffs' Constitutional rights.

Plaintiffs further seek declaratory relief that Defendants' unscientific decision to reject Prescreening science, in order to unscientifically propagate Defendants' one-size-fits-all vaccine mandate, imminently threatens the lives of Plaintiffs, and others, and unlawfully segregates them based on their Covid-19 Recovered medical condition and natural mRNA genetic status, which is an unlawful infringement by Defendants upon Plaintiffs' constitutional rights that places Plaintiffs' lives and public health in jeopardy.

Plaintiffs seek an injunction to restrain Defendants' from utilizing the discredited tools of coercion and segregation of natural peoples in violation of Federal and State law, including, but not limited to, Defendants' unscientific one-size-fits-all vaccine mandate where Defendants reject scientifically accepted Prescreening methods, and, therefore, place Plaintiffs' lives and public health in jeopardy.

## JURISDICTION AND VENUE

1.      This action asserts federal claims pursuant to 42 U.S.C. § 1983. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1343(a). The Court has additional remedial authority under 28 U.S.C. §§ 2201(a) and 2202.

2.      Venue of this civil action in the Judicial District for the Central District of California is proper pursuant to 28 U.S.C. § 1391 (b) (1) and (2). Plaintiffs reside and attend higher education with the UC in this District.

Defendants maintain offices, exercise their authority in their official capacities, and have taken the actions at issue in this matter in the Judicial District for the Central District of California.

**3.** This Court has jurisdiction over the claims asserting violations of the laws and Constitution of the State of California through its supplemental jurisdiction under 28 U.S.C. section 1367(a), as those claims are so closely related to the Plaintiffs' federal question and Section 1983 claims that they form part of the same case or controversy under Article III of the United States Constitution.

## PARTIES

**4.** Plaintiff AMERICA'S FRONTLINE DOCTORS ("AFLDS") is a non-partisan, not-for-profit organization of hundreds of member physicians that come from across the country (including California), representing a range of medical disciplines and practical experience on the front lines of medicine. AFLDS' programs focus on a number of critical issues including:

- Providing Americans with science-based facts about COVID-19;
- Protecting physician independence from government overreach;
- Combating the "pandemic" using evidence-based approaches without compromising Constitutional freedoms;
- Fighting medical cancel culture and media censorship;
- Advancing healthcare policies that protect the physician-patient relationship;
- Expanding COVID-19 treatment options for all Americans who need them; and
- Strengthening the voices of front-line doctors in the national healthcare conversation.

**5.** AFLDS' core beliefs, shared by each of its member health care professionals, include the following:

• That the American people have the right to accurate information using trusted data derived from decades of practical experience, not politicized science and Big Tech-filtered public health information.

• That critical public health decision-making should take place away from Washington and closer to local communities and the physicians that serve them. They are steadfastly committed to protecting the physician-patient relationship.

• That front-line and actively practicing physicians should be incorporated into the nation's healthcare policy conversation.

• That safe and effective, over-the-counter COVID preventative and early treatment options should be made available to all Americans who need them. They reject mandatory government lockdowns and restrictions not supported by scientific evidence. They support focused care for the nation's at-risk population, including seniors and the immune-compromised.

6. AFLDS, through its member physicians, is deeply committed to maintaining the physician-patient relationship in the face of government encroachment. AFLDS member physicians provide care to UC students (including for example in Riverside County) directly impacted by the UC's Covid-19 vaccine mandate, which is impairing physician-patient relationships, and the ability of the patients to exercise informed consent/refusal without duress caused by the UC.

7. Each of AFLDS' member physicians is also deeply committed to the guiding principle of medicine, "FIRST, DO NO HARM". They take gravely their ethical obligations to their patients. It is axiomatic that a physician's duty is to his or her patient.

8. AFLDS has recommended that the experimental Covid-19 vaccines be prohibited for use in the under-20 age category, and strongly discouraged for

use in the healthy population above the age of 20 through the age of 69. These recommendations have sound and broadly scientific foundations upon which they are based.

9.      AFLDS holds sacrosanct the relationship between doctor and patient where truly informed decisions are to be made, taking into consideration all of the factors relating to the patients' health, risks, co-morbidities and circumstances.

10.      It is critical to point out that for AFLDS member physicians, the practice of medicine is not simply a job. Neither is it merely a career. Rather, it is a sacred trust. It is a true high calling that often requires a decade or more of highly focused sacrificial dedication to achieve.

11.      The types of harm the AFLDS member physicians are inevitably subjected to by the UC's mandate to inject young people with the experimental COVID-19 vaccine is truly irreparable. Such harm strikes at the moral and ethical underpinnings of their calling as a physician and drives irreparable wedges into the sacred doctor-patient relationship that cannot be healed and certainly cannot be addressed with monetary damages.

12.      Plaintiff Carly Powell ("Carly") is enrolled as an undergraduate student at University of California, Riverside campus. She lives in a campus apartment in Riverside. Carly is a Covid-19 Recovered person, having contracted the virus in December 2020. Carly has joined her local chapter of AFLDS as a non-physician Citizen Corps member. UC Riverside's implementation of the UC's Covid-19 vaccine mandate has put Carly under duress and impaired her ability to exercise informed consent/refusal of the Covid-19 vaccine with physicians of her choice.

13.      Plaintiff Deborah Choi ("Deborah") is enrolled as a law student at University of California, Irvine campus. Deborah resides in Irvine, California, which is located in Orange County. Deborah is a Covid-19 Recovered person,

having contracted the virus in November 2020. Deborah has joined her local chapter of AFLDS as a non-physician Citizen Corps member. UC Irvine's implementation of the UC's Covid-19 vaccine mandate has put Deborah under duress and impaired her ability to exercise informed consent/refusal of the Covid-19 vaccine with physicians of her choice.

