Emily T. Kuwahara (SBN 252411)
ekuwahara@crowell.com
Uri Niv (SBN 307487)
univ@crowell.com
CROWELL & MORING LLP
515 South Flower Street, 40th Floor
Los Angeles, CA 90071
Telephone: 213.622.4750
Facsimile: 213.622.2690

Kristin Madigan (SBN 233436)
kmadigan@crowell.com
Suzanne Rode (SBN 253830)
srode@crowell.com
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Telephone: 415.986.2800
Facsimile: 415.986.2827

Norman J. Hamill (SBN 154272)
Norman.hamill@ucop.edu
Katharine Essick (SBN 219426)
katharine.essick@ucop.edu
UNIVERSITY OF CALIFORNIA
Office of General Counsel
1111 Franklin Street, 8th Floor
Oakland, CA 94607
Telephone: 510.987.9800
Facsimile: 510.987.9757

Attorneys for Defendants
Kim A. Wilcox, Howard Gillman, The Regents
of the University of California, Michael V. Drake

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICA'S FRONTLINE DOCTORS, *et al.*, <br><br> Plaintiff, <br><br> v. <br><br> KIM A. WILCOX, in his official capacity as CHANCELLOR OF THE UNIVERSITY OF CALIFORNIA RIVERSIDE, *et al.*, | Case No. 5:21-cv-01243-JGB-KK <br><br> **OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE** <br><br> Ctrm.: Riverside, Courtroom 1 <br> Judge: Hon. Jesus G. Bernal <br> Date Action Filed: July 26, 2021 |

1 | Defendants.

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................... 4
II. BACKGROUND ...................................................................................................... 7
III. ARGUMENT ............................................................................................................ 8
    A. Legal Standard ............................................................................................... 8
    B. Plaintiffs fail to show that they are entitled to this extraordinary relief because they will not be irreparably harmed if this TRO is denied. ........................................................................................................... 9
    C. Greater injury to the public interest would result from granting the TRO than in denying it. ......................................................................... 10
    D. Plaintiffs have not shown a likelihood of success on the merits. ........ 13
        1. Plaintiffs are not likely to prevail on their Fourteenth Amendment claim of violation of bodily integrity because the Policy is rationally related to UC's interest in health and safety. ........................................................................................... 13
        2. Plaintiffs are not likely to prevail on their Fourteenth Amendment claim of state danger because there is no evidence that UC affirmatively placed Plaintiffs in danger, or acted with deliberate indifference toward Plaintiffs. .......................................................................................... 16
        3. Plaintiffs' state law claims are barred by the Eleventh Amendment, which forecloses state law claims against state actors in federal court. ...................................................... 18
    E. The scope of the injunction sought by Plaintiffs is inappropriately broad and is not narrowly tailored to the alleged harm. .............................................................................................................. 18
IV. CONCLUSION ...................................................................................................... 19

## I. INTRODUCTION

Facing an unprecedented and deadly pandemic, on July 15, 2021, the University of California ("UC") issued its final policy ("Policy") requiring that, with limited exceptions, students and employees must provide proof they have been vaccinated against SARS-CoV-19—the novel coronavirus which causes the deadly disease COVID-19—as a condition of their physical access to campus facilities. After consultation with the UC community and review of the scientific evidence, UC issued the Policy to facilitate a safe return to school and work. The purpose of the Policy is to maintain the public health and well-being of UC's ten campus communities, five medical centers, one national laboratory, and numerous other UC locations throughout California, as well as the public health and well-being of surrounding communities. Plaintiffs have brought suit against the Chancellors of University of California Irvine ("UCI") and University of California Riverside ("UCR"), President Drake, and The Regents of the University of California, and request an injunction—now in the form of a TRO—against this Policy.

