1

2

3

4

5

Christina Gilbertson (California Bar No. 236877)
christina@jfnvlaw.com
Jennings & Fulton, LTD
2580 Sorrel Street
Las Vegas, NV 89146
Phone: 702-979-3565

6

7

8

9

10

Gregory J. Glaser (California Bar No. 226706)
greg@gregglaser.com
Greg Glaser, Attorney at Law
4399 Buckboard Drive #423
Copperopolis, CA 95228
Phone: 925-642-6651

11

12

13

14

15

Joseph S. Gilbert (Nevada Bar No. 9033)
joey@joeygilbertlaw.com
Joey Gilbert & Associates
405 Marsh Avenue
Reno, NV 89509
Phone: 775-284-7700
*Admitted pro hac vice*

16

Attorneys for Plaintiffs

17

18

19

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

20

21

22

23

AMERICA'S FRONTLINE
DOCTORS, *et al.*,

            *Plaintiffs*,

    v.

24

25

26

27

KIM A. WILCOX, in his official
capacity as CHANCELLOR OF
THE UNIVERSITY OF
CALIFORNIA RIVERSIDE, *et al.*,

            *Defendants*.

28

**Case Number: 5:21-cv-01243**

**PLAINTIFFS' OPPOSITION TO
MOTION TO DISMISS**

**Date:**      January 3, 2022
**Time:**      1:30 PM
**Location:**  Riverside Courtroom 1
**Judge:**    Honorable Jesus G. Bernal

# TABLE OF CONTENTS

I.  Introduction ..............................................................................................1

II.  Plaintiffs Have Standing .........................................................................5

   A.  Student Plaintiffs ...............................................................................5

   B.  AFLDS Has Both Direct and Associational Standing ..............................7

III.  Emergency Use Authorization ..................................................................9

IV.  Religious Freedom and Privacy ..............................................................10

   A.  Correctly Understanding the Case .........................................................10

   B.  Understanding Separate But Equal ........................................................13

   C.  Masking and Testing..........................................................................14

V.  Strict Scrutiny Is Necessary To Prevent The Government's Elimination of Natural Unvaccinated People .......................................................................17

VI.  State-Created Danger ...........................................................................20

VII.  UC Bait & Switch Scheme. ...................................................................23

VIII.  Vaccine Mandate Exemptions Are Not Arbitrarily Limited to One Constitutional Right Only. ...........................................................................24

IX.  Conclusion ........................................................................................25

# TABLE OF AUTHORITIES

## United States Constitution

14th Amendment ................................................................................6, 17, 19, 24

## Statutes

21 U.S.C. § 360bbb-3 ...............................................................................1

21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(I-III) ........................................................9, 10

## Cases

*AFSCME Council 79 v. Scott*, 717 F.3d 851, 873-74 (11th Cir. 2013)...............16

*Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996)...............................4

*Anderson v. City of Taylor*, 2005 U.S. Dist. Lexis 44706 (E.D. Mich. August 11, 2005) ................................................................................................16

*Arizona v. Biden*, No. 2:21-cv-01568-MTL, Dkt. 34 (US District Court for the District of Arizona, 10/22/21)...........................................................20

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ...........................................7

*Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 111 S. Ct. 2166, 115 L. Ed. 2d 96 (1991) ...........................................................................5

*Aviles v. De Blasio*, 2021 U.S. Dist. LEXIS 38930 (S.D.N.Y. Mar. 2, 2021) .....15

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ..................................7

*Bostic v. McClendon*, 650 F. Supp. 245, 249 (N.D. Ga. 1986) ...........................17

*BST Holdings, L.L.C. v. OSHA*, No. 21-60845, 2021 U.S. App. LEXIS 33698 (5th Cir. Nov. 12, 2021)...................................................................18

*Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S. Ct. 1788, 20 L. Ed. 2d 797 (1968)...........................................................................................16

*Dahl v. Bd. of Trs. of W. Mich. Univ.*, No. 1:21-cv-757, 2021 U.S. Dist. LEXIS 167041, at *5 (W.D. Mich. Aug. 31, 2021) ......................................18

*Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1203 (10th Cir. 2003) ......................16

*Friend et al. v. City of Gainesville* (State of Florida, Circuit Court: Alachua County, Case No. 01-2021-CA-2412) ..............................................18

*Garrity v. New Jersey*, 385 U.S. 493, 497-98, 87 S. Ct. 616, 17 L. Ed. 2d 562 (1967)...........................................................................................17

*Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977).........8

*Jacobson v. Massachusetts,* 197 U.S. 11, 22 (1905)................................20, 22, 23

*Jenkins v. McKeithen*, 395 U.S. 411, 421-422 (1969)........................................7

*John Doe #1 #14 & Jane Doe #1 #2 v. Austin*, No. 3:21-cv-1211-AW-HTC, 2021 U.S. Dist. LEXIS 236327 ................................................................................1

*Johnson v. United States*, 333 U.S. 10, 13, 68 S. Ct. 367, 92 L. Ed. 436 (1948).16

*Kehr Packages v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3rd Cir. 1991)................7

*Krause v. Rhodes*, 570 F.2d 563 (6th Cir. 1977), cert. denied, 435 U.S. 924 (1978)..........................................................................................................7

*Lebron v. Sec'y, Fla. Dep't of Children & Families*, 710 F.3d 1202, 1214-15 (11th Cir. 2013) ....................................................................................................16

*Mack v. S. Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986)...................5

*Magliulo v. Edward Via Coll. of Osteopathic Med.*, No. 3:21-CV-2304, 2021 U.S. Dist. LEXIS 159265, at *18................................................................15, 17

*Michalski et al. v. St. John Fisher College, et al.* (State of New York, Supreme Court: County of Onondaga, Index No. 8063/2021) ........................................18

*Morales v. Cruse*, 483 F. App'x 375, 376 (9th Cir. 2012) ...................................8

*Oklahoma v. Biden*, No. 5:21-cv-01069-G (US District Court for the Western District of Oklahoma, 11/4/21) ...................................................................13, 20

*Scheuer v. Rhodes*, 416 U.S. 232 (1974)..............................................................6

*Schmerber v. Cal.,* 384 U.S. 757, 767–68 (1966) .........................................13, 20

*Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973)..........................................................................................................16

*Skinner v. Ry. Labor Executives Ass'n*, 489 U.S. 602, 616 (1989)................13, 20

*Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981) ...........................................7

*Texas v. Biden*, No. 3:21-cv-309. Dkt 1. (US District Court for the Southern District of Texas, 10/29/21) ..........................................................................19

*Tomick v. United Parcel Serv., Inc.*, 511 F. Supp. 2d 235, 240 (D. Conn. 2007)16

## I. Introduction

The vast majority of the US does *not* mandate Covid-19 vaccination, testing, or masks.[1] Not surprisingly, federal courts across the country have begun *granting* relief to plaintiffs challenging Covid-19 vaccines, testing, and masks.