14.     Plaintiffs plead for relief, to be freed from Defendants' tactics of coercion and discrimination amounting to duress as a consequence of their choice *not* to submit to the myriad risks of Covid-19 vaccine injury that Defendants are unable to quantify.

15.     Defendant Kim A. Wilcox ("Wilcox") is the Chancellor of University of California Riverside campus.  Wilcox implements the Covid-19 vaccine mandate of the UC at the Riverside campus, including also Wilcox's approved coercion policies that he targets to the UC Riverside community. He is being sued in his official capacity.

16.     Defendant Howard Gillman ("Gillman") is the Chancellor of University of California Irvine campus.  Gillman implements the Covid-19 vaccine mandate of the UC at the Irvine campus, including also Gillman's approved coercion policies that he targets to the UC Irvine community. He is being sued in his official capacity.

17.     Defendant The Regents of the University of California ("UC") is a public legal entity, operating as a public university system in California with 10 campuses and more than 280,000 students. UC is a state-created, state-financed, and state-run public trust education system, and, as such, it is subject to the Fourteenth Amendment of the United States Constitution and Article IX, Section 9 of the California Constitution.

18.     Defendant Michael V. Drake ("Drake") is the President of the University of California. He is being sued in his official capacity.

19.     Defendants John and Jane Does 1-100 are, as yet, unknown persons.

**DEFENDANTS HARM PLAINTIFFS**

20.   Defendants' vaccination mandates, as referenced herein, constitutes state action taken under color of law.  Defendants' inability to quantify the myriad risks of Covid-19 vaccine injury is not evidence of safety, but, rather, is evidence of human medical experiment.

21.   Plaintiffs have experienced concrete and particularized injuries-in-fact that are both actual and imminent, including, but not limited to the following: (a) Defendants are unconstitutionally coercing and segregating Plaintiffs without scientific justification because Plaintiffs are exercising their Constitutional, and federal and state statutory, rights to decline involuntary injection of harmful experimental drugs; (b) Defendants are engaged in unmitigated coercion to subvert Plaintiffs' absolute right to refuse to serve as subjects to unnecessary medical experiments which are known to be dangerous, and even life-threatening, and to be free of discrimination for exercising this right; and (c) Plaintiffs experience certain and palpable threat of mandatory vaccination as Defendants push unscientific fear (rather than mathematical and clinical facts) upon Plaintiffs, and upon the public at large.

22.   Defendants' unscientific discrimination against unvaccinated Covid-19 recovered students with superior immunity foreseeably places such students, including Plaintiffs, under duress with respect to their exercise of informed consent/refusal of Covid-19 vaccination.  Among the duress techniques utilized by Defendants are the following examples, which techniques are a pattern and practice that Defendants tweak rapidly and dictate forcefully:

- Dictating that Covid-19 vaccinated students may breathe freely, but unvaccinated Covid-19 recovered students with superior immunity can only breathe as the UC and Chancellor authorize.

- Dictating that Covid-19 vaccinated students are presumed healthy, but unvaccinated Covid-19 recovered students with superior immunity must

submit to PCR genetic testing (performed by forceful penetration of the student's nasal cavity creating risk of serious harm) and miscellaneous health examinations intruding student medical privacy.

- Dictating that Covid-19 vaccinated students may physically access classes on campus, but unvaccinated Covid-19 recovered students with superior immunity are denied access to the education (and the rights and services that come with it, including healthcare) for which they have prepaid and invested their livelihoods.

- Dictating Covid-19 vaccinated students may congregate normally, but unvaccinated Covid-19 recovered students with superior immunity must maintain 6-feet distancing from others, and be subjected to various physical barriers.

- Distributing gifts, prizes, and incentives to Covid-19 vaccinated persons, but isolating unvaccinated Covid-19 recovered students with superior immunity.

All of the above techniques create an educational environment that is separate, unequal, and discriminatory based on medical condition and genetic status.

23. The unscientific rapid tweaking of Defendants' vaccine mandates also causes direct and unnecessary disruption of Plaintiffs' doctor-patient relationships, bodily integrity, education, and livelihood.

**COVID-19 VACCINATION RISK AND PRESCREENING**

24. The typical timeline of so-called 'successful' vaccine trials is 10-15 years, and most fail, such as an AIDS vaccine that unsuccessfully took about 35 years.[2] That is not all 'red tape'; rather, there are sequential steps that are performed, including, for example, long term animal testing, fertility testing, teratogenicity testing, and monitoring post-release. The first three datapoints

---

[2] https://www.niaid.nih.gov/diseases-conditions/hiv-vaccine-research-history

(listed immediately above) are not even known yet for the new vaccines, but the post-release monitoring in the CDC database, the Vaccine Adverse Event Reporting System ("VAERS") already shows an exponential increase in vaccine-related deaths over the previous year.[3] Plaintiffs highlight this to emphasize that, in the strict scrutiny balancing test, the burden of proof must belong on the party calling for the medical intervention, or the deviation from the normal process, and all the more so if the medical intervention is brand new and still in medical trials (such as the 3 main Covid vaccines are).