The potential harm to the UC community if this requirement is paused, just as the university is preparing for an in-person return of hundreds of thousands of students, faculty, and staff this fall, cannot be overstated. The plan to fully and safely return to normal operations for UC campuses in fall 2021 was made in the context of three COVID-19 vaccines becoming widely available in California. Today, despite the continuing availability of the vaccines as California has re-opened, COVID-19 infection rates in California are rising again, with the circulation of the highly contagious Delta variant threatening to outpace the lagging rate of vaccination. In this latest stage of the pandemic, unvaccinated individuals are at particularly high risk for severe outcomes, driving up hospitalization rates and in some locations, prompting a return to indoor masking requirements. Masking, and other non-pharmaceutical interventions, have some efficacy in preventing exposure to this deadly virus; but once an individual is exposed to the

virus, vaccination is by far the most effective way to prevent severe disease and death from COVID-19. A TRO that prevents the Policy's enforcement could result in devastating consequences to members of the UC community and surrounding communities (including where UC medical centers are located) as people convene from all over the world to start the fall quarter or semester, now that vaccines are widely available.

Plaintiffs' application for a temporary restraining order should be denied for the following reasons.

*First,* Plaintiffs have failed to show they will be irreparably harmed if the Court does not grant a TRO. UC is not coercing the student Plaintiffs to be vaccinated. As with the existing Student Immunization Policy, the new UC COVID-19 Vaccination Policy is a condition of their attending classes and any other in-person access to UC. The student Plaintiffs may make the individual choice whether to meet UC's condition or not, and choose to continue attending classes at UC or not. The organizational Plaintiff is of course not an individual student or employee of UC who is subject to the Policy's conditions for physical access to UC. None of the three Plaintiffs have demonstrated any irreparable harm that would support the granting of emergency relief.

*Second*, granting the application for TRO would result in greater harm to the public interest than denying this emergency relief to Plaintiffs. UC issued the Policy to protect the health and safety of the entire UC community consisting of hundreds of thousands of individuals and the larger general public where UC operates, and any injunction against the COVID-19 vaccine Policy, especially in light of the current surge in the Delta variant, would put the health and safety of these communities at great risk of increased infections and adverse outcomes.

*Third*, Plaintiffs cannot show a high likelihood of success on the merits of their claims. With respect to Plaintiffs' first and second causes of action, alleging a Fourteenth Amendment violation of bodily integrity, Plaintiffs will be unable to

show a constitutional violation. In light of the overwhelming scientific evidence of the efficacy of the COVID-19 vaccines, the Policy requiring vaccination is rationally related to UC's compelling interest of stemming the spread of COVID-19 on its campuses and surrounding communities, as well as a surge in hospitalizations and severe outcomes in the UC and surrounding communities. With respect to Plaintiffs' third cause of action, alleging a Fourteenth Amendment violation of freedom from state-created danger, Plaintiff cannot prove that UC Defendants acted with "deliberate indifference" to Plaintiffs' safety. Rather, the only evidence is that UC issued the Policy with deliberate and serious consideration for the student Plaintiffs' safety, as members of the UC community. Finally, with respect to Plaintiffs' fourth and fifth causes of action brought under the California state laws, the Eleventh Amendment bars state law claims against state actors in federal court and forecloses those claims.[1]

Finally, the requested injunctive relief reaches far beyond what is necessary to address any alleged harm or concerns of the Plaintiffs, and is inappropriately broad. If any restraining order is granted (which Defendants do not concede is appropriate), it should be strictly limited to providing the two student Plaintiffs, at two specific locations (UCI Law and UCR undergraduate), the equivalent of a temporary exemption under the Policy, subject to masking and testing requirements, only while the motion for preliminary injunction is pending.

Accordingly, UC Defendants respectfully request the Court deny this TRO in

---

[1] In addition, all claims against "The Regents of the University of California" are foreclosed by the Eleventh Amendment and should be dismissed. *Feied v. The Regents of the Univ. of California*, 188 F. App'x 559, 561 (9th Cir. 2006) ("This Court has repeatedly held that the Regents are an arm of the state entitled to Eleventh Amendment immunity"). And, Plaintiff America's Frontline Doctors lacks Article III standing to bring these causes of action, as the Policy does not require anything with respect to America's Frontline Doctors. *Hajro v. U.S. Citizenship & Immigr. Servs.*, 811 F.3d 1086, 1102 (9th Cir. 2016) (to establish injury in fact, a party must show it suffered an invasion of a legally protected interest. "Where a party seeks injunctive relief, he must allege a sufficient likelihood that he will be subjected in the future to the allegedly illegal policy.")(citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)) (emphasis added).

its entirety. Defendants further request that the Court set the motion for a preliminary injunction for hearing on a regularly noticed motion schedule to be heard on August 30, 2021, such that UC Defendants may be given the opportunity to fully present its evidence in opposition, including declarations from scientific and medical experts.