In addition to the new case law precedents cited below, Plaintiffs also offer new evidence supporting the allegations in the Complaint – recently produced public record documents show the University of California receiving *billions of dollars* from Covid-19 vaccine manufacturers (Pfizer, Moderna, Janssen, NIH). *See,* Glaser Declaration highlighting the UC's conflicts of interest.

It is disgraceful that the UC is asking this Court for an unchecked hall pass on the UC financiers' biotech. The UC is asking this Court to ignore the financial conflicts, ignore mainstream and independent science refuting the UC's pharma promotion, and grant raw deference to government mandated genetic biotech "in every arm". That's not law. On a motion to dismiss, courts take the facts alleged in the Complaint as true. Applied here, this Court can rule for Plaintiffs on *either* of the following independent grounds:

1. A narrow statutory ruling that Covid-19 emergency use authorized (EUA) products cannot be mandated, for the simple reason that federal statute (and recent federal case law) explicitly prohibit it.[2]

---

[1]    Bunis, D, et al. (November 2021). *List of Coronavirus-Related Restrictions in Every State.* AARP. https://www.aarp.org/politics-society/government-elections/info-2020/coronavirus-state-restrictions.html; see also Ballotpedia (2021). *State-level mask requirements in response to the coronavirus (COVID-19) pandemic, 2020-2021.* https://ballotpedia.org/State-level_mask_requirements_in_response_to_the_coronavirus_(COVID-19)_pandemic,_2020-2021.

[2]    21 U.S.C. § 360bbb-3; *John Doe #1 #14 & Jane Doe #1 #2 v. Austin*, No. 3:21-cv-1211-AW-HTC, 2021 U.S. Dist. LEXIS 236327, at *17 (N.D. Fla. Nov. 12, 2021) (finding that EUA vaccines cannot be mandated, "Because the plaintiffs have not shown they are (or will be) required to receive an EUA-

**2.** A comprehensive ruling that healthy Americans have the fundamental constitutional right to decline a government injection of biotechnology, even in an emergency.

The Defendants are correct on one point: this Court's job is not peer-review. Judicial review requires something even more thorough than peer-review: expert vetted review with opportunity for cross-examination of live witnesses. This allows the lawyers to actually do their jobs. Indeed, in public health constitutional challenges, lawyers are supposed to carefully review epidemiological evidence and public records to assist the court.[3]

Here are Plaintiffs' rebuttals to each of Defendants' five points in the moving papers:

**(1) Standing.** Recognizing Plaintiffs' case theory, standing is detailed in both the Complaint and concurrently filed plaintiff declarations -- the vaccine mandate actively harms their individual health and public health, and causes them to experience unlawful 'separate but equal' schooling.

**(2) and (3) Religious Freedom and Privacy.** The Complaint and plaintiff declarations show that for all unvaccinated religious people who dare to decline injectable biotech, Defendants treat these natural people as second-class citizens to be muzzled by oxygen-depriving masks, probed by carcinogen-containing swabs and other tests to extract DNA, and subjected

_____

labeled, non-BLA-compliant vaccine, the plaintiffs have not shown a likelihood of success").

[3]     Wendy E. Parmet, *Public Health and Constitutional Law: Recognizing the Relationship*, 10 J. Health Care L. & Pol'y 13 (2007). Available at: http://digitalcommons.law.umaryland.edu/jhclp/vol10/iss1/3 ("Epidemiology, however, also plays an important role in constitutional law, especially in many doctrines and cases, some of which were discussed above, in which the state's purported attempt to protect public health is relevant to the determination of the constitutionality of state action… To answer each of these questions, the Court had to review and assess epidemiological evidence.")

1   to quarantine and isolation for inevitable false positives from said tests.

2   These words are harsh, but do harsh actions not call for harsh rebuttals?

3   Most jurisdictions reject the dystopian rules applied by the UC, and public

4   discourse has not shied away from strong rebuttal language.

5   **(4)  Strict Scrutiny.**  The UC is a public trust that receives billions of

6   dollars annually from Covid-19 vaccine manufacturers. The UC now

7   mandates its financiers' genetic biotech injections, and even helped

8   develop the biotech. It is highly inappropriate (as history will judge) for

9   courts to defer to government mandated genetic biotech injections.

10   Defendants are attempting to use the judiciary as another face of

11   mandatory biotech. By contrast, Plaintiffs ask our judiciary to represent

12   the substance of our Constitution.

13   **(5) State-Created Danger.** Plaintiffs clearly allege Defendants' vaccine

14   mandate is actively harming public health and individual health.

15   The Defendants are offering blanket deference to public health officials in

16   league with Defendants and who are literally paying Defendants billions of

17   dollars. By contrast, Plaintiffs are offering this Court mainstream consensus

18   science and independent scientific data[4] from experts who are successful healing

19

20   ────────────────

[4]   Plaintiff America's Frontline Doctors is widely supported in explaining
21   mainstream and independent data. See for example:

22   Public Health and Medical Professionals for Transparency (December 8,
2021). *FOIA Documents.* https://phmpt.org/ (Pfizer's own report reveals that

23   from December 1, 2020 to February 28, 2021, the first 90 days that Pfizer's
Covid vaccine had been rolled out, there were 1,223 deaths recorded and 42,086

24   adverse reactions and vaccine injuries reported worldwide. The largest number of

25   adverse reactions was recorded in the United States (13,739) and the UK
(13,404). Researchers only included reports that they deemed to be serious cases.

26   Reports are submitted voluntarily, and the magnitude of underreporting is
unknown).

27   International Alliance of Physicians and Medical Scientists (October 29,

28   2021). *Declaration.* https://doctorsandscientistsdeclaration.org.

people daily. Respectfully, Plaintiffs' position is more *balanced* than Defendants'. Perhaps this would be surprising if one were unapprised of the character evidence that Covid-19 biotech comes from convicted felons.[5]

One of the scholarly criticisms of our judiciary in the Covid-19 era has been the judiciary's deference to pharma science hiding behind the curtain 'mainstream government information only'. This often comes across to the public as a form of partiality rather than faithful compliance with FRE 702 (re qualification of experts), especially to the extent that a judge summarily dismisses all evidence/cases of widespread vaccine harm regardless of plaintiffs' top experts proffered.

Indeed, Defendants here are fallaciously attempting to mislead this Court to work from an entirely different set of facts than those alleged in the Complaint. If the Court acquiesces to Defendants' efforts, it would technically convert the Motion to Dismiss into one for summary judgment,[6] thereby allowing

---

The point here is not to provide an exhaustive list of independent medical sources, but to emphasize that *independent* information is essential to *independent* judgment. Both historically and today, mainstream public health information is routinely wrong and then clarified later, at which point the public is happy that not everyone was forced to go along. The judiciary serves a key checks and balances role to ensure that people are not forcefully injected by the government.