25.   Those individuals who have had, and, knowingly or unknowingly, recovered from the SARS-CoV-2 virus, or those individuals who currently have the virus, are herein collectively referred to as the "Covid-19 Recovered". The medical trials for the Pfizer[4], Moderna[5], and Johnson & Johnson[6] Covid-19 vaccines excluded the Covid-19 Recovered and many top publishing physicians[7]

---

[3] https://www.cdc.gov/coronavirus/2019-ncov/vaccines/safety/vaers.html

[4] https://www.fda.gov/media/144412/download
https://www.fda.gov/media/144246/download
https://www.fda.gov/media/144245/download
https://www.fda.gov/media/144245/download
https://www.fda.gov/media/144413/download
https://www.fda.gov/media/148542/download
https://cdn.pfizer.com/pfizercom/2020-11/C4591001_Clinical_Protocol_Nov2020.pdf

[5] https://www.fda.gov/media/144434/download
https://www.fda.gov/media/144452/download
https://www.cdc.gov/vaccines/acip/recs/grade/covid-19-moderna-vaccine.html
https://www.modernatx.com/sites/default/files/content_documents/Final%20mRNA-1273-P301%20Protocol%20Amendment%206%20-%203Dec2020.pdf

[6] https://www.fda.gov/media/146217/download
https://www.fda.gov/media/146338/download
https://www.fda.gov/media/146303/download
https://www.fda.gov/media/146219/download

[7] https://pubmed.ncbi.nlm.nih.gov/?term=Hooman+Noorchashm
https://pubmed.ncbi.nlm.nih.gov/?term=+McCullough+PA
https://www.icandecide.org/wp-content/uploads/2021/06/Letter-to-CDC-re-recovered-superior-to-vaccinated_2021_05_28.pdf

are proactively Prescreening patients to protect them if they are Covid 19
Recovered. See, e.g., from Pfizer trial:

> "5.2. Exclusion Criteria Participants are excluded from
> the study if any of the following criteria apply: ...
> Previous clinical (based on COVID-19 symptoms/signs
> alone, if a SARS-CoV-2 NAAT result was not available)
> or microbiological (based on COVID-19 symptoms/signs
> and a positive SARS-CoV-2 NAAT result) diagnosis of
> COVID-19."

**26.** Emphasizing the importance of shifting the proof of safety burden to
the State, emerging data establishes that vaccinating the Covid-19 Recovered
causes an immediately higher death rate worldwide for no benefit[8], as there is a
much stronger (10-20x)[9] antibody response to the Covid-19 vaccine,
overwhelming the immune system, if a person has previously had the virus.
Scientists and clinicians observing patients in real time are reporting the same
phenomenon all over the world, as this representative example highlights:
"People with prior COVID-19 illness appear to experience significantly
increased incidence and severity of side effects after receiving the COVID-19
vaccine"[10]  Some of these increased side effects include: blood clots,
hemorrhage, thrombocytopenia, heart attack, and strokes; reproductive issues,
including menstrual irregularities, reduced fertility, miscarriages; transmission of
spike protein from vaccinated individuals, such as through breast milk and
associated risk in neonates and infants; neurological disorders, including
Guillain-Barré syndrome, Bell's Palsy, transverse myelitis and unspecified

---

[8] https://ourworldindata.org/explorers/coronavirus-data-explorer
https://authorea.com/doi/full/10.22541/au.162136772.22862058
https://www.medrxiv.org/content/10.1101/2021.04.20.21255670v1
[9] https://www.medrxiv.org/content/10.1101/2021.04.15.21252192v1
[10] https://www.medrxiv.org/content/10.1101/2021.02.26.21252096v1

neurologic damage.

27.    Despite the foregoing, Defendants issued an unscientific statewide UC mandate of Covid-19 vaccination without any accommodation for Prescreening.  Defendants' dogmatic reliance upon 'CDC recommendations' is not based on real time data, or on actual numbers.  This explains why scientists and clinicians monitoring patients in real time are achieving superior health outcomes than CDC recommendations, utilizing therapeutic protocols (such as Ivermectin), and emphasizing the robustness of natural immunity. An example of this came recently from Dr. Marty Makary, a professor at the Bloomberg School of Public Health, who stated publicly that because "half the country" likely already have natural lifelong immunity to Covid-19, "I never thought I'd say this, but please ignore the CDC guidance."[11]

28.    Whilst Defendants behave unscientifically (pretending that 'science is settled' because the CDC 'always knows best'), real scientists in this country, as well as in other countries, are achieving consistently superior health outcomes for patients by doing the opposite of the one-size-fits-all approach mandated by Defendants. Indeed, Defendants' position is novel and radical. Scientifically accepted virology and immunology precepts[12] hold that immunity from natural infection is the best, most robust, and longest lasting way to deal with epidemics such as Covid 19.  **Defendants' statements to the contrary are categorically false,** and courts must not defer to false statements simply because some government scientists argue for them, but, rather, courts must apply strict scrutiny.  See e.g., *Roman Catholic Diocese v. Cuomo*, No. 20A87, 2020 U.S.

---

[11] https://www.theblaze.com/news/johns-hopkins-professor-ignore-cdc-natural-immunity-works (Dr. Makary emphasized "Natural immunity works… We've got to start respecting individuals who choose not to get the vaccine, instead of demonizing them. There is more data on natural immunity than there is on vaccinated immunity, because natural immunity has been around longer.")
[12] https://www.wiley.com/en-us/Roitt%27s+Essential+Immunology%2C+13th+Edition-p-9781118415771

LEXIS 5708, at *16 (Nov. 25, 2020) (Justice Gorsuch concurring, "Why have some mistaken this Court's modest decision in *Jacobson* for a towering authority that overshadows the Constitution during a pandemic? In the end, I can only surmise that much of the answer lies in a particular judicial impulse to stay out of the way in times of crisis. But if that impulse may be understandable or even admirable in other circumstances, we may not shelter in place when the Constitution is under attack. Things never go well when we do.")  Plaintiffs' constitutional rights are not subject to the luxury and disposal of the gaggle of government scientists who have proven unable to actually follow the scientific method requiring genuine study of unvaccinated control groups.