## II. BACKGROUND

The COVID-19 vaccine Policy is the "product of consultation with UC infectious disease experts and ongoing review of the evidence from medical studies concerning the dangerousness of COVID-19 and emerging variants of concern, as well as the safety and effectiveness of the vaccines for preventing infection, hospitalizations, and deaths from COVID-19, and for reducing the spread of this deadly disease." Declaration of Emily Kuwahara ("Kuwahara Decl."), Ex. 1 (President's Cover Letter to Policy). In arriving at this Policy, UC reviewed "the safety and efficacy of the three vaccines approved by the Food and Drug Administration (FDA) for emergency use, and considered the severe risks presented by a virus that has killed more than 600,000 people in the United States alone, as well as the rise of more transmissible and more virulent variants." *Id.* The Policy provides for covered individuals to seek exceptions based on medical contraindications or precautions, disability, or religion, and to request a deferral of vaccination during pregnancy. *Id.*, Ex. 2, (Policy).

Plaintiffs are America's Frontline Doctors, Deborah Choi, a student at University of California Irvine School of Law, and Carly Powell, a student at University of California Riverside. Mses. Choi and Powell allege that this mandatory vaccination policy violates their Constitutional rights because the vaccine is allegedly "experimental, ineffective, and dangerous," presumably due to their prior infection of COVID-19 that allegedly puts them at higher risk in taking the vaccine.

As relevant here, the Policy's Frequently Asked Questions ("FAQ") directly

CROWELL & MORING LLP
ATTORNEYS AT LAW
-7-
OPP. TO TRO; CASE NO. 5:21-CV-01243

address the particular circumstance in which someone has been either "recently diagnosed with COVID-19 and/or [] had an antibody test that shows that [they] have natural immunity." Kuwahara Decl., Ex. 2, (FAQ No. 9). The FAQ clarifies that such individuals can apply for a Medical Exemption for up to 90 days after diagnosis and certain treatment. Individuals are not, however, permanently exempt. As explained in the FAQ: "According to the US Food and Drug Administration,[2] . . . 'a positive result from an antibody test does not mean you have a specific amount of immunity or protection from SARS-CoV-2 infection. . . . Currently authorized SAR-CoV-2 antibody tests are not validated to evaluate specific immunity or protection from SARS-CoV-2 infection.' For this reason, individuals who have been diagnosed with COVID-19 or had an antibody test are not permanently exempt from vaccination." *Id.*

## III. ARGUMENT

### A. Legal Standard

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008). "Where the government is the opposing party, balancing of the harm and the public interest merge." *Harvest Rock Church, Inc. v. Newsom*, Case No. EDCV 20-6414, 2020 WL 7639584 (C.D. Cal. Dec. 21, 2020) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

A preliminary injunction requires "substantial proof" and "[i]t frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden

---

[2] The Policy links to a May 19, 2021, FDA Safety Communication, Antibody Testing Is Not Currently Recommended to Assess Immunity After COVID_10 Vaccination: FDA, available at https://www.fda.gov/medical-devices/safety-communications/antibody-testing-not-currently-recommended-assess-immunity-after-covid-19-vaccination-fda-safety, also attached as Kuwahara Decl., Ex. 25.

of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). The elements of a TRO and of a preliminary injunction are substantially identical. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co*., 240 F.3d 832, 839 n.7 (9th Cir. 2001).

### B. Plaintiffs fail to show that they are entitled to this extraordinary relief because they will not be irreparably harmed if this TRO is denied.