[5]     Here is just a sample: Department of Justice data cited by Groeger, L (2014). *Big Pharma's Big Fines.* ProPublica. https://projects.propublica.org/graphics/bigpharma. For more detail, please refer to Glaser Declaration.

[6]     FRCP 12(d), "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." See also, *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996) ("A motion to dismiss . . . must be treated as a motion for summary judgment… if either party… submits materials outside the pleadings in support or opposition to the motion, and if the district court relies on those materials."). However, reliance on matters of public

Plaintiffs early discovery (yet Defendants recently declined Plaintiffs' request to propound early discovery, so the attached public records may have to suffice for now).

## II.    Plaintiffs Have Standing

### A. Student Plaintiffs

Per stipulation of counsel (filed 12/8/21, Dkt. 46), the parties have agreed that the anonymous plaintiffs can proceed anonymously pre-trial. So that issue is now moot in Plaintiffs' favor.

Next, Defendants' Motion to Dismiss takes issue with certain plaintiffs' lack of enrollment in classes. However, the First Amended Complaint (FAC) and Student Plaintiff declarations show Defendants' vaccine mandate actively prevents enrollment. For example, Plaintiff A.B. has no exemption (so she is not allowed on campus per Defendants' mandates). She is eager to attend classes, but is forced into solitude solely because of the mandates. FAC ¶¶ 10-13, 23, 35 68, 73, 85, 87.

What should one do in Plaintiffs' position under duress, threatened by the UC with potential injury/death by vaccine, or else suffer the UC's draconian muzzling (face covering), DNA probing (testing with inevitable false positives), and isolation (contact tracing and quarantine from false positives)?

Plaintiff Students only obtained 'exceptions' to the vaccine mandate under duress. Duress is explicitly cited in the FAC, and again in student declarations in support of Plaintiffs' Request for Temporary Restraining Order.[7]

_____

record "does not convert a Rule 12(b)(6) motion to one for summary judgment." *Mack v. S. Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *abrogated on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 111 S. Ct. 2166, 115 L. Ed. 2d 96 (1991).

[7]    Here is a representative example, "UC Irvine's implementation of the UC's Covid-19 vaccine mandate has put Deborah under duress and impaired her ability to exercise informed consent/refusal of the Covid-19 vaccine with

The FAC alleges that the evidence shows Defendants are engaged in an unlawful segregation campaign that harms individual health and public health.

> "Plaintiffs' protected right to bodily integrity is secured by the Due Process Clause of the United States Constitution, allowing Plaintiffs to navigate the UC campuses free from forced medical experimentation and segregation based on medical condition and genetic status." ¶73

> Defendants' unscientific decision to reject Prescreening will increase the short-term and long-term vaccine injury rate thereby making UC campuses less safe from SARS-CoV-2, and other pathogens. Defendants' direct attack, under color of law, on Plaintiffs' bodily integrity is an unconstitutional abuse of power that is harming public health, not advancing it." ¶68

All four Student Plaintiffs are currently enrolled as students. They are not required to suffer Defendants' Covid-19 vaccine trap in order to sue for the harm caused by the very existence of the trap itself that is preventing them from entering campus as unbranded.

Defendants cast raw speculation on whether natural immunity even exists or how long it exists for. Such matters are for discovery and expert testimony, not a motion to dismiss.  On a motion to dismiss, this Court must accept as true the allegations in the FAC[8] that Plaintiffs got Covid-19, speedily recovered, and

---

physicians of her choice."  FAC ¶13. "This mandate also puts me under duress by requiring an immediate decision within the next week. It presents me with an ultimatum between accepting this novel genetic medical intervention (the Covid-19 vaccine) and standing to lose everything I have worked for at UCI--my scholarship, my connections to the UCI community, mentorship relationships with professors, leadership opportunities this fall, financial stability, and even my very academic enrollment." Deborah Choi Declaration in Support of Plaintiffs' Request for Temporary Restraining Order, ¶6.

[8]     "In passing on a motion to dismiss for failure to state a claim, the allegations of the complaint should be construed favorably to the pleader. *Scheuer v. Rhodes*, 416 U.S. 232 (1974), later app., *Krause v. Rhodes*, 570 F.2d 563 (6th Cir. 1977), cert. denied, 435 U.S. 924 (1978). Further, the allegations of

currently have natural immunity. Indeed, to this day every Plaintiff has remained healthy without any issues whatsoever for themselves or others, yet another testament to natural immunity for self and public.

## B. AFLDS Has Both Direct and Associational Standing

FAC ¶¶ 3-13 address America's Frontline Doctors (AFLDS) and the harm the organization suffers as a direct result of the UC vaccine mandate. Specifically, Defendants have removed from AFLDS the ability to protect their naturally immune patients from physical injury. The direct result is AFLDS physicians cannot write medical exemptions based on prescreening. On one hand, Defendants allow AFLDS doctors to prescreen for other viral infections such as measles, yet on the other, Defendants baselessly and unscientifically decree that this time-tested medical experience will not be accepted for Covid.

The FAC alleges that Defendants' position is novel and radical. And yes, sometimes the government promotes scientific positions that are wrong, novel, and radical. Respectfully, much of scientific history class is actually devoted to that observation, especially as applied to big pharma, such as Pfizer's Bextra, Merck's Vioxx, Wyeth's Fen-Phen, etc etc.

AFLDS does have representative standing to assert the rights of its members. Courts have long held that organizations are permitted to assert the

the complaint must be taken as true, *Jenkins v. McKeithen*, 395 U.S. 411, 421-422 (1969). Because of the liberal pleading standard prescribed by F.R.C.P. Rule 8(a), dismissal for failure to state a claim is viewed with disfavor, and is rarely granted." *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (a claim is sufficient to withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure when, accepting as true the facts alleged in the complaint but not any legal conclusions, the claim has "facial plausibility," that is, it allows the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Kehr Packages v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3rd Cir. 1991)("[U]nder Rule 12(b)(6) the defendant has the burden of showing no claim has been stated.").

rights of their members. Even in the absence of direct organizational standing, an organization may be able to establish representational standing to assert the rights of their members, based on injuries to its members. An organization can establish representative standing by showing that: (a) at least one of its members has standing to sue in their own right; (b) the interests that it seeks to protect are germane to the organization's purpose; (c) and that neither the claim nor the relief requires participation of the organization's individual members in the lawsuit. *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977).