29.    Early evidence supports that natural immunity with SARS-CoV-2 in the unvaccinated will be lifelong. In still more emerging data, The Cleveland Clinic found the following: "Individuals who have had SARS-CoV-2 infection are unlikely to benefit from COVID-19 vaccination." [13] And no evidence about SARS-CoV-2 exists that suggests a deviation from the accepted science of natural immunity, let alone a radical departure from same. Natural immunity is routinely demonstrated by antibody testing as well as humoral immunity (i.e., T-cell, plasma). Evidence includes prior infection[14] with SARS-CoV-1[15] (approximately 18 years ago[16]), which is approximately 78% identical to SARS-Cov-2, whereby natural immunity is still robust against current SARS-CoV-2. There is **NO** evidence to support the argument that the Covid-19 Recovered lose their immunity. In fact, there is evidence of the opposite. Lifetime immunity[17] is anticipated. In a top scientific journal, the Lancet, we read about the well-

---

[13] https://www.medrxiv.org/content/10.1101/2021.06.01.21258176v3
[14] https://www.bmj.com/content/370/bmj.m3563
[15] https://pubmed.ncbi.nlm.nih.gov/32668444/
[16] https://newsroom.uw.edu/news/antibody-neutralizes-sars-and-covid-19-coronaviruses
[17] https://www.nature.com/articles/d41586-021-01442-9

powered SIREN study: "The findings of the authors suggest that infection and the development of an antibody response provides protection similar to or even better than currently used SARS-CoV-2 vaccines. … The SIREN study adds to a growing number of studies which demonstrate that infection does protect against reinfection." [18] Defendants can cite to no statistically significant evidence that Covid-19 Recovered persons are at any risk whatsoever of reinfection or transmission, let alone greater risk than Covid-19 vaccinated persons.

30.   Public health has always acknowledged this basic fact of immunology[19] - that immunity from natural infection is the best, most robust, and longest lasting - by screening for prior immunity, the Covid 19 Recovered will be protected from the medical harm caused by unnecessary vaccinations. Examples of this include measles, mumps, rubella, hepatitis B, hepatitis A, chickenpox, and others. If a prior immunity exists, then no shot is indicated, because risk without reward is not good medicine. Medical practice in general prescreens to determine risk versus reward. Medicine does not (or should not) push one-size-fits-all with drugs, such that any attempt to force one-size-fits-all vaccination upon Plaintiffs does not satisfy logic, proper medical procedures, or constitutional strict scrutiny.

31.   Once natural immunity is present, artificial immunity (vaccination) is not indicated because it poses risk to vaccinate the immune. Besides being unduly taxing on the body, there is the potential to dangerously induce Antibody Dependent Enhancement (ADE).[20] Defendants' one-size-fits-all vaccine mandate completely ignores this accepted science that protects Plaintiffs.[21]

---

[18] https://www.thelancet.com/journals/lancet/article/PIIS0140-6736(21)00782-0/fulltext

[19] https://www.wiley.com/en-us/Roitt%27s+Essential+Immunology%2C+13th+Edition-p-9781118415771

[20] https://pubmed.ncbi.nlm.nih.gov/7811870/

[21] For example, antibodies to a specific portion of a pathogenic complex can be enhanced and activated when exposed in high concentration in the future. This

32.    Because vaccinating the immune is well known to be both unnecessary and potentially dangerous, public health vaccination programs have always included a standardized prescreening process. This same process should be all the more indicated with the new Covid-19 vaccines, which have, in addition to the above general risks, definite and specific heightened risk, including death, as stated above for Recovered Covid 19 individuals.

33.    Prescreening must be instituted at once. Because there is evidence of severe higher risk, and because Covid-19 vaccination is a new agent, prescreening must be as robust as possible, including ruling out: current infection, recent past infection (i.e., antibody testing), and older past infection (i.e., T-detect, humoral immunity). This is accomplished by doctors in all the traditional ways, such as taking a thorough patient history, and blood testing where indicated. The Journal Nature[22] states: "A detrimental effect linked to pre-existing immunity is eminently testable and would be revealed by the same COVID-19 cohort and vaccine studies proposed above."

### UC RIVERSIDE COVID-19 VACCINE MANDATE

34.    Defendant Wilcox regularly publishes the Covid-19 vaccine policies that he enforces at UC Riverside. See e.g., https://insideucr.ucr.edu/announcements/2021/06/23/campus-and-workplace-covid-update and https://news.ucr.edu/articles/2021/07/20/deadline-provide-vaccination-proof-aug-16 ("Deadline to provide vaccination proof is Aug. 16"). Such policies and their enforcement constitute a pattern and practice of UC Riverside discriminating against unvaccinated persons who are Covid-19

___

phenomenon is common in such infections as Dengue, HIV, SARS, and Ebola. In the case of human coronaviruses, the worst-case scenario, immunologically, would be when cross-reactive memory antibodies to related coronaviruses would not only be non-protective but would worsen the infection and the clinical course. Such a phenomenon of antibody dependent enhancement (ADE) has already been described in several viral infections.

[22] https://www.nature.com/articles/s41577-020-0389-z

Complaint for Declaratory and Injunctive Relief

recovered compared to persons who are Covid-19 vaccinated.

## UC IRVINE COVID-19 VACCINE MANDATE

35.     Defendant Gillman regularly publishes the Covid-19 vaccine policies that he enforces at UC Irvine. See e.g., https://uci.edu/coronavirus/testing-response/covid-19-vaccine.php and https://uci.edu/coronavirus/messages/210716-uc-covid19-vaccine-policy.php ("For UCI, the compliance dates are…School of Law - Aug. 3…Main campus - Sept. 6"). Such policies and their enforcement constitute a pattern and practice of UC Irvine discriminating against unvaccinated persons who are Covid-19 recovered compared to persons who are Covid-19 vaccinated.