The Plaintiffs have not shown irreparable harm in the absence of preliminary relief. The organizational Plaintiff is not a member of the UC community subject to the Policy, and the student Plaintiffs do have choices that allow them to avoid the injury they allege they will suffer: they could choose to comply with the vaccine Policy, or they can choose not to attend classes at UC. At no time are Plaintiffs required to be vaccinated, in alleged violation of their rights, whether that is characterized as bodily integrity or need for informed consent. Though Plaintiffs may have to forego the opportunity to take classes at UC or apply to transfer elsewhere, "[a] delay in collegiate or graduate education isn't typically irreparable harm." *Klaassen v. Trustees of Indiana University,* ___ F. Supp. 3d ___, No. 1:21-CV-238, 2021 WL 3073926, at 41 (N.D. Ind. July 18, 2021) (denying motion for preliminary injunction to enjoin Indiana University's mandatory COVID-19 vaccine requirement). "Though the student may have to forego a semester of school or transfer somewhere else—certainly a difficult and inconvenient choice, and not one lightly tossed aside—they have options." *Id.* at *43.

Indeed, Mses. Choi and Powell's declarations plainly acknowledge that they have choices to make and are simply struggling with their decisions. Ms. Choi states the Policy "forces me to decide between not attending classes this fall and giving up my constitutional right to make medical decisions about my own body. This mandate also puts me under duress by requiring an immediate decision within the next week." Declaration of Deborah Choi, ¶ 6 (Dkt. No. 8, at p. 323). Ms. Powell states that she "is scrambling this month to plan my academic, financial and

work situation as classes resume next quarter" and is "forced into a whirlwind." Declaration of Carly Powell, ¶¶ 7, 9, filed July 27, 2021 (Dkt No. 8, at p. 320). This is not irreparable harm.[3]

There also is no evidence of any *emergent* irreparable harm such as might justify a TRO. Although the student Plaintiffs suggest they are struggling with an "immediate" choice or "scrambling," they both assert they contracted COVID-19 in late 2020 and for that reason they do not wish to take the available vaccines—not previously, not now, not in future. Yet UC issued its draft Policy requiring vaccination as a condition of physical access, with limited exceptions not including an exemption for individuals who have contracted COVID-19, back in April 2021. As stated in the student declarations, the student Plaintiffs were aware that UC was planning to require vaccinations when the final approval of the vaccine was available. Choi Decl. ¶ 3; Powell Decl. ¶ 5. Thus, at all times, the students were aware that their instruction would be interrupted by their opposition to taking the vaccine. Plaintiffs do not explain why they could not have taken steps earlier to seek to transfer to another school with different conditions of access. Regardless, a delay in an individual's collegiate education does not amount to irreparable harm.

Thus, Plaintiffs' request for a TRO should be denied as they will suffer no irreparable injury while the motion for a preliminary injunction is decided.

### C. Greater injury to the public interest would result from granting the TRO than in denying it.

As individuals, Plaintiffs' focus is on their individual choices and the effect of the Policy on them alone. By necessity, UC's concerns are broader. The vaccination requirement seeks "to maintain the health and well-being of the campus community and that of the general public." Kuwahara Decl., Ex. 1 (President's

---

[3] The TRO papers refer to the loss of student healthcare as a potential harm. Having health insurance is a condition of attending UC, and thus, UC provides student health insurance, which students may waive. *See* UC, Student Health Insurance Plan. *See* https://www.ucop.edu/ucship/waivers/index.html. In the event they cannot obtain health insurance through UC, they are free to obtain coverage elsewhere.

cover letter). Enjoining the enforcement of the Policy would put thousands of students, faculty and staff at a higher risk of COVID-19 infection and greater danger. These communities are heavily interdependent with frequent contact between faculty, students and staff. Declaration of Bernadette M. Boden-Albala in Support of Defendants' Opposition ("Boden-Albala Decl.") ¶ 7, filed concurrently. These campus communities are comprised of individuals who may be at more or less risk of acquiring infections such as COVID-19, and may have more or less risk for poor prognostics outcomes from said infections including hospitalizations, ICU care and death. *Id.* The Policy seeks to protect not only the vaccinated but also those who cannot be vaccinated, who are amongst the most vulnerable. Vaccines protect individuals from infection and, as importantly, high vaccine coverage in a community protects the community at large. *Id.*; *see also* Declaration of Susan S. Huang in Support of Defendants' Opposition ("Huang Decl.") ¶¶ 6-9; Declaration of David Lo in Support of Defendants' Opposition ("Lo Decl.") ¶¶ 6-10.