The FAC is clear that AFLDS is seeking redress for the rights of its members. *See e.g.*, FAC ¶¶ 5-9 in particular. It is asserted that its members, some of which are listed as Plaintiffs in the FAC, have standing to sue in their own right, as they have personally suffered harm. Furthermore, the interests that AFLDS seek to protect are germane, and at the very core of the organizations purpose, as set forth in the FAC. Lastly, neither the claims, nor the relief requested, requires participation of individual AFLDS members because it would render the litigation cumbersome to have too many plaintiffs all stating the same harm, when a single well-crafted court order can fix everything.

Defendants' reliance on *Morales v. Cruse*, 483 F. App'x 375, 376 (9th Cir. 2012) to support their assertion of mootness is misplaced, because Morales involved a prisoner alleging constitutional violations in connection with him being placed in a unit, which he was later released from, rendering his claim moot. This is not the factual basis of Plaintiff's claim, and the doctrine of mootness does not apply here.

The UC's arbitrary 90-day rule means that AFLDS doctors are *currently* unable to write science-based medical exemptions for naturally immune patients at the UC. While Defendants are correct that the CDC guidance is limited to 90-day exemptions for evidence of previous infection, the FAC and Plaintiffs'

1   experts unequivocally dispute the arbitrariness of the 90-day limitation.

2   Furthermore, even the Defendants' relied upon "authorities" of the CDC and

3   Infectious Disease Society of America acknowledge that the 90-day limitation is

4   arbitrary, to wit: "…vaccination should be deferred for *at least* 90 days…" and

5   "the durability of protection from natural infection versus vaccination cannot be

6   determined…"  *See, e.g.,* Motion to Dismiss at 6:24-28 and 7:11-13.

7          Ultimately, on a motion to dismiss, such dispute must be resolved in favor

8   of the Plaintiffs.

9   **III.    Emergency Use Authorization**

10         The FAC sates the legal argument plain as day, which requires a ruling for

11  Plaintiffs:

12         Presently all Covid-19 vaccines available to the Plaintiffs are
13         authorized only for emergency use. And the federal law governing
           such authorization, 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(I-III), grants
14         the patient explicitly "the option to accept or refuse administration
           of the [EUA] product".
15

16         Every FDA fact sheet for a Covid-19 vaccine available to Plaintiffs
17         states the same disclaimer, "It is your choice to receive or not
           receive the [Pfizer-BioNTech, Moderna, Janssen] COVID-19
18         Vaccine. Should you decide not to receive it, it will not change your
19         standard medical care." This precise language is required by federal
           statute because available Covid-19 vaccines are *not* FDA approved
20         but rather are Emergency Use Authorization (EUA) only. The same
21         precise statutory language also applies for all Covid-19 tests and
           face coverings – they too are EUA and so pursuant to federal statute
22         if an individual declines these EUA products, it cannot change the
23         individual's standard medical care.

24         And yet, as the Plaintiffs in this case respectfully decline these EUA
25         products, Defendants openly threaten to disenroll them and remove
           their standard healthcare offered through Student Health Services.[9]
26

27  ─────────────────────

28  [9]     See e.g., "Student Health Insurance Plan (SHIP). All registered UCR
    students are automatically enrolled in the SHIP, a comprehensive and affordable

Therefore, Defendants are openly violating federal law (in a field preempted by federal law) in their zeal to rush a vaccine mandate to promote Defendants' highly suspect 'separate but equal' campus segregation policies. Students with natural immunity are treated like second class citizens (weekly swabs up the nose, daily masks on the face, and more).

The previously referenced section (21 U.S.C. § 360bbb-3) of the Federal Food, Drug, and Cosmetic Act governing medical products approved for emergency states that the FDA-approved fact sheet must state "the consequences, if any, of refusing administration of the product." Nowhere in an FDA fact sheet for vaccines, face masks, or Covid-19 tests, does it specify that a person may be denied education, denied student health services, disciplined, required to seek religious belief accommodation, or otherwise discriminated against for refusal. Nor does any fact sheet state that people declining will be forced to use still other EUA products.

## IV.   Religious Freedom and Privacy

### A. Correctly Understanding the Case

While Defendants are correct that the religious accommodation process can involve *disclosure* of a sincerely held religious belief, that puts the cart before the horse in this particular case. Plaintiffs allege that they should not be required to apply for religious exemption *in the first place* because the UC implemented an unfair segregation policy targeted to their natural genetic status. See e.g., FAC ¶¶ 90-94.

For example, if the UC required doctors to declare their religious beliefs to the college before they could decline a patient's request for unnecessary surgery, then the proper legal issue would be whether the surgery was necessary in the first place, not whether the doctor's religious beliefs must be invoked in order to stop an unnecessary surgery. The plaintiffs have clearly alleged there is no

---

insurance plan that is covered by financial aid…. All UCR students have access to SHS [Student Health Services], even if you aren't covered by SHIP." https://studentdocs.ucr.edu/studenthealth/uc-riverside_student_health_services-brochure.pdf.

1    personal or public health justification *in the first place* for the mandate.

2        The FAC confirms the UC's rejection of natural immunity is actively

3    harming public health and putting Plaintiffs' lives in danger. The FAC further

4    confirms that the UC's behavior is an unlawful scattershot approach to health.

5    The UC targeting everyone with naturally functioning mRNA genetic status and

6    pretending they are unclean is unscientific, and amounts to vaccine salesmanship,

7    especially given the UC's recent receipt of billions of dollars from vaccine

8    manufacturers.

9        A growing amount of independent data proves that Covid-19 vaccination

10   is actively harming the public health generally and individuals specifically.

11       **a.**    The vaccinated carry a very high viral load.[10] Vaccinated people are

12   more likely to spread coronavirus.[11] The vaccinated acquire and transmit the

13   virus as readily – or more readily – than the unvaccinated.[12]

14       **b.**    Vaccinated people had extremely brief and transient immunity for

15   only a handful of months from the original variant. According to the CDC

---

[10]    Chau, N.V.V., et al. (October 11, 2021). *Transmission of SARS-CoV-2 Delta Variant Among Vaccinated Healthcare Workers*, *Vietnam,* Preprints with The Lancet. https://ssrn.com/abstract=3897733.

[11]    See e.g., Delaney, P (October 6, 2021). *Brief video illustrates dramatic spikes in COVID-19 deaths after jabs in 40 nations.* LifeSite News. https://www.lifesitenews.com/news/brief-video-illustrates-dramatic-spikes-in-covid-19-deaths-following-jabs-in-40-nations/.
    The Expose (November 2, 2021). *Pandemic of the Vaccinated – Worldwide data on 188 countries proves the highest Covid-19 case rates are in the most vaccinated countries.* https://theexpose.uk/2021/11/02/worldwide-data-proves-the-highest-covid-19-case-rates-are-in-the-most-vaccinated-countries/.

[12]    Subramanian SV, et al. (September 30, 2021). *Increases in COVID-19 are unrelated to levels of vaccination across 68 countries and 2947 counties in the United States*. Eur J Epidemiol. 2021;1-4. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8481107/.