## UC STATEWIDE POLICY

36.     On or about July 15, 2021, Defendants UC and Drake published a policy (republished by the other Defendants) to mandate Covid-19 vaccination for all UC students, as follows:

> "The deadline for initial implementation of the Program, which
> is two (2) weeks before the first day of instruction at any
> University campus or school for the Fall 2021.
>
> …
>
> **"Exception**: An approved exception to COVID-19 vaccination
> based on a Medical Exemption, Disability, or Religious
> Objection.
>
> …
>
> **"Non-Pharmaceutical Intervention (NPI):** An action, other
> than getting vaccinated or taking medicine, that members of the
> University community can take to help prevent or slow the
> spread of COVID-19 and other contagious illnesses. NPIs
> include, for example, staying home, especially when a person is
> sick or when a member of the person's family or household is

sick; quarantining when an unvaccinated person has been exposed to someone else with the illness; avoiding large gatherings; physical/social distancing; wearing personal protective equipment or face coverings; frequent handwashing and cleaning; and asymptomatic (surveillance) and symptomatic testing.

…

"As a condition of Physical Presence at a Location or in a University Program, all Covered Individuals must Participate in the COVID-19 Vaccination Program by providing proof of Full Vaccination or submitting a request for Exception or Deferral no later than the Implementation Date. This requirement will be subject to implementation guidelines and any local procedures for enforcement. Alternative remote instructional programming is not expected to be available in most cases and the availability of alternative remote work arrangements will depend on systemwide guidance and any local policies or procedures, as well as the nature of the work to be performed.

…

"Students who fail to provide proof of vaccination or apply for an Exception or Deferral by the Implementation Date may, therefore, be subject to a registration hold.

…

"Each campus is responsible for: (i) assuring any necessary updates are made to its local Infectious Diseases/Infection Prevention and Control Programs; (ii) establishing deadlines for COVID-19 Vaccination Program Participation on an annual or ongoing basis, in consultation with epidemiology and infection

prevention experts and occupational health representatives as applicable and consistent with any supply limitations; and (iii) assuring implementation of the COVID-19 Vaccination Program at all sites…. Chancellors, Laboratory Directors, and the Vice President ANR are responsible for implementing this policy.

…

*"[FAQ #9] I was recently diagnosed with COVID-19, and/or I had an antibody test that shows that I have natural immunity. Does this support a Medical Exemption?*

You may be eligible for a temporary Medical Exemption (and, therefore, a temporary Exception), for up to 90 days after your diagnosis and certain treatments. According to the US Food and Drug Administration, however, "a positive result from an antibody test does not mean you have a specific amount of immunity or protection from SARS-CoV-2 infection … Currently authorized SARS-CoV-2 antibody tests are not validated to evaluate specific immunity or protection from SARS-CoV-2 infection." For this reason, individuals who have been diagnosed with COVID-19 or had an antibody test are not permanently exempt from vaccination.

…

"Those Covered Individuals who fail to Participate by being Vaccinated or requesting an Exception or Deferral on or before the Implementation Date will be barred from Physical Presence at University Facilities and Programs, and may experience consequences as a result of non-Participation, up to and

1    including dismissal from educational programs or

2    employment."

3    And Appendix A to the UC Policy contains a medical exemption form that

4    requires a healthcare provider to certify: "I certify that one or more of the

5    Contraindications or Precautions recognized by the CDC or by the vaccines'

6    manufacturers for each of the currently available COVID19 vaccines applies to

7    the patient listed above. For that reason, COVID-19 vaccination using any of the

8    currently available COVID-19 vaccines is inadvisable for this patient in my

9    professional opinion."

10   **37.**    The UC policy refers to the CDC webpage entitled, "Interim

11   Clinical Considerations for Use of COVID-19 Vaccines Currently Authorized in

12   the United States", which contains the following excerpt:

13   "People should be offered vaccination regardless of their

14   history of symptomatic or asymptomatic SARS-CoV-2

15   infection; this includes people with prolonged post-COVID-19

16   symptoms. Data from clinical trials indicate that the currently

17   authorized COVID-19 vaccines can be given safely to people

18   with evidence of a prior SARS-CoV-2 infection. Viral testing to

19   assess for acute SARS-CoV-2 infection or serologic testing to

20   assess for prior infection is not recommended for the purposes

21   of vaccine decision-making.

22   "Vaccination of people with known current SARS-CoV-2

23   infection should be deferred until the person has recovered from

24   the acute illness (if the person had symptoms) and they have

25   met criteria to discontinue isolation. This recommendation

26   applies to people who experience SARS-CoV-2 infection

27   before receiving any vaccine dose and those who experience

28

1   SARS-CoV-2 infection after the first dose of an mRNA vaccine
2   but before receipt of the second dose.
3   "While there is no recommended minimum interval between
4   infection and vaccination, current evidence suggests that the
5   risk of SARS-CoV-2 reinfection is low in the months after
6   initial infection but may increase with time due to waning
7   immunity."
8   https://www.cdc.gov/vaccines/covid-19/clinical-
9   considerations/covid-19-vaccines-us.html

10   Moreover, on such CDC webpage for the moment, a person's previous
11   history of SARS-CoV-2 infection is not a contraindication or precaution to
12   Covid-19 vaccination.

13   **38.**   Defendants also publish policies that treat Covid-19 recovered
14   students as if their natural immunity is insufficient, such that these unvaccinated
15   Covid-19 recovered students are threatened with unnecessary medical procedures
16   and interventions without their consent (i.e., PCR testing).

17   **39.**   Defendants' novel theories for the novel coronavirus and its
18   experimental vaccine are expressly based on conjecture that fails strict scrutiny
19   when applied as a healthcare mandate, as Defendants *suggest* without confirmed
20   data, for example:

21   a. Covid-19 vaccines 'could' 'may' 'possibly' 'ideally' create a
22   larger immune response[23] and therefore perhaps hypothetically
23   create superior immunity that just hasn't been observed yet but

24

25   [23] https://mediasources.ucr.edu/articles/2021/03/03/what-uc-riverside-scientists-
26   have-say-about-vaccines-variants-and-antibodies ("ideally");
    https://campusreturn.ucr.edu/sites/g/files/rcwecm4671/files/2021-04/COVID-
27   19%20Vaccine%20education%20slide%20deck_UCLA_UCR%20%281%29.pdf
    , page 31 ("There is not enough information" "suggests"));
28   https://uci.edu/coronavirus/testing-response/covid-19-vaccine.php ("usually")

might be observed in the unknown future by some unknown institution.

   b.  Sars-Cov-2 'could' 'may' 'possibly' be more likely to mutate in the bodies of unvaccinated persons rather than vaccinated persons[24], even though that too hasn't been observed yet but only might be observed in the unknown future by some unknown institution.