Many courts faced with challenges to COVID-19 restrictions and vaccine requirements have similarly concluded that the public interest in the community's health and safety weighed heavily in favor of denying such challenges and requests for injunctions. *Klaassen v. Trustees of Indiana Univ.*, No. 1:21-CV-238 DRL, 2021 WL 3073926, at *45–46 (N.D. Ind. July 18, 2021) (denying plaintiffs' motion for a preliminary injunction and upholding university's COVID-19 vaccine mandate, "the Fourteenth Amendment permits Indiana University to pursue a reasonable and due process of vaccination in the legitimate interest of public health for its students, faculty, and staff," and "the students here haven't established … that the balance of harms or the public's interest favors the extraordinary remedy of a preliminary injunction"); *Bridges v. Houston Methodist Hosp.*, No. CV H-21-1774, 2021 WL 2399994, at *2 (S.D. Tex. June 12, 2021) (dismissing motion to block policy requiring employees be vaccinated against COVID-19, defendant's policy "is a choice made to keep staff, patients, and their families safer");

*Carmichael v. Ige*, 470 F. Supp. 3d 1133, 1150 (D. Haw. 2020) (denying plaintiffs' motion for a preliminary injunction and upholding the constitutionality of Hawaii's COVID-19 restrictions, "the desires of a few cannot override the community's interest in preserving its health and well-being"); *Bannister v. Ige*, No. CV 20-00305 JAO-RT, 2020 WL 4209225, at *9 (D. Haw. July 22, 2020) (same, "Plaintiff's desire to obtain preferential treatment for himself and his family cannot override the community's interest in preserving its health and well-being").

Moreover, after over a year of operating remotely, the UC Policy for COVID-19 vaccine on colleges campuses is especially important this year because the University of California system is preparing for more than 280,000 students and more than 227,000 faculty and staff to return to campuses and other locations this fall. *See* Boden-Albala Decl. ¶ 8. Meanwhile, every day, numerous media outlets are reporting on sharply increasing numbers of COVID-19 cases and the rise of the Delta variant, especially amongst those who are unvaccinated. Kuwahara Decl., Ex. 3-6. To pause the Policy right now in the midst of preparations for a safe return to school, while members of the UC community are in the process of obtaining their vaccinations or requesting allowable exceptions, would sow confusion and interfere with UC's interest and the public interest in protecting the health and safety of UC's community from potentially devastating surges of COVID-19 infection rates across UC campuses and surrounding communities. *See* Boden-Albala Decl. ¶ 8. The Policy is a linchpin element of UC's long-planned efforts for a safe and healthy return this fall. Temporarily pausing the Policy would result in irreparable harm to UC's safe reopening plans, with a cascading negative effect on public health.

In contrast, Plaintiffs do not even seriously consider the public interest in their analysis, arguing only in passing that the Ninth Circuit's sliding scale approach allows them to show less with respect to one element if another element has a stronger showing. TRO brief, at p. 23. Plaintiff cannot prevail by ignoring the weighty public interest at stake.

On balance, the public interest in protecting hundreds of thousands of people far outweighs the alleged burden that would be borne by two individual Plaintiffs—who again, are not being forced to take the vaccine against their will--such that the Court should deny this application for a TRO. *See Bridges v. Houston Methodist Hosp.*, No. CV H-21-1774, (S.D. Tex. June 4, 2021) (denying TRO sought against hospital policy requiring employees be vaccinated against COVID-19, in part, due to the weighty public interest: "The plaintiffs are not just jeopardizing their own health; they are jeopardizing the health of doctors, nurses, support staff, patients, and their families."), attached as Kuwahara Decl. Ex. 7.

### D. Plaintiffs have not shown a likelihood of success on the merits.

#### 1. Plaintiffs are not likely to prevail on their Fourteenth Amendment claim of violation of bodily integrity because the Policy is rationally related to UC's interest in health and safety.

With respect to Plaintiffs' allegations that the Policy violates their Fourteenth Amendment right to bodily integrity, they will not be able to show any constitutional violation. The threat that COVID-19 poses to the UC community is apparent. UC's compelling interest in requiring its students and employees to be vaccinated as a condition of physical access, with only limited exceptions, is best illustrated by the fact that, by the time vaccines became available in early 2021, approximately 600,000 people in the U.S. had died of COVID-19 in the past year.