Director, they have no protection whatsoever from acquiring the variant of concern, the Delta variant.[13] Meanwhile, most cases of the Omicron variant occur in the vaccinated, whereas natural immunity stops Omicron.[14]

   **c.**     There is much data to show that vaccinated people are more likely to expose the community to variants.[15] As the vaccines wane after about 6 months, vaccinated people become dependent on vaccine boosters for life (UC is effectively requiring people become Pfizer customers for life).

   **d.**     Unvaccinated Covid-19 Recovered persons acquire lifelong natural immunity that is the most robust, most complete, and most durable.

   **e.**     It is counterproductive and risky to vaccinate people who are Covid-19 Recovered because they are placed at greater risk of harm in the short term and in the long term.

   **f.**      National data from the United States government databases (VAERS and VSD) show vaccinated people are suffering permanent disability and death from Covid-19 vaccination in staggering and unprecedented numbers.

   **g.**     Countries with the lowest vaccination rates experience the lowest number of coronavirus cases. Counties with lower vaccination numbers have far

---

[13]     Holcombe, M, et al. (August 6, 2021). *Fully Vaccinated People Who Get a CoVID-19 Breakthrough Infection Transmit the Virus, CDC Chief Says*. CNN Health. https://www.cnn.com/2021/08/05/health/us-coronavirus-thursday/index.html.

[14]     Redd, A, et al. (December 9, 2021) *[preprint] Minimal cross-over between mutations associated with Omicron variant of SARS-CoV-2 and CD8+ T cell epitopes identified in COVID-19 convalescent individuals.* https://www.biorxiv.org/content/10.1101/2021.12.06.471446v1

[15]     Keehner, J, et al. (September 1, 2021). *Resurgence of SARS-CoV-2 Infection in a Highly Vaccinated Health System Workforce (letter to the editor)*. N Engl J Med 2021; 385:1330-1332. https://www.nejm.org/doi/full/10.1056/NEJMc2112981. See also footnote 10.

fewer cases than areas with higher vaccination rates.[16]

**h.**  The current worldwide trend (i.e., Japan, Sweden, Finland, Denmark, Norway, India, and most countries on the African continent) is to stop aggressively pushing vaccination and start respecting natural immunity and proven cures like Ivermectin and HCQ.[17]

### B. Understanding Separate But Equal

Plaintiff Students are currently being subjected to 'separate but equal' schooling at the UC on a daily basis -- it is oppressive and Orwellian. UC management is engaged in unscientific practices to target natural and religious peoples for committing the 'offense' of simply existing with natural immunity.

---

[16]  See footnote 12.

[17]  See e.g., Turner, H. (October 27, 2021). *Japan drops vax rollout, goes to Ivermectin, ENDS COVID almost overnight*. News Desk. https://halturnerradioshow.com/index.php/en/news-page/world/japan-drops-vax-rollout-goes-to-ivermectin-ends-covid-almost-overnight.
Public officials are declaring openly that America is suffering because of vaccine mandates. See e.g., Los Angeles County Sherriff's Department (November 2, 2021). *Imminent Threat to Public Safety Due to Vaccine Mandates*. Press Conference. https://lasd.org/imminent-threat-to-public-safety-due-to-vaccine-mandates/.
Note also the following excerpt from Oklahoma's Governor and Attorney General in their Complaint *Oklahoma v. Biden* (November 4, 2021), "Here are some related and non-exhaustive considerations that compel the conclusion that this [vaccine] mandate is arbitrary and capricious:… Defendants' failure to exempt those who have a natural immunity to COVID-19…. Oklahoma seeks to protect its residents' health and well-being from the vaccine mandate; consequently, the State has standing to bring this cause of action in federal court…. Being vaccinated does not stop anyone from being a carrier of COVID-19…. This mandate forcibly intrudes into the physical person of the federal contractor's employee; it penetrates not just into the individual's skin but into her bloodstream—and becomes a component of her body. See Skinner, 489 U.S. at 616; Schmerber, 384 U.S. at 767–68. This involves the person's privacy, bodily integrity, and dignity. Society certainly recognizes the right to avoid such a compelled intrusion as reasonable."

*See* especially FAC ¶22.

Although student plaintiffs have been temporarily permitted to continue enrollment at the UC, the harms described in the complaint remain in full force under the 'separate but equal' policies implemented by Defendants. *See e.g.*, FAC ¶21, "Defendants are unconstitutionally coercing and segregating Plaintiffs without scientific justification because Plaintiffs are exercising their Constitutional, and federal and state statutory, rights to decline involuntary injection of harmful experimental drugs."

Most of the square footage on campus is outdoors. It is impossible to go to class without navigating around campus outdoors. The unvaccinated are easy to spot on campus – they're the ones forced to muzzle their faces. The history of forced segregation is exactly this – falsely and indiscriminately branding an entire group of natural people as dirty and unclean. History shows the effects of such segregation are *generational*. When the UC says today in essence 'this drinking water fountain is for vaccinated people only', the stain is upon the entire university, both today and in the future. History will prove this true. Plaintiffs realize the UC may think that naturally immune people are unclean, but science proves the UC wrong. Plaintiffs realize the UC is deferring to authority, but history proves that is a frequently failed strategy, including recently with FDA-approved opioids. And federal courts are routinely the bodies to intervene and stop such misplaced thoughts and deference.

### C. Masking and Testing

As humans with natural immunity, it is unreasonable to require Plaintiffs to submit to masking and testing.[18]

---

[18]    Borger, P, et al. (2020). *External peer review of the RTPCR test to detect SARS-CoV-2 reveals 10 major scientific flaws at the molecular and methodological level: consequences for false positive results*. Corman-Drosten Review Report. https://cormandrostenreview.com/report/.
*See*, compendium of studies showing face masks do not work to stop

1    Plaintiffs' experts confirm it is a statistical certainty that a person who is

2    Covid-recovered is *not* at risk of reacquiring Covid-19.  But should such a person

3    undergo repeated PCR testing at a lab which uses a cycle threshold (Ct) >30, it is

4    inevitable that sooner or later this person will have a false positive result. The

5    popular commercial labs in California use a Ct >40, guaranteeing false results. A

6    false positive result will force Plaintiffs into a wholly unnecessary and punitive

7    quarantine.

8    In addition, the vast majority of counties and states have stopped Covid-19

9    oppression (vaccine passports, mandatory testing and masking). (See footnote 1).