Defendants' pattern and practice of unsubstantiated conjecture has already been authoritatively rebutted by overwhelming scientific evidence, and therefore the CDC will (or *should*) correct its guidance imminently. See, https://www.icandecide.org/wp-content/uploads/2021/06/Letter-to-CDC-re-recovered-superior-to-vaccinated_2021_05_28.pdf.

**FIRST CAUSE OF ACTION AGAINST DEFENDANTS**
**Declaratory Relief Under 28 U.S.C. § 2201**
**United States Constitution 14th Amendment Bodily Integrity**

   **40.**   Plaintiffs incorporate by reference the paragraphs above as if set forth in full herein.

   **41.**   Plaintiffs have fundamental constitutional rights to bodily integrity, including, especially, to be free from human medical experimentation.  The FDA's classification of Covid-19 vaccination (as emergency use or approved) is not determinative of the experimental status of the vaccination, as, for example, with the complete absence of any long-term safety data and the novel status of mRNA and adenovirus vaccines in humans.

   **42.**   The Constitutional Right to Bodily Integrity is well settled in law and ethics:

      **A.**   "It cannot be disputed that the Due Process Clause protects

---

[24] https://www.universityofcalifornia.edu/news/are-we-stuck-covid-19-forever ("may be")

1   an interest in life as well as an interest in refusing [] medical treatment."

2   *Cruzan v Director, Missouri Dept of Health (1990) 497 US 261, 279.*

3       **B.**    "Informed consent to medical treatment is fundamental in

4   both ethics and law. Patients have the right to receive information and ask

5   questions about recommended treatments so that they can make well-

6   considered decisions about care. Successful communication in the patient-

7   physician relationship fosters trust and supports shared decision making."

8   Citation: American Medical Association (2020). AMA Principles of

9   Medical Ethics: I, II, V, VIII. Informed Consent. https://www.ama-

10   assn.org/delivering-care/ethics/informed-consent.

11       **C.**    As with all forms of medical therapy, informed consent must

12   precede vaccination administration." Citation: The American College of

13   Obstetricians and Gynecologists, Committee on Ethics, Ethical Issues

14   With Vaccination for the Obstetrician–Gynecologist, Committee Opinion

15   Number 564, May 2013, *(Reaffirmed 2016)*

16   https://www.acog.org/Clinical-Guidance-and- Publications/Committee-

17   Opinions/Committee-on-Ethics/Ethical-Issues-With-Vaccination-for-the-

18   Obstetrician-Gynecologist.

19       **D.**    'Coerced consent to a medical procedure violates the medical

20   ethics of informed consent and informed refusal, as for example where an

21   individual who has been coerced to consent to injection of biotechnology,

22   due to governmental threat of loss of access to basic necessities of life

23   such as food and medical care, cannot be presumed to have provided

24   lawful informed consent to the injection.' Citation: Bi, S. and Klusty, T

25   (2015). Forced Sterilizations of HIV-Positive Women: A Global Ethics

26   and Policy Failure. *AMA J Ethics* 17(10):952-957.

27   doi:10.1001/journalofethics. 2015.17.10.pfor2-1510.

28   https://journalofethics.ama-assn.org/article/forced-sterilizations-hiv-

1  positive-women-global-ethics-and-policy-failure/2015-10.

2  **43.**  Plaintiffs are the only competent persons able to provide

3  consent/refusal to the injection of Covid-19 vaccines into themselves.  Neither

4  Defendants nor third parties (such as the FDA) are able to provide such

5  consent/refusal on behalf of Plaintiffs, nor can Defendants or third parties waive

6  Plaintiffs' rights to informed consent/refusal of Covid-19 vaccines. Because

7  Defendants have indicated that consent to injection of a Covid-19 vaccine is an

8  imminent condition of their ongoing college participation (and, hence, future

9  livelihood), Plaintiffs fundamental rights are in jeopardy, and, so, Plaintiffs seek

10  declaratory relief to clarify their rights, and to, thereby, prevent immediate

11  harm.

12  **44.**  This real and concrete controversy exists between Plaintiffs and

13  Defendants, in that Defendants contend that they have the right, the power, and

14  the authority to require Plaintiffs' coerced vaccination as a condition of

15  continuing participation at the public college (and hence control over Plaintiffs'

16  future livelihoods), and Plaintiffs maintain that such coercion is duress, because

17  they have the fundamental constitutional and statutory right to refuse vaccination

18  without disruption of their education and future livelihoods.

19  **45.**  Plaintiffs seek declaratory relief that Defendants' vaccine mandate

20  rejecting Prescreening is an unscientific infringement upon Plaintiffs'

21  constitutional rights.

22  **46.**  This actual controversy between Defendants and Plaintiffs centers

23  upon the lives and health of Covid-19 recovered persons.

24  **47.**  Defendants have asserted in published documents that there is no

25  need to screen individuals before receiving the various vaccines, as Defendants

26  claim the vaccines are safe for administration to such people, despite the lack of

27  any testing of said individuals as part of the various trials regarding the various

28  vaccines.

**48.** Defendants' policy is a gross departure from its own long-standing vaccination policy to reduce life-threatening harm by prescreening.