UC's Policy is rationally related to this compelling state interest of preventing the spread of COVID-19 and its severe health effects, including hospitalizations and deaths.

*First*, the Policy is one of general applicability, and thus it is well-settled that it must be rationally related to a legitimate state interest. *See Klaassen,* 2021 WL 3073926, at *17-26 (analyzing case law and holding that a vaccine mandate of general applicability is subject to rational basis review). The Supreme Court has recognized that "[s]temming the spread of COVID-19 is unquestionably a

compelling interest." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. __, 141 S. Ct. 63, 67 (2020). Mandatory vaccination is within the State's police power. *Phillips v. City of New York*, 775 F.3d 538, 453 (2d Cir. 2016) (citing *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 25-27 (1905) and *Zucht v. King*, 260 U.S. 174, 176 (1922)). Cases cited by Plaintiffs applying strict scrutiny review are inapposite. For example, in the *Cuomo* case, the Supreme Court held that the challenged restrictions were not neutral and of general applicability; rather, the restrictions "single out houses of worship for especially harsh treatment," which triggered strict scrutiny review. *Cuomo*, 141 S. Ct. at 66. Here, the Policy includes a religious exemption, and none of the concerns necessitating strict scrutiny in *Cuomo* exist.

Thus, the question before this Court is whether the Policy is rationally related to UC's legitimate and compelling interest. The overwhelming evidence of efficacy and safety of the available vaccines establishes that the Policy is rationally related to this compelling interest.[4] *See Klaassen*, 2021 WL 307326, at *26-38, 45 (denying preliminary injunction seeking to enjoin Indiana University's COVID-19 vaccine requirement). The three vaccines currently available in the United States were authorized after randomized controlled trials that were as large, or larger, than those undertaken for prior vaccines and demonstrated their efficacy and safety. Kuwahara Decl., Ex. 8 at p. 8 (Multisociety Statement on COVID-19 Vaccination as a Condition of Employment for Healthcare Personnel). The FDA and the U.S. Centers for Disease Control and Prevention (CDC) continue to conduct extensive post-authorization safety and monitoring of those who received the vaccine. *Id.*, Ex. 8 at p. 9. Currently, the evidence is overwhelming that the COVID-19 vaccine is effective in stemming the spread of COVID-19. *See* Kuwahara Decl., Exs. at pp. 8-11. The Delta variant has recently emerged as a highly contagious and more

---

[4] In opposition to any motion for preliminary injunction, UC Defendants intend to submit to the Court evidence supporting the UC COVID-19 vaccination policy, including evidence from medical and public health experts.

virulent version of the coronavirus that causes COVID-19, which appears to be causing another surge of COVID-19 cases in California. *Id.*, Ex. 12. Against this surge, the data supports that vaccination remains an effective —perhaps the single most effective—strategy for preventing severe disease, hospitalization, and death from COVID-19. *Id.*, Ex. 8 at pp. 34-36, Table 1: Vaccine Efficacy and Real-World Effectiveness (Multisociety Statement on COVID-19 Vaccination). Indeed, UC is not the only university to implement such a policy, in an effort to keep their communities safe during the pandemic, while still resuming on-campus operations and classes. *See* Kuwahara Decl., Exs. 13 - 21 (attaching policies from Johns Hopkins University, Georgetown University, Harvard University, Morehouse College, University of Pennsylvania, University of Virginia, Vanderbilt University, Wake Forest University, and Yale University).