10   Recent case law has criticized mandatory testing and found it unenforceable in

11   context.[19] PCR nasal testing involves a swab being placed inside a student's nose

12   by a stranger to remove genetic material that is then sent to a PCR laboratory for

13   evaluation. Although some promote the test as painless and quick, many students

14   _____

15   Covid-19, but rather actively harm individual health and public health.
     https://www.aflds.org/covid/masks/ ("Indeed, harms from prolonged masking are

16   increasingly being documented in many scientific studies, especially in the areas

17   of healthcare workers, school children, newborn infants, and bacterial infections
     in the general population, as described below…. Prolonged use of N95 and

18   surgical masks by healthcare professionals during COVID-19 has caused adverse

19   effects such as headaches, rash, acne, skin breakdown, and impaired cognition in

20   the majority of those surveyed… Aiello and colleagues described a study in
     which 1437 university students were randomized by dormitory to three arms:

21   control, surgical masks alone, and surgical masks plus hand hygiene[;] the study

22   could not distinguish the relative contributions of each intervention.")

     Spitzer, M (2020). *Masked education? The benefits and burdens of*

23   *wearing face masks in schools during the current Corona pandemic*. Trends in
     Neuroscience and 16 Education.  2020;20:100138.

24   https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7417296/.

25

26   [19]    *Magliulo v. Edward Via Coll. of Osteopathic Med.*, No. 3:21-CV-2304,
     2021 U.S. Dist. LEXIS 159265, at *18 (W.D. La. Aug. 17, 2021). Compare

27   *Aviles v. De Blasio*, 2021 U.S. Dist. LEXIS 38930 (S.D.N.Y. Mar. 2, 2021)
     pending appeal in the 2nd Circuit.

28

experience it as painful and traumatic. Well-recognized side effects include bloody nose, nasal discomfort, headaches and nasal lesions.[20]

Mandatory public health testing is disfavored in American law. *See e.g.*, *Anderson v. City of Taylor*, 2005 U.S. Dist. Lexis 44706 (E.D. Mich. August 11, 2005) (mandatory blood draws for a firemen's "wellness program" under FEMA auspices was invalidated as a Fourth Amendment seizure because the blood draws were mandatory and the firemen were subject to punishment for not agreeing); *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1203 (10th Cir. 2003) (reversing pretrial dismissal of parents' 14th Amendment challenge to the school's practice of requiring blood tests and physical examinations without parental consent; the 10th Circuit cited the United States Supreme Court to protect "fundamental rights" in medical decision making); *Tomick v. United Parcel Serv., Inc.*, 511 F. Supp. 2d 235, 240 (D. Conn. 2007) ("Consent to a drug test under threat of termination has been found to be involuntary and thus not a waiver of the right to assert a violation of § 31–51(x) Id. "[A choice between discharge or submitting to a drug test] is tantamount to no choice at all....").[21]

---

[20]   Gupta, K et al (2021). *Adverse effects of nasopharyngeal swabs: Three dimensional printed versus commercial swabs*. INFECT CONTROL HOSP EPIDEMIOL. 2021;42(5):641-642. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7308627/.

[21]   *See also*, *AFSCME Council 79 v. Scott*, 717 F.3d 851, 873-74 (11th Cir. 2013) ("To begin with, we do not agree that employees' submission to drug testing, on pain of termination, constitutes consent under governing Supreme Court case law. *See* Lebron, 710 F.3d at 1214-15. Although a "search conducted pursuant to a valid consent is constitutionally permissible," *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973), consent must be "in fact voluntarily given, and not the result of duress or coercion, express or implied." *Id.* at 248; *see also Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S. Ct. 1788, 20 L. Ed. 2d 797 (1968); *Johnson v. United States*, 333 U.S. 10, 13, 68 S. Ct. 367, 92 L. Ed. 436 (1948) (consent invalid when "granted in submission to authority rather than as an understanding and intentional waiver of a constitutional right"). Employees who must submit to a drug test or be fired are

Naturally immune people are in the class least likely to transmit the virus to others. Vaccinated people are more likely to transmit the virus to others.[22] The UC's brand of segregation is unequal application of the law, and a violation of the Equal Protection clause. [23]

## V.   Strict Scrutiny Is Necessary To Prevent The Government's Elimination of Natural Unvaccinated People

Plaintiffs realize the government is quite pleased with its mandatory biotech injections "in every arm" that operate at the DNA level.

Fortunately, across the country, District Courts are beginning to apply the proper standard of strict scrutiny to vaccine mandates at schools and places of employment, such as *Magliulo v. Edward Via Coll. of Osteopathic Med.*, No. 3:21-CV-2304, 2021 U.S. Dist. LEXIS 159265, at *18 (W.D. La. Aug. 17, 2021) (agreeing with State attorney general and granting TRO for student challenging college vaccine mandate because "VCOM can likely show a compelling state interest (safety of students, employees, and patients), but is unlikely to meet the second prong, that it used the least restrictive means of compelling that interest."); *Dahl v. Bd. of Trs. of W. Mich. Univ.*, No. 1:21-cv-757, 2021 U.S.

hardly acting voluntarily, free of either express or implied duress and coercion. *See Bostic v. McClendon*, 650 F. Supp. 245, 249 (N.D. Ga. 1986); *cf. Garrity v. New Jersey*, 385 U.S. 493, 497-98, 87 S. Ct. 616, 17 L. Ed. 2d 562 (1967) (holding that the government cannot require its employees to relinquish their Fifth Amendment rights on pain of termination because "[t]he option to lose their means of livelihood or to pay the penalty of self-incrimination" was "the antithesis of free choice").")

[22]     See footnote 15.

[23]     Parasidis, E et al. (February 16, 2021). *Assessing The Legality Of Mandates For Vaccines Authorized Via An Emergency Use Authorization*. Health Affairs. https://www.healthaffairs.org/do/10.1377/hblog20210212.410237/full/ (prominent health law scholars state that individuals should not suffer reprisal for refusing an EUA product).

Dist. LEXIS 167041, at *5 (W.D. Mich. Aug. 31, 2021) (granting TRO for student challenging college vaccine mandate because "Plaintiffs have established a likelihood of success on the merits of the Free Exercise Claims. Plaintiffs have established that WMU's vaccination requirement is subject to strict scrutiny.") Many state courts are also applying strict scrutiny. *See e.g.*, *Michalski et al. v. St. John Fisher College, et al.* (State of New York, Supreme Court: County of Onondaga, Index No. 8063/2021). Emergency Order to Show Cause With Temporary Restraining Order, dated September 21, 2021 (granting TRO and Burden Shifting for students asserting strict scrutiny in challenge to college vaccine mandate); *Friend et al. v. City of Gainesville* (State of Florida, Circuit Court: Alachua County, Case No. 01-2021-CA-2412). Order Granting Plaintiffs' Petition for Temporary Injunction, dated September 22, 2021 (applying strict scrutiny to grant TRO for city employees challenging city's vaccine mandate).

Unfortunately, undersigned counsel acknowledges there are still some District Court Judges applying rational basis review in deference to government mandates that healthy people be injected with experimental Covid-19 gene therapy biotechnology (vaccines).