**49.** Prescreening can be accomplished in exactly the same way as for all other viruses, by clinical definition, and by blood immunity test where indicated. (It is to be noted that physician members of Congress specifically endorse such immunity testing as lifesaving.)

**50.** Abundant scientific medical evidence exists showing that the vaccination of individuals who have had the virus and have recovered, or who currently have the virus, will result in serious health issues, including death to certain individuals and that due process considerations require allowance for prescreening, in order to protect the lives and health of said individuals.

**51.** Defendants' vaccine mandate that unscientifically rejects Prescreening is the direct cause for the immediate and unnecessary threat of injury and death to Plaintiffs.

**52.** Defendants' unscientific decision to reject Prescreening will increase the short-term and long-term vaccine injury rate thereby making UC campuses less safe from SARS-CoV-2, and other pathogens. Defendants' direct attack, under color of law, on Plaintiffs' bodily integrity is an unconstitutional abuse of power that is harming public health, not advancing it.

**53.** Defendants are engaged in a pattern and practice of downplaying and suppressing information that Covid-19 vaccination is experimental, does not prevent SARS-CoV-2 transmission, and that Covid-19 vaccine injury is widespread and harming public health.  Defendants' propaganda has become so extreme as to irrationally disregard data and scientists exposing the propaganda. The hallmark of Defendants' propaganda is Defendants' failure to cite credible data in support of the propaganda, but rather to rely upon a 'quasi pyramid scheme' or 'echo chamber' of continual deference to authority that also fails to cite credible data in support of the propaganda.

## SECOND CAUSE OF ACTION AGAINST DEFENDANTS
### Injunctive Relief Under 42 U.S.C. § 1983
### United States Constitution 14th Amendment Bodily Integrity

54.     Plaintiffs incorporate by reference the paragraphs above as if set forth in full herein.

55.     For Plaintiffs, COVID-19 vaccination is experimental, ineffective, and dangerous.

56.     Plaintiffs cannot lawfully be coerced under duress to participate in the human medical experiment that is Operation Warp Speed, that Defendants have piggybacked their vaccine mandate on. Plaintiffs' protected right to bodily integrity is secured by the Due Process Clause of the United States Constitution, allowing Plaintiffs to navigate the UC campuses free from forced medical experimentation and segregation based on medical condition and genetic status.

57.     Defendants are state actors, and have instituted or imminently intend to institute the Covid-19 vaccine mandate under color of law.

58.     The forcible administration of the COVID-19 vaccines, on penalty of exclusion from campus, would deprive Plaintiffs of their substantive due process rights as described herein.

59.     The harm to Plaintiffs cannot be adequately redressed in the event that the Covid-19 vaccination mandate is carried out.

60.     Unless Defendants are enjoined, Plaintiffs will be irreparably harmed, which harm includes, but not by way of limitation, death, or other serious illness, and the loss of fundamental State and Federal constitutionally protected rights.

## THIRD CAUSE OF ACTION AGAINST DEFENDANTS
### Injunctive Relief Under 42 U.S.C. § 1983
### United States Constitution 14th Amendment Freedom from State Created Danger

61.     Plaintiffs incorporate by reference the paragraphs above as if set

forth in full herein.

62.    Plaintiffs have the 14th Amendment Due Process right to be free from Defendants placing Plaintiffs in a situation of involuntary vaccination, a position of actual, particularized danger based upon the deliberate indifference of Defendants to a known and obvious danger of Covid-19 vaccine injury.

63.    Defendants' deliberate indifference to the known and obvious danger of vaccine injury (including but not limited to Defendants' inability to quantify the risks of the medical procedure they mandate) creates and exposes Plaintiffs to health dangers, the intensity of which Plaintiffs would not have otherwise faced. Defendants' rejection of science makes Plaintiffs more vulnerable to vaccine injury.

64.    Plaintiffs' current and future injuries as herein stated are reasonably foreseeable to Defendants.

65.    Plaintiffs are in a special relationship with Defendants, in that Plaintiffs are students enrolled at UC campuses.

**FOURTH CAUSE OF ACTION AGAINST DEFENDANTS**
**Unruh Act – Prohibiting Discrimination Based on Medical Condition and Genetic Status**

66.    Plaintiffs incorporate by reference the paragraphs above as if set forth in full herein.

67.    Plaintiffs invoke the Court's supplemental jurisdiction to find that Defendants' actions violate the Unruh Civil Rights Act, California Civil Code Section 51 *et seq*., which provides in part:

> "All persons within the jurisdiction of this state are free and equal, and no matter what their [] medical condition [and] genetic information [] are entitled to the full and equal accommodations, advantages, facilities, privileges,

1    or services in all business establishments of every kind

2    whatsoever….

3    "'Genetic information' includes any request for, or

4    receipt of, genetic services, or participation in clinical

5    research that includes genetic services, by an individual

6    or any family member of the individual….

7    "'Medical condition' means [] Genetic characteristics.

8    For purposes of this section, "genetic characteristics"

9    means [] Any scientifically or medically identifiable gene

10   or chromosome, or combination or alteration thereof, that

11   is known to be a cause of a disease or disorder in a

12   person or that person's offspring, or that is determined to

13   be associated with a statistically increased risk of

14   development of a disease or disorder, and that is

15   presently not associated with any symptoms of any

16   disease or disorder."

17   **68.**   Defendants' decision to mandate experimental gene therapy upon

18   Plaintiffs is a direct violation of the Unruh Civil Rights Act, because it denies

19   Plaintiffs full and equal access to their UC campuses on the basis of Plaintiffs'

20   medical conditions and genetic information.