  *Second*, UC's decision not to permanently exempt individuals who have previously had COVID-19 is also rational in light of the currently available scientific evidence. Though not entirely clear from the Complaint, the student Plaintiffs appear to challenge the Policy because it does not allow for prescreening for a previous coronavirus infection, *see* Compl. ¶ 51, and they appear to demand prescreening as a form of an exemption for previously infected individuals. Compl. ¶ 33. As explained in an article by infectious disease experts Drs. Edwards and Orenstein, though reinfection appears uncommon amongst previously infected individuals, "ascertainment of prior infection can be unreliable or impractical in some cases, and the duration of protection of prior infection is unknown. Vaccination appears to further boost antibody levels in those with past infection and might improve the durability and breadth of protection." Kuwahara Decl., Ex. 22, pp. 9-10 (Orenstein article). For these same reasons, the CDC also recommends vaccination for individual who have already had COVID-19. *Id.*, Ex. 23 (CDC FAQs about COVID-19 Vaccination). Another study suggests that the immunity of individuals who previously had COVID-19 may not be as effective against the new

and surging Delta variant. *Id.*, Ex. 24, (*Nature* article).

Plaintiffs dispute this science, but because their arguments "amount to disputes over the most reliable science," the court should not "intervene so long as the university's process is rational in trying to achieve public health." *Klaassen*, 2012 WL, at *38 (citing *Phillips*, 75 F.3d at 542). Moreover, while there is substantial scientific evidence supporting the efficacy of vaccines in preventing severe outcomes once the individual is exposed to the virus, no similar scientific support exists for the efficacy of antibody tests in detecting levels of immunity, let alone preventing severe outcomes for one who is infected.[5] For example, the FDA, as cited in the FAQs to the Policy, cautions that antibody tests should not be used to evaluate a person's level of immunity or protection from COVID-19, as more research is needed to understand the meaning of a positive or negative antibody tests. Kuwahara Decl., Ex. 25 (FDA Safety Communication). Plaintiffs' skepticism of CDC and FDA guidance does not dictate a different result.

Accordingly, Plaintiffs are not likely to prevail on the merits, and this application for TRO should be denied.

> **2. Plaintiffs are not likely to prevail on their Fourteenth Amendment claim of state danger because there is no evidence that UC affirmatively placed Plaintiffs in danger, or acted with deliberate indifference toward Plaintiffs.**

With respect to Plaintiff's third cause of action, alleging a Fourteenth Amendment violation of freedom from state created danger, they cannot prove any of the elements of the claim. To prevail, Plaintiffs must prove "affirmative conduct on the part of the state in placing the plaintiff in danger" and that the state "acts with 'deliberate indifference' to a 'known or obvious danger.'" *Patel v. Kenti,* 648 F.3d 965, 974 (9th Cir. 2011).

*First*, the issuance of the UC Policy is a far cry from "deliberate indifference." Deliberate indifference is a "stringent standard of fault" and requires

---

[5] Plaintiffs cite to a declaration by Joseph A. Ladapo in their papers speaking to natural immunity, but appear not to have filed any such declaration with the Court.

that defendant "recognize an unreasonable risk and actually intend to expose the plaintiff to such risks without regard to the consequences to the plaintiff." *Id.* at 975 (brackets omitted). But the UC Policy, accompanying FAQs, and President Drake's letter introducing the Policy, <u>on their face</u> demonstrate that UC deliberately issued the Policy in an effort to <u>protect</u> the health and safety of the UC community against the COVID-19 pandemic. Kuwahara Decl., Ex. 2 (Policy). Indeed, the FAQ directly addresses the issue raised by Plaintiffs, whether and to what extent a prior COVID infection should be a basis of a permanent exemption, and cites to a recent FDA Safety Communication. *Id.*

*Second*, the scientific evidence overwhelmingly supports the conclusion that requiring vaccination is protective in nature, and quite the opposite of a "known or obvious danger." Plaintiffs argue that the vaccination requirement puts them in danger because they have been previously infected and point to the Vaccine Adverse Event Reporting System (VAERS) reports as evidence of potential harm. VAERS is system that is co-managed by the CDC and the FDA, which accepts and encourages reports of potential adverse events from anyone, even if "it is not clear that the vaccine caused the adverse event." Kuwahara Decl. 26 (VAERS FAQ, "Who can report to VAERS"?). VAERS cannot detect if a vaccine caused an adverse event but can identify unusual or unexpected trends. *Id.* ("What is VAERS?") Certainly reports of adverse events associated with the COVID-19 vaccine exist. But, as of July 19, over <u>338 million doses</u> of COVID-19 vaccine have been given in the United States, and as the CDC states, "serious safety problems are rare" and long-term health problems are "extremely unlikely." *Id.*, Ex. 27 (CDC, Safety of COVID-19 vaccines). FDA continues to conduct "intensive monitoring" of COVID-19 vaccine safety as the shots are administered, and "strongly believes that the known and potential benefits of COVID-19 vaccination greatly outweigh the known and potential risks of COVID-19." *Id.*, Ex. 28 (FDA, COVID-19 Vaccine Safety Surveillance, July 12, 2021).