So far, the outcome of legal challenges to vaccine mandates (freedom v. forcing biotechnology on healthy citizens) has depended *entirely* on the level of scrutiny applied by the District Court Judge. Therefore, Plaintiffs respectfully submit that appellate court resolution of the conflict among District Courts is likely to decide the outcome of the pretrial motions in this case. Indeed, see *BST Holdings, L.L.C. v. OSHA*, No. 21-60845, 2021 U.S. App. LEXIS 33698 (5th Cir. Nov. 12, 2021) (granting preliminary relief that halted Defendant's vaccine mandate through OSHA), stating:

> "[T]he Mandate fails to consider what is perhaps the most salient fact of all: the ongoing threat of COVID-19 is more dangerous to some employees than to other employees… a naturally immune

unvaccinated worker is presumably at less risk than an unvaccinated worker who has never had the virus. The list goes on, but one constant remains – the Mandate fails almost completely to address, or even respond to, much of this reality and common sense…. It is clear that a denial of the petitioners' proposed stay would do them irreparable harm. For one, the Mandate threatens to substantially burden the liberty interests [footnote omitted] of reluctant individual recipients put to a choice between their job(s) and their jab(s). For the individual petitioners, the loss of constitutional freedoms 'for even minimal periods of time…unquestionably constitutes irreparable injury.' [citations omitted]…. For similar reasons, a stay is firmly in the public interest. From economic uncertainty to workplace strife, the mere specter of the Mandate has contributed to untold economic upheaval in recent months. Of course, the principles at stake when it comes to the Mandate are not reducible to dollars and cents. The public interest is also served by maintaining our constitutional structure and maintaining the liberty of individuals to make intensely personal decisions according to their own convictions – even, or perhaps particularly, when those decisions frustrate government officials."

There are 27 States of the Union (the majority) challenging vaccine mandates in Court.  It appears the days of deferential mandatory vaccination are numbered.  *See e.g.*, strong court filings against Covid-19 vaccine mandates from the Attorney Generals for Texas, Arizona, and Oklahoma:

- Texas Attorney General, "Even one American being forced by their government to receive a vaccine that they do not want out of fear of losing their job is an irreparable injury and a stain on Defendants' records." Complaint in *Texas v. Biden*, No. 3:21-cv-309. Dkt 1. (US District Court for the Southern District of Texas, 10/29/21). https://www.texasattorneygeneral.gov/sites/default/files/global/images/20211029_TX%20v%20Biden%20et%20al%20(file%20marked).pdf.

- Arizona Attorney General, "The federal employee mandate violates employees' constitutional right to bodily integrity and to refuse medical procedures…While Buck v. Bell has never been overruled, its inapplicability today is not seriously disputed. The same result should obtain for Jacobson." *Arizona v. Biden*, No. 2:21-

cv-01568-MTL, Dkt. 34 (US District Court for the District of
Arizona, 10/22/21).
https://www.azag.gov/sites/default/files/docs/press-
releases/2021/motions/034%20Renewed%20Motion%20for%20TR
O%20and%20PI.PDF.

- Oklahoma Attorney General, "Here are some related and non-
exhaustive considerations that compel the conclusion that this
[vaccine] mandate is arbitrary and capricious:… Defendants' failure
to exempt those who have a natural immunity to COVID-19….
Being vaccinated does not stop anyone from being a carrier of
COVID-19…. This mandate forcibly intrudes into the physical
person of the federal contractor's employee; it penetrates not just
into the individual's skin but into her bloodstream—and becomes a
component of her body. *See Skinner*, 489 U.S. at 616; *Schmerber*,
384 U.S. at 767–68. This involves the person's privacy, bodily
integrity, and dignity. Society certainly recognizes the right to avoid
such a compelled intrusion as reasonable." *Oklahoma v. Biden*, No.
5:21-cv-01069-G (US District Court for the Western District of
Oklahoma, 11/4/21).
https://www.oag.ok.gov/sites/g/files/gmc766/f/okla._v._biden_com
pl.pdf.

## VI.    State-Created Danger

*Jacobson v. Massachusetts* has been referenced to justify the sacrifice of
the individual's body for the perceived benefit of the masses. Indeed, the official
syllabus to *Jacobson* refers to "sacrifice" explicitly, "That the legislature has
large discretion to determine what personal sacrifice the public health, morals
and safety require from individuals is elementary." *Jacobson v. Massachusetts,*
197 U.S. 11, 22 (1905). Compelled sacrifice under *Jacobson* has increasingly
been found archaic.

To be perfectly clear, one hundred and fifteen years after *Jacobson,* law
and justice confirm that the government does not have the right to sacrifice
Plaintiffs.

It was foundational to *Jacobson* that the vaccine was to halt the

transmission of a virus with 30% mortality. In contrast, Covid-19 has greater than 99.9% survivability in plaintiff age group and >99.6% survivability overall for the American population of all ages.[24]

The average age of death from Covid *exceeds* a person's life expectancy (age 82 vs. age 79.) It is manifestly unjust and unlawful to compel the sacrifice of young people, especially in order to hypothetically protect individuals already exceeding average life expectancy.



Defendants are requiring Plaintiffs to sacrifice themselves to Plaintiffs' own personal detriment, and to the detriment of public health. FAC ¶¶27-42. If this is not a state-created danger, what is?

Moreover, the entire worldwide scientific consensus is that Covid-19 vaccination does <u>not</u> prevent infection or transmission of the coronavirus.

[24]    Reese, H. et al (November 25, 2020). *Estimated Incidence of Coronavirus Disease 2019 (COVID-19) Illness and Hospitalization—United States, February–September 2020*. Clinical Infectious Diseases*, Volume 72, Issue 12, 15 June 2021, Pages e1010–e1017. https://doi.org/10.1093/cid/ciaa1780. US Centers for Disease Control and Prevention (2021). *Weekly updates by select demographic and geographic characteristics: provisional death counts for coronavirus disease (COVID-19)*. https://www.cdc.gov/nchs/nvss/vsrr/covid_weekly/index.htm#AgeAndSex.

1  Therefore, as a matter of law, Covid-19 vaccination cannot be considered a

2  public health measure, lest public health be redefined to support an

3  unprecedented power grab.[25] All credible scientific experts and sources have

4  found that these injections do not in fact prevent the transmission or acquisition

5  of the coronavirus. Thus, the injections are a personal health measure only.[26]

6

7

_____

8  [25]      The fact that the CDC literally changed the definition of the word

9  "vaccine" in August 2021 to attempt to include these injections under a

   "vaccination" branding, certainly to manipulate public sentiment, and likely to

10 also avoid the proper standard of judicial review, does not permit the judiciary to

   defer to the State with anything less than strict scrutiny. Indeed, the *Jacobson*

11 Court limited its holding to vaccine mandates that were "adapted to prevent the

   spread of contagious diseases[.]" *Jacobson v. Massachusetts*, 197 U.S. 11, 35

12 (1905).