21   **69.**   The UC System, and each Defendant UC campus individually, is a

22   business establishment within the meaning of Cal. Civ. Code section 51, *et seq.*

23   within the jurisdiction of this filing Court. For example, Defendant UC is one of

24   the largest employers in the State of California, receiving approximately $1.7B

25   annually in revenue from Auxiliary Businesses, and includes campus services

26   that charge fees for goods and services and therefore are self-supporting, such as

27   housing, meals and bookstores, all three of which affect Plaintiffs Carly and

28   Deborah. As the UC states on its website, "Besides world-class classrooms and

labs, UC has dozens of museums, concert halls, art galleries, botanical gardens, observatories and marine centers — academic resources, but also exciting gathering places for the community."

70.     Defendants allow Covid-19 vaccinated persons the right to access the UC campuses, but make no such accommodation to Covid-19 recovered persons, who, to protect themselves from serious injury, or death, refuse to be vaccinated.

71.     Defendants' violations of the Unruh Civil Rights Act must be enjoined. These violations are imminent and ongoing. Defendants' failure and refusal to correct constitutes intentional discrimination against Plaintiffs and those similarly situated.

72.     Defendants' violations of the Unruh Civil Rights Act have harmed and will continue to harm Plaintiffs.

73.     Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies.

74.     Plaintiffs are entitled to declaratory and injunctive relief as well as reasonable attorneys' fees and costs incurred in bringing this action, together with statutory damages.

## FIFTH CAUSE OF ACTION AGAINST DEFENDANTS
### Cal. Gov. Code section 11135 – Prohibiting Discrimination Based on Medical Condition and Genetic Status

75.     Plaintiffs incorporate by reference the paragraphs above as if set forth in full herein.

76.     California Government Code Section 11135 is California's civil rights analogue to Title VI of the Federal Civil Rights Act. Section 11135 states that:

> "[n]o person in the State of California shall, on the basis

of [] genetic information [] be unlawfully denied full and

equal access to the benefits of, or be unlawfully subjected

to discrimination under, any program or activity that . . .

is funded directly by the state, or receives any financial

assistance from the state[.]"

Cal. Gov. Code. § 11135(a).

**77.** Section 11139 provides a private right of action for enforcement, stating: "This article and regulations adopted pursuant to this article may be enforced by a civil action for equitable relief, which shall be independent of any other rights and remedies."

**78.** Section 11139 also prohibits the statute from being "interpreted in a manner that would frustrate its purpose."

**79.** Defendants' vaccination mandate is the product of Defendants' intentional pattern and practice to unlawfully deny full and equal access to UC campuses on the basis of genetic information.

**80.** Defendants have and continue to violate section 11135, by unlawfully denying Plaintiffs the benefits of, and unlawfully subjecting Plaintiffs to discrimination under, Defendants' vaccination mandate for the reasons set forth above.

**81.** Defendants have refused and failed to provide Plaintiffs with full and equal access to its facilities, programs, services and activities as required by section 11135, et seq.

**82.** Defendants' violations of section 11135 have harmed and will continue to harm Plaintiffs.

**83.** Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies.

**84.** Plaintiffs are entitled to declaratory and injunctive relief as well as reasonable attorneys' fees and costs incurred in bringing this action.

**REQUEST FOR JURY TRIAL**

**85.** Plaintiffs request a jury trial on factual matters.

**REQUEST FOR RELIEF**

**86.** Plaintiffs request the Court grant the following relief:

**A.** Issue an order to show cause shifting the burden to Defendants to prove that Defendants' decision to reject scientifically accepted Prescreening meets a compelling State interest, and that such decision to reject accepted Prescreening science is narrowly tailored to avoid unnecessary infringement upon Plaintiffs' Constitutional rights

**B.** Issue a declaratory judgment that Defendants' unscientific decision to reject Prescreening science, in order to unscientifically propagate Defendants' one-size-fits-all vaccine mandate, imminently threatens the lives of Plaintiffs, and others, and unlawfully segregates them based on their Covid-19 Recovered medical condition and natural genetic status, which is an unlawful infringement by Defendants upon Plaintiffs' constitutional rights, that places Plaintiffs' lives and public health in jeopardy.

**C.** Issue a temporary restraining order, and a preliminary injunction to restrain Defendants' from utilizing the discredited tools of coercion and segregation of natural/unvaccinated peoples in violation of Federal and State law, including but not limited to Defendants' unscientific one-size-fits-all vaccine mandate, where Defendants reject scientifically accepted Prescreening, and, therefore, place Plaintiffs' lives and public health in jeopardy.

**D.** Issue a permanent injunction to restrain Defendants' from utilizing the discredited tools of coercion and segregation of natural/unvaccinated peoples in violation of Federal and State law, including but not limited to Defendants' unscientific one-size-fits-all vaccine mandate where Defendants reject scientifically accepted Prescreening and therefore place Plaintiffs' lives and public health in jeopardy.

1        **E.** Issue an order awarding Plaintiffs statutory damages, costs of suit,

2  and reasonable attorneys' fees and expenses.

3        **F.** Issue such other and further relief as this Court deems equitable,

4  just, and proper.

5  Dated this July 26, 2021

6

7          */s/ Christina Gilbertson*
        Christina Gilbertson (California Bar No. 236877)

8          christina@jfnvlaw.com

9          Jennings & Fulton, LTD
        2580 Sorrel Street

10          Las Vegas, NV 89146

11          Phone: 702-979-3565

12          Gregory J. Glaser (California Bar No. 226706)

13          greg@gregglaser.com
        Greg Glaser, Attorney at Law

14          4399 Buckboard Drive #423

15          Copperopolis, CA 95228
        Phone: 925-642-6651

16

17          Joseph S. Gilbert (Nevada Bar No. 9033)
        joey@joeygilbertlaw.com

18          Joey Gilbert & Associates

19          405 Marsh Avenue
        Reno, NV 89509

20          Phone: 775-284-7700

21          (Subject to pro hac vice admission)

22          Attorneys for Plaintiffs

23

24

25

26

27

28

Complaint for Declaratory and Injunctive Relief