In light of the overwhelming evidence supporting the efficacy and safety of vaccination, and the availability of the medical exemption, Plaintiffs cannot prevail on their claim that the UC defendants placed them in the path of a "known or obvious danger."

### 3. Plaintiffs' state law claims are barred by the Eleventh Amendment, which forecloses state law claims against state actors in federal court.

With respect to Plaintiff's Fourth and Fifth causes of action brought under California state law claims, the Eleventh Amendment forecloses those claims. The Eleventh Amendment bars state law claims against state actors in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984). This Court also lacks jurisdiction to issue any TRO against The Regents as an entity. *Feied v. The Regents of the Univ. of California*, 188 F. App'x 559, 561 (9th Cir. 2006) ("This Court has repeatedly held that the Regents are an arm of the state entitled to Eleventh Amendment immunity"). These claims should be dismissed, and Plaintiffs cannot show that they will prevail.

In sum, Plaintiffs have failed to meet all of the requirements for obtaining extraordinary relief in the form of a TRO.

### E. The scope of the injunction sought by Plaintiffs is inappropriately broad and is not narrowly tailored to the alleged harm.

The injunctive relief as requested reaches far beyond what is necessary to address any alleged harm or concerns of these particular Plaintiffs. This suit is brought by two individual student Plaintiffs (and an entity with no standing and that has alleged no harm, *see* Declaration of Simone Gold (Dkt No. 8, at p. 305)), who have very individualized concerns about UC's Policy. If any injunctive relief is granted (which Defendants do not concede is appropriate), that relief must be narrowly tailored to remedy the specific harm shown to these Plaintiffs, and not directed to other parties who are not before this court. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1140 (9th Cir. 2009) (holding that district court abused its discretion in

failing to tailor the injunction to remedy the specific harm alleged by the parties). This is particularly so in the context of a preliminary injunction or TRO, where the court has not yet resolved the merits of the dispute, and a far-reaching TRO that prevents the entire Policy from moving forward could have devastating impacts on hundreds of thousands of people.

If any restraining order is imposed, it should be limited to addressing the concerns of these two students, at two specific locations (UCI Law and UCR undergraduate). The alleged harm could be addressed by the equivalent of an exemption under the Policy, for the two student Plaintiffs while the motion for preliminary injunction is pending. Under any such order, these two students must be required to follow the requirements of masking and testing, as laid out in the Policy for unvaccinated students who receive exemptions. *See* Kuwahara Decl., Ex. 29, Appendix A to Policy, available at https://ucop.edu/uc-health/_files/fall-2021-covid-19-prevention-strategies-july.pdf. For Plaintiff Powell in particular, while the compliance deadline is August 16, her classes at UCR for undergraduates do not begin until September 23, and thus she would not miss any instruction during the pendency of the motion in any event.

## IV. CONCLUSION

For the foregoing reasons, UC Defendants respectfully request that this Court deny this request for a temporary restraining order in its entirety and to set a hearing on a motion for preliminary injunction on the ordinary motion schedule, to be heard on August 30, such that UC Defendants may have the opportunity to fully present its evidence to support its opposition.[6]

---

[6] In their proposed order, Plaintiffs requested that Defendants be ordered to provide an additional 14-days for student compliance, as well as an expedited opposition, due within 10-days, but provide no basis or rationale for these requests.

| | |
|---|---|
| Dated: July 28, 2021 | CROWELL & MORING LLP |
| | By: */s/ Emily T. Kuwahara* |
| | Emily T. Kuwahara |
| | Kristin Madigan |
| | Suzanne Rode |
| | Uri Niv |
| | Attorneys for Defendants Kim A. Wilcox, Howard Gillman, The Regents of the University of California, and Michael V. Drake |