13

14 [26]      *See e.g.*, Moderna (November 2021). *Program Patents.*

   https://www.modernatx.com/patents.

15      United States Securities and Exchange Commission (August 6, 2020).

   *Moderna Form 10Q.*

16 https://www.sec.gov/Archives/edgar/data/1682852/000168285220000017/mrna-

17 20200630.htm.

       Nakagami H. (September 2021). *Development of COVID-19 vaccines*

18 *utilizing gene therapy technology.* Int Immunol. 2021 Sep 25;33(10):521-527.

19 https://pubmed.ncbi.nlm.nih.gov/33772572/.

       FDA (October 2021). *Comirnaty.* Vaccines, Blood, and Biologics.

20 https://www.fda.gov/vaccines-blood-biologics/comirnaty.

21      A partial list of prominent scientists and persons who have stated this

22 publicly include: the CDC Director Dr. Walensky, the Director of the NIAID Dr.

   Fauci, Harvard Professor Dr. Haseltine, Harvard Professor of Medicine Dr.

23 Kulldorff, University of Oxford Professor of Infectious Disease Epidemiology

   Dr. Gupta, Professor of Medicine at Stanford University Medical School Dr.

24 Bhattacharya, the Chief Medical Officer of Moderna Dr. Zaks, the Chief

25 Scientist of the WHO Dr. Swaminathan, the Prime Minister of the United

   Kingdom the Honorable Boris Johnson, the President of the United States Joe

26 Biden, the Leader of the Oxford Vaccine Team Professor Sir Andrew Pollard,

27 EU research scientists Drs. Bhakdi, Hockertz, Palmer, Wodarg, Surgeon General

   State of Florida Dr. Ladapo, Public Health England, CDC, Nobel Prize Winner

28 in Medicine Dr. Luc Montagnier and prominent physician-scientist-Professor Dr.

To the extent this Court claims authority to mandate biotech under *Jacobson*, 197 U.S. at 35, "common belief of the people", then consider the following recent poll results of the American people that confirm the common belief supports natural immunity rather than vaccination:

> Do you believe people recovered from COVID-19 with natural immunity from antibodies have the same level of protection as those that are fully vaccinated? Yes: 46.5%, No: 29.2%, Not Sure: 24.3%. The Trafalgar Group, *Nationwide Issues Survey – Covid Immunity* (October 2021). https://thetrafalgargroup.org/COSA-National-COVIDimmunity-Full-Report.pdf

> How confident are you that the federal government is reporting unbiased information on the effectiveness of COVID-19 vaccines? Confident: 44.5%, Not Confident: 50.8%. The Trafalgar Group, *Nationwide Issues Survey – Vaccine Confidence* (July 2021). https://thetrafalgargroup.org/COSA-National-Vaccine-Confidence-Full-Report.pdf

Countless US government officials have also rejected the vaccines (at one point Anthony Fauci admitted live on CSPAN that 40% of government scientists declined the Covid vaccine). It is now commonplace for officials and reporters to be caught on camera donning masks solely for public display, and otherwise flaunting their own rules.

**VII.   UC Bait & Switch Scheme.**

It is transparent that the testing/sequestration regime for the Covid unvaccinated is much stricter than for the Covid vaccinated (https://ucop.edu/uc-health/_files/fall-2021-covid-19-prevention-strategies-july.pdf shows the current rules). For example, it is particularly striking that a negative test result upon return does not release the Covid unvaccinated person from their sequestration requirement.

Additionally, just as Defendants performed a bait & switch this summer (first claiming EUA vaccines would not be mandatory, then flip flopping to make

---

McCullough. All these, and many others, have stated the injections do not stop transmission.

them mandatory), so too Defendants have laid the foundation for a bait & switch in 2021-22 with religious exemptions, as alleged on information and belief: Defendants are presently offering students a religious exemption to vaccination that Defendants plan to unilaterally remove from students at Defendants' earliest strategic opportunity, *after* Defendants have forced students with religious exemptions to submit multiple Covid-19 test results to Defendants. Defendants are heavily invested in and financially supported by a Covid-19 propaganda narrative that requires and benefits from Defendants generating false positive test results (i.e., high cycle PCR results known to be false positives) that Defendants can claim are genuine positives (i.e., to justify Defendants' ongoing separate but equal school policy).

## VIII.   Vaccine Mandate Exemptions Are Not Arbitrarily Limited to One Constitutional Right Only.

When it comes to asserting constitutional rights (i.e., 1st Amendment freedom of religion, 14th Amendment bodily integrity), an individual is not required to make an 'election of remedies' by choosing only one constitutional right. An individual is entitled to the full suite of Constitutional rights, and if denied any constitutional right (i.e., here the UC is denying a 14th Amendment bodily integrity exemption based on natural immunity), the individual is entitled to a remedy.

It would be an injustice if the converse were true – if a defendant could freely infringe the right to freedom of speech so long as the defendant "allows" freedom of assembly.

Here, just because Defendants have *temporarily* granted a few religious exemptions for some of the Plaintiffs, this does not grant Defendants a license to injure every Plaintiffs' other constitutional rights with impunity.

The government cannot claim that only religious people have the right to opt-out of government medical experiments.  Indeed, Plaintiffs specifically pled

for declaratory relief here in regards to their 14th Amendment right of bodily integrity, which Defendants are actively subverting to enforce a 'separate but equal' policy. *See e.g.*, FAC, ¶¶43 and 86.

### IX.   Conclusion

There comes a time for everyone to want to decline a vaccine – for many it is a Covid booster, or a swine flu shot, or any of the 250+ vaccines currently in R&D according to the trade publication PHRMA.[27] Natural immunity works. It is just and right to respect natural people. Most jurisdictions do.[28]

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the unmeritorious Motion to Dismiss and allow students affected by this mandate to have their day in court.

Respectfully submitted this December 17, 2021

/s/ Christina Gilbertson
Christina Gilbertson (California Bar No. 236877)
christina@jfnvlaw.com
Jennings & Fulton, LTD
2580 Sorrel St.
Las Vegas, NV 89146
Phone: 702-979-3565

Attorneys for Plaintiffs

---

[27]    PhRMA (July 21, 2020). *Report: Medicines in Development for Infectious Diseases 2020 Report.* https://phrma.org/resource-center/Topics/Report/Medicines-in-Development-for-Infectious-Diseases-2020-Report; PhRMA (2016). *New report highlights more than 250 vaccines in development.* https://catalyst.phrma.org/new-report-highlights-more-than-250-vaccines-in-development.

[28]    See section III.A above ("Correctly Understanding the Case")