1  EMILY T. KUWAHARA (SBN 252411)
     ekuwahara@crowell.com
2  URI NIV (SBN 307487)
     univ@crowell.com
3  CROWELL & MORING LLP
   515 South Flower Street, 40th Floor
4  Los Angeles, CA  90071
   Telephone: 213.622.4750
5  Facsimile: 213.622.2690

6  KRISTIN J. MADIGAN (SBN 233436)
     kmadigan@crowell.com
7  SUZANNE E. RODE (SBN 253830)
     srode@crowell.com
8  CROWELL & MORING LLP
   3 Embarcadero Center, 26th Floor
9  San Francisco, CA  94111
   Telephone: 415.986.2800
10 Facsimile: 415.986.2827

11 [Additional Counsel Listed on Next Page]

12 Attorneys for Defendants
   KIM A. WILCOX, HOWARD GILLMAN,
13 CAROL CHRIST, GENE BLOCK,
   THE REGENTS OF THE UNIVERSITY OF
14 CALIFORNIA AND MICHAEL V. DRAKE

15          UNITED STATES DISTRICT COURT

16          CENTRAL DISTRICT OF CALIFORNIA

17               EASTERN DIVISION

18 AMERICA'S FRONTLINE            Case No. 5:21-cv-01243-JGB-KK
   DOCTORS, et al.,
19                                **DEFENDANTS' MEMORANDUM
              Plaintiffs,          OF POINTS AND AUTHORITIES
20                                 IN SUPPORT OF MOTION TO
        v.                         DISMISS SECOND AMENDED
21                                 COMPLAINT UNDER FED. R.
   KIM A. WILCOX, in his official  CIV. PROC. 12(B)(1) AND
22 capacity as CHANCELLOR OF THE   12(B)(6)**
   UNIVERSITY OF CALIFORNIA
23 RIVERSIDE, et al.,             Date:   March 7, 2022
                                  Time:   9:00 a.m.
24            Defendants.         Ctrm.:  Riverside, Courtroom 1
                                  Judge:  Hon. Jesus G. Bernal
25
                                  Date Action Filed:   July 26, 2021
26

27

28

1   CHARLES F. ROBINSON (SBN 113197)
      charles.robinson@ucop.edu
2   NORMAN J. HAMILL (SBN 154272)
      norman.hamill@ucop.edu
3   KATHARINE ESSICK (SBN 219426)
      katharine.essick@ucop.edu
4   UNIVERSITY OF CALIFORNIA
    Office of General Counsel
5   1111 Franklin Street, 8th Floor
    Oakland, CA  94607
6   Telephone: 510.987.9800
    Facsimile: 510.987.9757
7
    Attorneys for Defendants
8   KIM A. WILCOX, HOWARD GILLMAN,
    CAROL CHRIST, GENE BLOCK,
9   THE REGENTS OF THE UNIVERSITY OF
    CALIFORNIA AND MICHAEL V. DRAKE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................... 1

II. FACTUAL AND PROCEDURAL BACKGROUND ................................. 3

    A. In July 2021, the University of California Issued a COVID-19 Vaccination Policy ............................................................................ 3

    B. The Vaccine Policy Provides for a 90-day Temporary Medical Exemption for Individuals Recently Diagnosed with COVID-19 ........ 3

    C. The Vaccine Policy Reflects Guidance from Various Sources, Including the CDC and the FDA ............................................................ 4

    D. The Court Denied Plaintiffs' Application for a Temporary Restraining Order ............................................................................ 7

    E. In the Second Amended Complaint, Plaintiffs Allege that UC's Vaccine Policy Violates the Fourteenth, First, and Fourth Amendments ............................................................................ 8

III. ARGUMENT ........................................................................................... 9

    A. Legal Standards ................................................................................. 9

    B. This Court Should Dismiss the Fourteenth Amendment Substantive Due Process and Equal Protection Claims Because the Vaccine Policy is Rational ................................................................ 12

        1. As this Court has already held, rational basis review applies to Plaintiffs' Fourteenth Amendment substantive due process claim ................................................................ 12

        2. Rational basis review also applies to Plaintiff's Fourteenth Amendment Equal Protection claim ....................... 13

        3. The UC Vaccine Policy is rationally related to a legitimate interest .......................................................... 14

        4. Plaintiffs' allegations urging strict scrutiny fail ...................... 17

    C. The Court Should Dismiss the First Amendment Claim of Free Exercise of Religion Because Plaintiffs Allege No Burden on Religious Practices .......................................................... 19

    D. The Court Should Dismiss the Fourth Amendment Privacy Claim Because Plaintiffs Have Not Alleged an Unreasonable Search or Seizure .......................................................... 21

    E. This Court Should Dismiss the Fourteenth Amendment Claim of State-Created Danger as the Vaccine Policy Is Not an Act of Deliberate Indifference .......................................................... 23

    F. Plaintiffs Lack Standing to Bring Certain Claims ............................. 24

        1. Plaintiff AFLDS lacks standing because it is not subject to the policy and lacks associational standing .......................... 24

**TABLE OF CONTENTS**
(continued)

Page

2. Plaintiffs Powell, Choi, and Ozdemirci lack standing to challenge the vaccine requirement, and Plaintiff Page lacks standing to challenge requirements related to exceptions ................................................................... 25

3. If the Court dismisses the SAC claims in part, certain defendants should also be dismissed. ...................... 26

G. This Court Should Grant the Motion to Dismiss Without Leave to Amend .......................................................... 27

IV. CONCLUSION ............................................................. 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re America's Frontline Doctors,*
No. 21-295, 2021 WL 5043752 (U.S. Nov. 1, 2021) ............................................... 8

*In re America's Frontline Doctors,*
No. 21-71209, 2021 U.S. App. LEXIS 23885 (9th Cir. Aug. 11, 2021) ................... 8

*Ass'n of Christian Sch. Int'l v. Stearns,*
678 F. Supp. 2d 980 (C.D. Cal. 2008), *aff'd,* 362 F. App'x 640 (9th Cir. 2010) ................... 25

*Augustine v. United States,*
704 F.2d 1074 (9th Cir. 1983) ............................................................................... 10

*Aviles v. Blasio,*
No. 20 CIV. 9829 (PGG), 2021 WL 796033 (S.D.N.Y. Mar. 2, 2021) ................... 22

*Balistreri v. Pacifica Police Dep't,*
901 F.2d 696 (9th Cir. 1988) ................................................................................. 10

*Ball v. Massanari,*
254 F.3d 817 (9th Cir. 2001) ................................................................................. 14

*Burcham v. City of L.A.,*
No. 2:21-CV-07296-RGK-JPR, 2022 WL 99863 (C.D. Cal. Jan. 7, 2022) ............... 16, 17, 22

*Cal. Grocers Ass'n v. City of Long Beach,*
No. 2:21-CV-00524-ODW (ASX), 2021 WL 3500960 (C.D. Cal. Aug. 9,
2021) ........................................................................................................................ 10

*City of L.A. v. Lyons,*
461 U.S. 95 (1983) ................................................................................................. 24

*Dahl v. Bd. of Trs. of W. Mich. Univ,* No. 1:21-CV-757, 2021 WL 3891620, at *2-
3 (W.D. Mich. Aug. 31, 2021) ............................................................................... 18

*Denis v. Ige,*
No. CV 21-00011, 2021 WL 1911884 (D. Haw. May 12, 2021) ........................... 18

*Does 1-6 v. Mills,*
__ F. Supp. 3d __, No. 1:21-CV-00242-JDL, 2021 WL 4783626 (D. Me. Oct.
13, 2021), *aff'd,* 16 F.4th 20 (1st Cir. 2021) ........................................................ 19

*Emp. Div., Dep't of Hum. Res. of Oregon v. Smith,*
494 U.S. 872 (1990) ............................................................................................... 19

CROWELL
& MORING LLP
ATTORNEYS AT LAW

*Enesco Corp. v. Price/Costco Inc.*,
    146 F.3d 1083 (9th Cir. 1998) ................................................................. 10

*F.C.C. v. Beach Commc'ns, Inc.*,
    508 U.S. 307 (1993) ................................................................................. 14

*Fields v. Palmdale Sch. Dist.*,
    427 F.3d 1197 (9th Cir. 2005) ................................................................. 15

*In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Litig.*,
    483 F. Supp. 3d 838 (C.D. Cal. 2020) ...................................................... 11

*Gallagher v. City of Clayton*,
    699 F.3d 1013 (8th Cir. 2012) ........................................................... 16, 17

*Gamble v. City of Escondido*,
    104 F.3d 300 (9th Cir. 1997) ................................................................... 14

*Gerritsen v. Warner Bros. Ent. Inc.*,
    112 F. Supp. 3d 1011 (C.D. Cal. 2015) ................................................... 10

*Griffin v. Wis.*,
    483 U.S. 868 (1987) ................................................................................. 21

*Guilfoyle v. Beutner*,
    No. 2:21-CV-05009-VAP (MRWx), 2021 WL 4594780 (C.D. Cal. Sept. 14,
    2021) ........................................................................................................ 22

*Hajro v. U.S. Citizenship & Immigr. Servs.*,
    811 F.3d 1086 (9th Cir. 2016) ................................................................. 24

*Harris v. McRae*,
    448 U.S. 297 (1980) ................................................................................. 25

*Harris v. Univ. of Mass., Lowell*,
    No. 21-CV-11244, 2021 WL 3848012 (D.Mass. Aug. 27, 2021) ............. 13

*Heller v. EBB Auto Co.*,
    8 F.3d 1433 (9th Cir. 1993) ..................................................................... 20

*HSH, Inc. v. City of El Cajon*,
    44 F. Supp. 3d 996 (S.D. Cal. 2014) ....................................................... 11

*Jacobson v. Commonwealth of Mass.*,
    197 U.S. 11 (1905) ............................................................................. 12, 13

*Jones v. Williams*,
    791 F.3d 1023 (9th Cir. 2015) ................................................................. 20

*Kasza v. Browner*,
   133 F.3d 1159 (9th Cir. 1998)........................................................................ 26

*Katz v. U.S.*,
   389 U.S. 347 (1967)...................................................................................... 21

*Kheriaty v. Regents of the Univ. of Cal.*,
   __ F. Supp. 3d __, No. SACV 21-01367, 2021 WL 4714664 (C.D. Cal. Sept.
   29, 2021) ............................................................................................. 12, 13, 14

*Kheriaty v. Regents of the University of Cal.*,
   No. SACV 21-1367 JVS (KESx), 2021 WL 6298332 (C.D. Cal. Dec. 8, 2021) ............. 13, 16

*Klaassen v. Trustees of Ind. Univ.*,
   __ F. Supp. 3d __, No. 1:21-CV-238, 2021 WL 3073926, at *21 (N.D. Ind.
   July 18, 2021)........................................................................................ 12, 13

*Klaassen v. Trustees of Ind. Univ.*,
   7 F.4th 592 (7th Cir. 2021)................................................................ 13, 17, 19

*Laurie Q. v. Callahan*,
   973 F. Supp. 925 (N.D. Cal. 1997) ................................................................ 10

*Lavan v. City of L.A.*,
   693 F.3d 1022 (9th Cir. 2012)...................................................................... 21

*Lawson v. Wash.*,
   296 F.3d 799 (9th Cir. 2002)......................................................................... 20

*Lopez v. Stages of Beauty, LLC*,
   307 F. Supp. 3d 1058 (S.D. Cal. 2018) ......................................................... 10

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)...................................................................................... 24

*Magliulo v. Edward Via Coll. of Osteopathic Med*,
   No. 3:21-CV-2304, 2021 WL 3679227 (W.D. La. Aug. 17, 2021)...................... 18

*Martinez v. OneWest Bank*,
   No. EDCV1001896TJHDTBX, 2011 WL 13224842 (C.D. Cal. Mar. 28, 2011) ................. 10

*Messina v. Coll. of New Jersey*,
   No. CV2117576ZNQDEA, 2021 WL 4786114 (D.N.J. Oct. 14, 2021)................ 13

*Michalski, Madison v. St. John Fisher College*,
   No. 0008063/2021 (NY Sup. Ct., Onondaga Cty. 2021) ................................. 18

*Mission Fitness Ctr. LLC v. Newsom*,
   No. 2:20-cv-09824, 2021 WL 1856552 (C.D. Cal. May 10, 2021)...................... 10

*Morales v. Cruse*,
  483 F. App'x 375 (9th Cir. 2012) ........................................................................ 26

*Naoko Ohno v. Yuko Yasuma*,
  723 F.3d 984 (9th Cir. 2013).............................................................................. 20

*Nordlinger v. Hahn*,
  505 U.S. 1 (1992) ................................................................................................ 14

*Olson v. Cal.*,
  No. CV 19-10956, 2020 WL 6439166 (C.D. Cal. Sept. 18, 2020) ...................... 11

*Patel v. Kenti*,
  648 F.3d 965 (9th Cir. 2011)................................................................................ 23

*Phillips v. City of New York*,
  775 F.3d 538 (2d Cir. 2016).......................................................................... 13, 17

*Roberts v. Corrothers*,
  812 F.2d 1173 (9th Cir. 1987)............................................................................. 10

*Roman Cath. Diocese of Brooklyn v. Cuomo*,
  592 U.S. __, 141 S. Ct. 63 (2020) ....................................................................... 15

*Shetty v. Wells Fargo Bank*,
  No. CV-16-01514 AB, 2016 WL 9686987 (C.D. Cal. Aug. 19, 2016), *aff'd* 696
  F. App'x 828 (9th Cir. 2017) ............................................................................... 27

*Skinner v. Ry. Lab. Execs.' Ass'n*, 489 U.S. 602 (1989) ........................................ 21, 22

*Streight v. Pritzker*,
  No. 3:21-CV-50339, 2021 WL 4306146 (N.D. Ill. Sept. 22, 2021) ...................... 22

*Sylvia Landfield Trust v. City of L.A.*,
  729 F.3d 1189 (9th Cir. 2013).............................................................................. 14

*Taylor v. Rancho Santa Barbara*,
  206 F.3d 932 (9th Cir. 2000)................................................................................ 15

*Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*,
  594 F.2d 730 (9th Cir. 1979)............................................................................... 10

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003)............................................................................... 10

*Valdez v. Grisham*,
  __ F. Supp. 3d __, No. 21-CV-783 MV/JHR, 2021 WL 4145746 (D.N.M.
  Sept. 13, 2021); ................................................................................................... 13

*Vernonia Sch. Dist. 47J v. Acton*,
    515 U.S. 646 (1995) ................................................................................. 22

*Waln v. Dysart Sch. Dist.*,
    522 F. Supp. 3d 560 (D. Ariz. 2021) ........................................................ 19

*Warth v. Seldin*,
    422 U.S. 490 (1975) ................................................................................. 26

*Webb v. Trader Joe's Co.*,
    999 F.3d 1196 (9th Cir. 2021) .................................................................. 11

*Zucht v. King*,
    260 U.S. 174 (1922) ................................................................................. 13

**Statutes**

21 U.S.C. § 393 ................................................................................................ 4

42 U.S.C. § 247d-4 ........................................................................................... 4

42 U.S.C. § 1983 .............................................................................................. 8

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(1) .................................................. 9, 10

Federal Rule of Civil Procedure 12(b)(6) ................................................. 10, 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

DEFENDANTS' MPA ISO MOTION TO DISMISS SAC;
CASE NO. 5:21-CV-01243-JGB-KK

## I.    INTRODUCTION

This academic year, in the midst of the COVID-19 pandemic and after vaccines became widely available, the University of California ("UC") welcomed back over 500,000 students, faculty, and staff to campus. Under its COVID-19 Vaccine Policy ("Vaccine Policy" or "Policy"), UC requires that, with limited exceptions, students and employees must provide proof that they have been vaccinated against the virus SARS-CoV-2 as a condition of their physical presence at campus facilities. With the Vaccine Policy in place, UC has been able to reopen its campuses, continuing with in-person instruction this fall despite the COVID-19 surge caused by the Delta variant of the SARS-CoV-2 virus, and pivoting temporarily to remote instruction during January 2022 in the face of the Omicron variant and the return of students from their winter break. The success of UC's Vaccine Policy was touted by a White House Report as an example of the power of vaccination requirements in the college setting. White House Report, *Vaccination Requirements Are Helping Vaccinate More People, Protect Americans from COVID-19, and Strengthen the Economy* (Oct. 7, 2021), at pp. 14-15, https://www.whitehouse.gov/wp-content/uploads/2021/10/Vaccination-Requirements-Report.pdf (noting that UC Berkeley "now boasts a vaccination rate of 98% of graduate and undergraduate students" and "91% of faculty and staff").

The Second Amended Complaint ("SAC") brings claims by four UC students challenging the Policy under the Fourteenth, Fourth, and First Amendments, but none of these claims have merit. This Court should dismiss this suit for the following reasons:

*First*, the Court should dismiss both the Fourteenth Amendment substantive due process claim and equal protection claim (Counts 1-2) because the Policy is constitutional under rational basis review.

*Second*, the Court should dismiss the claim based on First Amendment of free exercise of religion (Count 5) because the disclosure of a religious belief is

required for UC to determine whether such a belief is "sincerely held" and to accommodate the exercise of an individual's religion. An individual's disclosure of a religious belief cannot be a burden on the exercise of one's religion.

*Third*, the Court should dismiss the Fourth Amendment privacy claim (Count 4) because the Fourth Amendment's protections against unreasonable searches and seizures do not create a generalized privacy right that covers a challenge to masking and asymptomatic testing, which is a condition of the Vaccine Policy's exceptions to the vaccine requirement. The asymptomatic COVID-19 testing, to the extent it could be considered a seizure, is also reasonable under the Fourth Amendments "special needs" doctrine.

*Fourth*, the Court should dismiss the Fourteenth Amendment Claim of state-created danger (Count 3) because the Vaccine Policy is not an act of deliberate indifference to place Plaintiffs in harm's way.

*Fifth*, each of the Plaintiffs lacks standing to bring certain claims. Plaintiff America's Frontline Doctors ("AFLDS") lacks standing to bring any claim because it is not subject to the policy. Plaintiffs Powell, Choi, and Ozdemirci lack standing to challenge the vaccination requirement in Counts 1-3 because they are excepted from the vaccine requirement. Plaintiff Page lacks standing to bring a First Amendment and Fourth Amendment challenge in Counts 4-5 because she alleges she is not on campus and alleges nothing regarding an application for an exception. Should the Court dismiss the SAC in part, Chancellors of certain campuses may be dismissed as no plaintiff will remain from those campuses.

*Finally*, given the fatal deficiencies of this amended complaint, which cannot be cured via amendment, this Court should grant this motion to dismiss without leave to amend.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   In July 2021, the University of California Issued a COVID-19 Vaccination Policy

On or about July 15, 2021, UC issued its final Policy requiring students, faculty, and staff, with limited exceptions, to be fully vaccinated against COVID-19 as a condition of physically accessing UC facilities or programs. SAC ¶ 120, ECF No. 57; Request for Judicial Notice ("RJN"), Ex. 1 (Policy). As stated in the "Policy Summary" of the Vaccine Policy, "[t]he purpose of this policy is to facilitate protection of the health and safety of the University community, including its patients as well as its Students, Trainees, Personnel and all others who work, live, and/or learn in any of the University's locations or otherwise participate in person in University Programs." RJN, Ex. 1, at 10 (Section I, Policy Summary). The Vaccine Policy provides a limited set of exceptions on the basis of medical exemption, disability, and religious objection. *Id.* at 11 (Section II, Definitions, defining "Exception").

### B.   The Vaccine Policy Provides for a 90-day Temporary Medical Exemption for Individuals Recently Diagnosed with COVID-19

The Policy includes Frequently Asked Questions ("FAQ") to address the circumstance in which someone has been either "recently diagnosed with COVID-19, and/or [] had an antibody test that shows that [they] have natural immunity." SAC ¶ 120; RJN, Ex. 1 at 19 (Section VII, FAQ, No. 9). The FAQ clarifies that such individuals may apply for a temporary medical exemption of up to 90 days after diagnosis and certain treatments. Individuals do not, however, qualify for permanent medical exemptions under the Policy. As explained in the FAQ: "According to the US Food and Drug Administration,[1] . . . 'a positive result from an

---

[1] The Policy links to FDA Safety Communication, Antibody Testing Is Not Currently Recommended to Assess Immunity After COVID-19 Vaccination: FDA (May 19, 2021), https://www.fda.gov/medical-devices/safety-communications/antibody-testing-not-currently-recommended-assess-immunity-after-covid-19-vaccination-fda-safety, also attached as RJN, Ex. 2.

antibody test does not mean you have a specific amount of immunity or protection from SARS-CoV-2 infection . . . Currently authorized SARS-CoV-2 antibody tests are not validated to evaluate specific immunity or protection from SARS-CoV-2 infection.' For this reason, individuals who have been diagnosed with COVID-19 or had an antibody test are not permanently exempt from vaccination." *Id*.

### C. The Vaccine Policy Reflects Guidance from Various Sources, Including the CDC and the FDA

Also included in the text of the Vaccine Policy is a section titled "Related Information" that provides links to guidance documents from a variety of trusted sources, including the FDA and CDC. RJN, Ex. 1 at 17-18 (Section VI, Related Information); *see also* SAC ¶ 40 (referring to UC's "dogmatic reliance upon 'CDC recommendations'").

The FDA is part of the U.S. Department of Health and Human Services and is the federal agency "responsible for protecting the public health by ensuring the safety, efficacy, and security of human … drugs, biological products, and medical devices." FDA, *What We Do*, https://www.fda.gov/about-fda/what-we-do (last visited Feb. 7, 2022); 21 U.S.C. § 393 (The FDA shall "promote the public health by promptly and efficiently reviewing clinical research and taking appropriate action on the marketing of regulated products in a timely manner").

The CDC is also part of the U.S. Department of Health and Human Services, and is tasked with "protect[ing] the public health of the nation by providing leadership and direction in the prevention and control of diseases and other preventable conditions, and responding to public health emergencies." HHS, *HHS Agencies & Offices*, https://www.hhs.gov/about/agencies/hhs-agencies-and-offices/index.html (last visited Feb. 7, 2022); 42 U.S.C. § 247d-4 ("the [CDC] has an essential role in defending against and combatting public health threats domestically and abroad").

Links embedded in the text of UC's Vaccine Policy include the following

links to FDA and CDC information and guidance:

- FDA's link to information about COVID-19 vaccines (https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/covid-19-vaccines#news);

- FDA's link to information about Janssen's COVID-19 vaccine (often called the J&J vaccine) (https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/janssen-covid-19-vaccine);

- FDA's link to information about Pfizer-BioNTech's COVID-19 vaccine (https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/comirnaty-and-pfizer-biontech-covid-19-vaccine?j=5387366&jb=1&l=131_HTML&mid=1069006&sfmc_sub=397072094&u=37365799&utm_content=12/31/2020&utm_source=MarketingCloud&utm_term=#additional);

- FDA's link to information about Moderna's COVID-19 vaccine (https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/moderna-covid-19-vaccine#additional);

- CDC's link to information about COVID-19 vaccines (https://www.cdc.gov/vaccines/covid-19/index.html); and

- CDC's link to Interim Clinical Considerations for Use of COVID-19 Vaccines Currently Approved or Authorized in the United States ("CDC Interim Clinical Considerations") (https://www.cdc.gov/vaccines/covid-19/clinical-considerations/covid-19-vaccines-us.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fvaccines%2Fcovid-19%2Finfo-by-product%2Fclinical-considerations.html) (labeled "COVID-19 Contraindications and Precautions" in the policy document).

*See* RJN, Exs. 3-14; SAC ¶¶ 38, 121.

On the issue of vaccination and prior SARS-CoV-2 infection, the federal guidance is consistent—individuals who have had COVID-19 should get

vaccinated. For example, CDC's clinical considerations state that individuals with prior infection should be vaccinated, that vaccines can be safely administered, and that the evidence suggests that the risk of reinfection is initially low but may increase with time due to waning immunity:

> People should be offered vaccination regardless of their history of symptomatic or asymptomatic SARS-CoV-2 infection; this includes people with prolonged post-COVID-19 symptoms. Data from clinical trials indicate that the currently approved or authorized COVID-19 vaccines can be given safely to people with evidence of a prior SARS-CoV-2 infection. Viral testing to assess for acute SARS-CoV-2 infection or serologic testing to assess for prior infection is not recommended for the purposes of vaccine decision-making.
>
> […]
>
> While there is no recommended minimum interval between infection and vaccination, current evidence suggests that the risk of SARS-CoV-2 reinfection is low in the period after initial infection, but may increase with time due to waning immunity. A primary vaccination series decreases the risk of future infections in people with prior SARS-CoV-2 infection.

RJN, Ex. 13 at 125 (CDC Interim Clinical Considerations); *see also* SAC ¶ 121.[2]

For certain conditions and treatments, the CDC recommends waiting 90 days after recovering from SARS-CoV-2 to vaccinate. For people with a history of multisystem inflammatory syndrome in children (MIS-C) or in adults (MIS-A), CDC guidance states:

> Current evidence suggests that the risk of SARS-CoV-2 reinfection is low in the period after initial infection but may increase with time due to waning immunity. Thus, people with a history of MIS-C or MIS-A should consider delaying vaccination until they have recovered from their illness and for 90 days after the date of diagnosis of MIS-C or MIS-A, recognizing that the risk of reinfection and, therefore, the benefit from vaccination, might increase with time following initial infection.

RJN, Ex. 13 at 125-126 (CDC Interim Clinical Considerations).

---

[2] UC quotes from the version of the CDC guidelines that are quoted in the SAC. These guidelines were updated on January 6, 2022, and the accompanying RJN provides both versions of the guidelines.

Similarly, CDC guidance states that people who received passive antibody therapies should wait 90 days after receiving treatment to vaccinate:

> Based on the estimated half-life of such therapies and evidence suggesting that reinfection is uncommon within the 90 days after initial infection, vaccination should be deferred for at least 90 days after receiving monoclonal antibodies or convalescent plasma for treatment. This is a precautionary measure until additional information becomes available, to avoid potential interference of the antibody therapy with vaccine-induced immune responses.

*Id.* at 126.

The Vaccine Policy also cites to the CDC and Infectious Disease Society of America's ("IDSA") COVID-19 Real-Time Learning Network (https://www.idsociety.org/covid-19-real-time-learning-network/vaccines/). In its Featured FAQs, the COVID-19 Real-Time Learning Network answers "How does natural immunity compare with vaccine-induced immunity to COVID-19?" RJN, Exs. 15 at 190-191, 16 at 202-203 (https://www.idsociety.org/covid-19-real-time-learning-network/vaccines/vaccines-information--faq/#vaccinesimmunity). The answer cites to studies showing that the risk of infection for those who have been previously infected or vaccinated were similarly low. But, it also goes on to explain the limitations of the studies and concludes that as of yet, "the durability of protection from natural infection versus vaccination cannot be determined." *Id.* at 191 and 202.

### D. The Court Denied Plaintiffs' Application for a Temporary Restraining Order

On July 26, 2021, Plaintiffs AFLDS, Choi, and Powell filed their initial complaint, alleging that the Policy violates their constitutional rights and California law. *See generally* Compl., ECF No. 1. With their complaint, Plaintiffs applied for a temporary restraining order ("TRO") which this Court denied on July 30, 2021. Order, ECF No. 18. On August 3, 2021, Plaintiffs applied for a Writ of Mandamus to the U.S. Court of Appeals of the Ninth Circuit Court, which was denied on

August 11, 2021. *In re America's Frontline Doctors*, No. 21-71209, 2021 U.S. App. LEXIS 23885 (9th Cir. Aug. 11, 2021). Plaintiffs then filed a Petition for a Writ of Mandamus with the U.S. Supreme Court, which was denied on November 1, 2021. *In re America's Frontline Doctors*, No. 21-295, 2021 WL 5043752 (U.S. Nov. 1, 2021).

### E.   In the Second Amended Complaint, Plaintiffs Allege that UC's Vaccine Policy Violates the Fourteenth, First, and Fourth Amendments

On September 24, 2021, Defendants Wilcox, Gillman, Drake, and The Regents of the University of California ("The Regents") filed a motion to dismiss the Complaint. ECF No. 25. In response, Plaintiffs filed the First Amended Complaint; this pleading added two new anonymous plaintiffs (L.O. and A.B.), added two new claims under the First and Fourth Amendments, and dropped the state law claims. ECF No. 30. Plaintiffs also voluntarily dismissed The Regents as a defendant in this case. ECF No. 38. Defendants filed a motion to dismiss this First Amended Complaint, which was denied as moot after the Court denied the motion for the two anonymous plaintiffs to proceed anonymously. ECF No. 53.

On January 11, 2022, Plaintiffs filed a motion for leave to file a Second Amended Complaint, identifying Lara Ozdemirci as L.O., removing A.B. as a plaintiff, and adding a plaintiff, Annabella Page, and new defendant Carol Christ, in her official capacity as Chancellor of UC Berkeley. Plaintiffs also added a new equal protection claim under the Fourteenth Amendment.

Now in its third iteration, the SAC alleges five causes of action arising from UC's COVID-19 Vaccine Policy: (1) declaratory and injunctive relief for violation of the substantive due process clause of the Fourteenth Amendment under 42 U.S.C. § 1983, which incorporates the prior bodily integrity claim; (2) injunctive relief for violation of the equal protection clause of the Fourteenth Amendment under 42 U.S.C. § 1983; (3) injunctive relief for violation of the Fourteenth

Amendment right to freedom from state-created danger; (4) injunctive relief for violation of the Fourth Amendment right to privacy; and (5) injunctive relief for violation of the First Amendment right to freedom of religion. *See* SAC.

Plaintiffs Choi, Powell, Ozdemirci, and Page each allege that they have had and recovered from COVID-19. SAC ¶¶ 20-23. Plaintiffs challenge UC's Vaccine Policy as it applies to individuals who have contracted COVID-19 and are now recovered. *See generally* SAC. Plaintiffs also challenge the masking and testing requirements that apply to those students who have received exceptions from the vaccination requirement, as a violation of the Fourth Amendment right to privacy. SAC ¶¶ 170-175. Finally, Plaintiffs challenge the requirement to disclose one's religious beliefs when applying for a religious exception as a violation of the First Amendment right to free exercise of religion. SAC ¶¶ 176-181.

Plaintiffs Choi, Powell, and Ozdemirci, prior to the submission of this motion, sought and obtained from UC one of the exceptions to the vaccination requirement of the Policy, and were notified of their status. Declaration of Danielle Bowers in Support of Motion to Dismiss ("Bowers Decl.") ¶ 5; Declaration of Jeanie Deakyne in Support of Motion to Dismiss ("Deakyne Decl.") ¶ 5; Declaration of Bettina Pedone ("Pedone Decl.") ¶ 5. As a result, these three Plaintiffs are not required to show proof of vaccination before physically accessing a University location or program in connection with their education, but they are required to comply with the Policy regarding campus access for unvaccinated or not fully vaccinated individuals. *Id.* Plaintiff Page alleges that she is in Ojai and not enrolled in classes, and thus is not on campus. SAC ¶ 23.

Defendants now bring this motion to dismiss the SAC.

## III.   ARGUMENT

### A.   Legal Standards

**Federal Rule of Civil Procedure 12(b)(1).** The Court should grant a motion to dismiss for lack of subject matter jurisdiction if, "looking at the complaint as a

whole, it appears to lack federal jurisdiction either 'facially' or 'factually.'" *Laurie Q. v. Callahan*, 973 F. Supp. 925, 928 (N.D. Cal. 1997) (citing *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). In ruling on this motion, the Court may properly review and consider the Policy as well as the accompanying declarations. The Policy is incorporated by reference into the Complaint because "the plaintiff refers extensively to the document," and because "the document forms the basis of the plaintiff's claim." *Lopez v. Stages of Beauty, LLC*, 307 F. Supp. 3d 1058, 1064 (S.D. Cal. 2018) (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)). In addition, in ruling on a Rule 12(b)(1) motion to dismiss for lack of jurisdiction, the Court is "free to hear evidence regarding jurisdiction and to rule on that issue prior to trial." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)).

**Federal Rule of Civil Procedure 12(b)(6).** A motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the allegations. *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015). A 12(b)(6) motion should be granted when, even if all the allegations in the complaint are true, "a claim fails as a matter of law, *i.e.*, a plaintiff cannot plead a set of facts where the claim will succeed." *Martinez v. OneWest Bank*, No. EDCV1001896TJHDTBX, 2011 WL 13224842, at *1 (C.D. Cal. Mar. 28, 2011) (citing *Enesco Corp. v. Price/Costco Inc.*, 146 F.3d 1083, 1085 (9th Cir. 1998)). A court may grant the motion where a plaintiff fails to present a cognizable legal theory. *Cal. Grocers Ass'n v. City of Long Beach*, No. 2:21-CV-00524-ODW (ASX), 2021 WL 3500960, at *2 (C.D. Cal. Aug. 9, 2021) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

In addition to the pleadings, the Court may consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed. *See Mission Fitness Ctr. LLC v. Newsom*, No. 2:20-cv-09824, 2021 WL 1856552, at *5–6 (C.D.

Cal. May 10, 2021) (taking judicial notice of Orders at issue, other governmental publications and guidance relating to COVID-19, and government-issued statistics regarding COVID-19). Because the UC Vaccine Policy is alleged and challenged in the Complaint, the court may consider it in its entirety. *See Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1201 (9th Cir. 2021); *In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Litig.*, 483 F. Supp. 3d 838, 842 (C.D. Cal. 2020) ("[A] court may consider other materials if (1) the authenticity of the materials is not disputed and (2) the plaintiff has alleged the existence of the materials in the complaint or the complaint 'necessarily relies' on the materials").

As other courts have recognized, a tension exists between the more liberal "plausibility" standard under Rule 12(b)(6) and the "heavy presumption of validity of government conduct inherent in the rational basis standard." *Olson v. Cal.,* No. CV 19-10956, 2020 WL 6439166, at *5 (C.D. Cal. Sept. 18, 2020) (dismissing equal protection and due process claims under rational basis review on motion to dismiss). When applying rational basis at the pleading stage, "a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications." *Id.* at *5. The rational basis review does not "license the Court to judge the wisdom, fairness, or logic of legislative choices and it ends if the Court finds a plausible reason[] for [UC's] action." *Id*. at *4 (internal quotation marks and citation omitted). Moreover, a "court may go beyond the pleadings to hypothesize a legitimate governmental purpose," so long as the rational relationship is "real." *HSH, Inc. v. City of El Cajon*, 44 F. Supp. 3d 996, 1008 (S.D. Cal. 2014) (granting motion to dismiss equal protection claim after rational basis review because plaintiff failed to meet burden to show there is no "reasonably conceivable state of facts that could provide a rational basis for the classification").

**B.** **This Court Should Dismiss the Fourteenth Amendment Substantive Due Process and Equal Protection Claims Because the Vaccine Policy is Rational**

    **1.** **As this Court has already held, rational basis review applies to Plaintiffs' Fourteenth Amendment substantive due process claim**

In this Court's Order denying Plaintiffs' application for a TRO, the Court analyzed the appropriate level of scrutiny and held that rational basis review applies to this case. TRO Order at 5-6, ECF No. 18. Since then, nothing has changed to alter the application of rational basis review. Regarding the bodily integrity[3] claim, the Court found that "Plaintiffs make no showing that the interest at issue here (bodily autonomy or informed consent) is fundamental under the Constitution so as to require greater scrutiny. Thus, the Court applies rational basis." *Id.* at 6. Rational basis review likewise applies to this Court's analysis of the UC Vaccine Policy in light of Plaintiffs' SAC. *Id.* at 5-6; *see also Kheriaty v. Regents of the Univ. of Cal.*, __ F. Supp. 3d __, No. SACV 21-01367, 2021 WL 4714664, at *6 (C.D. Cal. Sept. 29, 2021) (applying rational basis review to UC's Vaccine Policy against a similar challenge and denying motion for preliminary injunction).

The application of rational basis review to the Vaccine Policy is consistent with well-settled precedent of the U.S. Supreme Court. *Jacobson v. Commonwealth of Mass.*, 197 U.S. 11, 25–26 (1905). In *Jacobson*, the Supreme Court held that "a community has the right to protect itself against an epidemic of disease which threatens the safety of its members." *Jacobson*, 197 U.S. at 27. Though *Jacobson* was decided before the Supreme Court developed the three tiers of review (rational basis, intermediate, strict scrutiny), the Court "effectively endorsed—as a considered precursor—rational basis review of a government's mandate during a health crisis." *Klaassen v. Trustees of Ind. Univ.*, __ F. Supp. 3d __, No. 1:21-CV-

---

[3] In their initial complaint, Plaintiffs brought two claims challenging UC's policy as a violation of their right to "bodily integrity" for declaratory and injunctive relief. In the SAC, Plaintiffs reframes the bodily integrity claim as a violation of Plaintiffs' substantive due process rights under the Fourteenth Amendment.

12

238, 2021 WL 3073926, at *21 (N.D. Ind. July 18, 2021), *denying motion for injunction pending appeal*, *Klaassen v. Trustees of Ind. Univ.*, 7 F.4th 592, 593 (7th Cir. 2021). Before the current pandemic, courts regularly upheld mandatory vaccination requirements as within the State's police power under *Jacobson*. *See*, *e.g.*, *Zucht v. King*, 260 U.S. 174, 176 (1922) (citing *Jacobson*); *Phillips v. City of New York*, 775 F.3d 538, 543 (2d Cir. 2016) (same). Now, courts around the country are upholding COVID-19 vaccination requirements under rational basis review. *See, e.g.*, *Kheriaty v. Regents of the University of Cal.*, No. SACV 21-1367 JVS (KESx), 2021 WL 6298332 (C.D. Cal. Dec. 8, 2021) (ruling that plaintiff's equal protection and substantive due process claims fail as a matter of law); *Klaassen*, 2021 WL 3073926; *Harris v. Univ. of Mass., Lowell*, No. 21-CV-11244, 2021 WL 3848012 (D.Mass. Aug. 27, 2021); *Valdez v. Grisham*, __ F. Supp. 3d __, No. 21-CV-783 MV/JHR, 2021 WL 4145746 (D.N.M. Sept. 13, 2021); *Messina v. Coll. of New Jersey*, No. CV2117576ZNQDEA, 2021 WL 4786114 at *9 (D.N.J. Oct. 14, 2021).

### 2. Rational basis review also applies to Plaintiff's Fourteenth Amendment Equal Protection claim

Plaintiffs' claim that the Vaccine Policy violates the Equal Protection Clause is similarly subject to rational basis review. Rational basis review applies to an equal protection claim "unless there is a suspect or quasi-suspect classification at issue." *Kheriaty*, 2021 WL 4714664, at *7. The Vaccine Policy does not target a suspect class. Plaintiffs allege that the Vaccine Policy identifies two classes of individuals—students who are vaccinated, and students who are unvaccinated—and that the unvaccinated do not enjoy the same rights as the vaccinated. SAC ¶ 157. But being unvaccinated is not a classification for which heightened scrutiny has been applied, nor it is or similar to one, such as race, sex, national origin, alienage, and illegitimacy. *See Kheriaty* 2021 WL 4714664, at *7 (Plaintiff "presents no authority to show that any court has found a similar classification to be suspect or

13

quasi-suspect") (citing *Ball v. Massanari*, 254 F.3d 817, 823-24 (9th Cir. 2001)). Plaintiffs' equal protection claims are therefore subject to rational basis review, "the typical standard where there is not a suspect class at issue." *Id*.

### 3.   The UC Vaccine Policy is rationally related to a legitimate interest

UC's Vaccine Policy easily meets the rational basis test. The "rational basis review test is identical under the two rubrics" of substantive due process and the Equal Protection Clause. *Gamble v. City of Escondido*, 104 F.3d 300, 307 (9th Cir. 1997). In evaluating substantive due process claims, "[g]overnmental action is rationally related to a legitimate goal unless the action is clearly arbitrary and unreasonable, having no substantial relation to public health, safety, morals, or general welfare." *Kheriaty*, 2021 WL 4714664, at *7 (quoting *Sylvia Landfield Trust v. City of L.A.*, 729 F.3d 1189, 1193 (9th Cir. 2013)). Under the equal protection analysis, the "Equal Protection Clause is satisfied so long as there is a 'plausible policy reason for the classification,' the government decisionmaker relied on facts that 'may have been considered to be true,' and the 'relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational.'" *Id*. at *8 (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992)).

Under either substantive due process or equal protection, the first inquiry is whether UC's Vaccine Policy has a legitimate purpose, and then whether the Policy promotes that purpose. UC's Vaccine Policy is afforded a "strong presumption of validity." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314 (1993). UC's "legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *Id.* at 315. Generally, UC is not even required to "articulate its reasons for enacting" the Policy, and "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated" UC. *Id.*

Here, the Policy expressly provides a legitimate purpose: "The purpose of

this policy is to facilitate protection of the health and safety of the University
community, including its patients as well as its Students, Trainees, Personnel and
all others who work, live, and/or learn in any of the University's locations or
otherwise participate in person in University Programs." RJN, Ex. 1 at 10 (Policy
Summary, Section I). Indeed, the U.S. Supreme Court has recognized that
"[s]temming the spread of COVID-19 is unquestionably a compelling interest."
*Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. __, 141 S. Ct. 63, 67 (2020).

      Where, like here, the legitimate governmental purpose for the policy appears
on its face, the Court "must, even for purposes of a motion to dismiss, approach the
application of the rational basis test from the premise that [UC] had a legitimate
[purpose]." *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1209 (9th Cir. 2005) (on
motion to dismiss, holding that the court must consider the district's legitimate
purpose articulated in an exhibit attached to the complaint); *see also Taylor v.
Rancho Santa Barbara*, 206 F.3d 932, 935–38 (9th Cir. 2000) (affirming motion to
dismiss after analyzing legislative history in determining the rational basis for the
statute).

      The Vaccine Policy promotes UC's legitimate purpose of protecting the
University community, and does so by instituting requirements in harmony with
guidance from the federal agencies tasked with the health and safety of the
American people. *See* CDC Interim Clinical Considerations, RJN, Exs. 13, 14; SAC
¶ 121 (quoting same). As described above and in the SAC itself (SAC ¶ 121), the
Vaccine Policy cites to a lengthy list of materials—including guidance from the
CDC and FDA— that support the safety and efficacy of the COVID-19 vaccines.[4]
RJN, Ex. 1 at 17-18 (Section VI, Related Information). Presented with this
guidance from the federal government, "it would be rational for the University to
conclude that it would not be able to effectively ensure that all individuals had

---

[4] UC's review of the scientific literature and evidence is not limited to CDC and
FDA guidance, but for purposes of the motion to dismiss, UC Defendants limit
their argument to what is apparent on the face of the Policy and the SAC.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

DEFENDANTS' MPA ISO MOTION TO DISMISS SAC;
CASE NO. 5:21-CV-01243-JGB-KK

immunity to COVID-19 without requiring vaccination." *Kheriaty*, 2021 WL
6298332, at *8. The Policy therefore requires, as a condition of physical access to
UC locations, proof from students and employees that they have been vaccinated
against SARS-CoV-2, with limited exceptions that include a 90-day medical
exemption for those who have had and are recovering from COVID-19. RJN, Ex. 1
at 10 (Section I, Policy Summary), 11 (Section VII, FAQ No. 9). This temporary
exception for individuals with a prior COVID-19 infection tracks the FDA and
CDC's recommendations, which are based on uncertainties surrounding the
magnitude and durability of infection-induced immunity (*see* RJN, Ex. 13, 14; SAC
¶ 121). Because UC's Policy "follows guidelines from governmental organizations
such as the CDC [and] the [FDA]." UC reasonably concluded that the Policy "was
at least rationally related to controlling the spread of COVID-19." *Burcham v. City
of L.A*, No. 2:21-CV-07296-RGK-JPR, 2022 WL 99863, at *8 (C.D. Cal. Jan. 7,
2022) (upholding the City of Los Angeles' COVID-19 Policy under rational basis
review).

Plaintiffs' arguments challenging UC's reliance on FDA and CDC guidance
(*see, e.g.,* SAC ¶ 40) do not overcome the presumption of validity afforded to UC's
policy decision to require vaccination. *See, e.g., Gallagher v. City of Clayton*, 699
F.3d 1013, 1020 (8th Cir. 2012). In *Gallagher*, the plaintiff challenged a city
ordinance prohibiting outdoor smoking on public property, contending that the
City's rationale for prohibiting smoking due to dangers of secondhand smoke was
false, and the public could not possibly be harmed by secondhand smoke. *Id*. at
1019. The City's Board, however, had relied on a number of studies including a
report of the U.S. Surgeon General indicating that "there is no risk-free level of
exposure to secondhand smoke." *Id*. at 1020. The court therefore "need not
determine whether outdoor secondhand smoke exposure actually causes harm.
Because the City reasonably could believe this to be true, the Ordinance survives
rational basis review." *Id*.

The same analysis applies here. In light of FDA and CDC guidance that vaccines are safe and effective for individuals who have previously had COVID-19 (*see, e.g.*, RJN, Ex. 13, 14 at), UC's conservative approach in requiring vaccination 90 days after a COVID-19 diagnosis is rational. As in *Gallagher*, UC's consideration of federal guidance is evidenced on the face of the Policy. Scientific questions about extent, duration, durability and magnitude of infection-induced immunity are questions occupying top scientists today and need not be answered by this Court to adjudicate this suit. As previously stated by this Court, where "Plaintiffs' arguments amount to 'disputes over the most reliable science,'" "the Court will not intervene 'as long as [Defendants'] process is rational in trying to achieve public health.'" TRO Order at 7, ECF No. 18 (citing *Klaassen*, 2021 WL 3073926, at *38 (citing *Phillips v. City of New York*, 775 F.3d 538, 542 (2d Cir. 2015))).

Plaintiffs' inclusion of allegations of contrary studies challenging CDC and FDA recommendations does not change this analysis. "The Due Process Clause does not require scientific consensus to justify government action." *Burcham v. City of Los Angeles*, No. 2:21-CV-07296-RGK-JPR, 2022 WL 99863, at *8 (C.D. Cal. Jan. 7, 2022) (internal quotation marks and citation omitted). This Court need not resolve the scientific debate about the guidance from the FDA and the CDC, but only whether UC could have concluded that the Vaccine Policy is "at least rationally related to controlling the spread of COVID-19." *Id*. Given the extensive guidance from the federal government aimed at controlling the global pandemic, with which the Vaccine Policy is in harmony, this standard is easily met.

### 4.    Plaintiffs' allegations urging strict scrutiny fail

In urging the Court to apply strict scrutiny review to the Policy, Plaintiffs cite to inapposite cases in the SAC as purported legal precedent for applying strict scrutiny to vaccine mandates. SAC ¶¶ 101-102. But these cases address the denial of religious exception requests to vaccination requirements, an issue not presented

in this case. In *Dahl v. Bd. of Trs. of W. Mich. Univ.*, defendant school denied *all* religious exemption requests made by members of the university's soccer team, in a manner that suggested that the school did not grant religious exemptions to any student athletes. No. 1:21-CV-757, 2021 WL 3891620, at *2-3 (W.D. Mich. Aug. 31, 2021). The *Dahl* court actually agreed with defendant school, stating that the vaccination requirement, similar to the one here, "which includes an exemption for religious beliefs, would be subject to rational review." *Dahl*, 2021 WL 3891620 at *2. Similarly, in *Magliulo v. Edward Via Coll. of Osteopathic Med.*, a school's communications about a COVID-19 vaccine policy "[did] not recognize either religious or medical exemptions" and although plaintiffs were granted an exemption, defendant school "did not follow its own policies, but added . . . additional restrictions," contrary to Louisiana law. No. 3:21-CV-2304, 2021 WL 3679227, at *1 (W.D. La. Aug. 17, 2021). Finally, in *Michalski, Madison v. St. John Fisher College*, the court temporarily restrained the defendant school from disenrolling two student plaintiffs who alleged that they were denied a religious exemption "without explanation." No. 0008063/2021 (NY Sup. Ct., Onondaga Cty. 2021), Complaint, NYSCEF Doc. No. 1, at ¶¶ 47-48.[5] Here, in contrast, UC's Vaccine Policy has a religious objection exception and Plaintiffs do not allege that they were denied any such exception.

Plaintiffs' invocation of the First Amendment does not change the analysis. UC's Vaccine Policy is neutral and of general applicability, and subject to rational basis review, which the Policy meets. TRO Order at 5-6, ECF No. 18. Courts have repeatedly held that policies implemented to protect the health and safety of communities during the COVID-19 pandemic are neutral and generally applicable and subject to rational basis review. *Denis v. Ige*, No. CV 21-00011, 2021 WL

---

[5] Plaintiffs also rely on *Friend v. City of Gainesville* but that case considers a vaccine mandate under rights provided by the Florida State Constitution, which has no bearing on this case. *See* No. 2021-CA-2412, Filing No. 135095002 at 5 (8th Cir. Ct., Alachua County, 2021).

CROWELL
& MORING LLP
ATTORNEYS AT LAW

1911884, at *8 (D. Haw. May 12, 2021) (for purposes of the free exercise clause, state mask mandate was policy of general applicability and subject to rational basis review); *Klaassen*, 2021 WL 3073926, at *25 (university's vaccine mandate "is a neutral rule of general applicability. It applies to all students, whether religious or not. It doesn't discriminate among religions"). UC's Vaccine Policy expressly accommodates religious exercise where it conflicts with the vaccine requirement— indeed, even when a policy of general applicability "incidentally burdens the exercise of religion, the Constitution does not require an exemption." *Waln v. Dysart Sch. Dist.*, 522 F. Supp. 3d 560, 601 n.28 (D. Ariz. 2021) (citing *Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 878-79 (1990)); *Does 1-6 v. Mills*, __ F. Supp. 3d __, No. 1:21-CV-00242-JDL, 2021 WL 4783626, at *12 (D. Me. Oct. 13, 2021), *aff'd*, 16 F.4th 20 (1st Cir. 2021) (vaccine mandate without religious exemption did not violate the free exercise clause).

### C.   The Court Should Dismiss the First Amendment Claim of Free Exercise of Religion Because Plaintiffs Allege No Burden on Religious Practices

Plaintiffs allege that the Vaccine Policy violates students' free exercise of religion because the Policy requires students who wish to seek a religious exception to disclose their religious beliefs—but this argument fails to state a cognizable claim under the First Amendment. Plaintiffs frame UC's Policy as "coercing students to make an unnatural false choice" between getting vaccinated and seeking a religious exception which allegedly requires "disclosing under duress their religious beliefs." SAC ¶ 177. Plaintiffs also assert that "for those students" granted a religious exception to vaccination, accommodations of wearing a face covering and/or undergoing regular asymptomatic testing "substantially interfere" with an individual's religious practices. SAC ¶¶ 176-181.[6] These allegations fail to establish

---

[6] Plaintiffs also allege that Defendants intend to remove the Policy's religious exception at the "earliest strategic opportunity" (SAC ¶ 34), but without alleging any facts to support this assertion.

that the Policy infringes on the free exercise of religion; the challenged regulation must be "more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jones v. Williams*, 791 F.3d 1023, 1031–32 (9th Cir. 2015) (quoting *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 1011 (9th Cir. 2013)).

Plaintiffs fail to explain how simply disclosing religious beliefs, or complying with religious accommodations, burdens religious practices. UC permits individuals covered by its Vaccine Policy to request an exception to the vaccination requirement based on an individual's sincerely-held religious belief, practice, or observance. RJN, Ex. 1 at 14 (Request for Exception/Deferral), 18 (FAQ No. 3), 29 (UC Religious Exception Request Form). Such individuals are asked to identify their sincerely-held belief, practice, or observance, and to briefly explain how their belief, practice, or observance conflicts with the vaccination requirement. *Id.* at 29. This request is entirely consistent with established federal and state law governing religious accommodations, which routinely require plaintiffs to explain their religious beliefs. *See, e.g.*, *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1438 (9th Cir. 1993) (to establish a claim of religious discrimination, employee must prove that he informed his employer of his bona fide religious belief and conflict); *Lawson v. Wash.*, 296 F.3d 799, 804 (9th Cir. 2002) (same). Plaintiffs' theory of liability would place universities in a Catch-22, in that efforts to *protect* Plaintiffs' First Amendment rights would *violate* Plaintiffs' First Amendment rights. Plaintiffs also fail to even allege that they disclosed their religious beliefs, and consequently have not alleged an injury in fact flowing from such a disclosure.

Plaintiffs' First Amendment claim must be dismissed because Plaintiffs have not established a substantial burden on their free exercise of religion.

**D.    The Court Should Dismiss the Fourth Amendment Privacy Claim Because Plaintiffs Have Not Alleged an Unreasonable Search or Seizure**

The Vaccine Policy's masking and testing requirements do not amount to a violation of the right to privacy under the Fourth Amendment. Plaintiffs assert that UC's Vaccine Policy violates their "fundamental right to privacy" by accommodating certain individuals who have requested an exception to the Policy on the condition that they wear face coverings and/or participate in regular asymptomatic testing as a condition of physical presence at UC locations. SAC ¶¶ 171-175; *see* RJN, Ex. 1 at 29 (Religious Exception Request Form). But, the "Fourth Amendment 'protects two types of expectations, one involving 'searches,' the other 'seizures.'" *Lavan v. City of L.A.*, 693 F.3d 1022, 1027 (9th Cir. 2012). These protections under the Fourth Amendment "cannot be translated into a general constitutional 'right to privacy.'" *Katz v. U.S.*, 389 U.S. 347, 350 (1967). Thus, Plaintiffs' assertion that students' "fundamental right to privacy is infringed" by the requirement to wear masks and undergo testing is not a valid claim under the Fourth Amendment. As with their claims under the First Amendment, Plaintiffs do not even allege that they have worn a mask or participated in testing.

To the extent that Plaintiffs allege that a requirement that individuals who request an exception to UC's Vaccine Policy undergo regular testing for COVID-19 constitutes an unlawful search or seizure, that claim also fails.[7] Where the government identifies a "special need" other than crime detection—such as the health and safety of the community—that "make the warrant and probable-cause requirement impracticable," the U.S. Supreme Court recognizes an exception to the Fourth Amendment's prohibition on warrantless searches. *Griffin v. Wis.*, 483 U.S. 868, 873 (1987); *see, e.g.*, *Skinner v. Ry. Lab. Execs.' Ass'n*, 489 U.S. 602, 620

---

[7] Plaintiffs provide no explanation as to how their "fundamental right to privacy" is infringed based on UC's requirements that unvaccinated individuals wear face coverings as a condition of access to UC's locations and based on UC's protocol with respect to contact tracing, quarantine, and isolation. SAC ¶ 171-172. These allegations are not valid claims under the Fourth Amendment.

(1989) (drug testing of railroad personnel justified to ensure public safety).

UC has articulated a special need related to the health and safety of its community—an ongoing pandemic—that has nothing to do with the detection of crime. Thus, the "special needs" exception to the Fourth Amendment's prohibition on warrantless searches applies to regular testing for COVID-19. *See Guilfoyle v. Beutner*, No. 2:21-CV-05009-VAP (MRWx), 2021 WL 4594780, at *19–20 (C.D. Cal. Sept. 14, 2021) (finding PCR testing in Los Angeles public schools reasonable under the special needs exception); *Streight v. Pritzker*, No. 3:21-CV-50339, 2021 WL 4306146, at *5–8 (N.D. Ill. Sept. 22, 2021) (upholding a university's COVID-19 testing requirements under special needs framework). *Burcham*, 2022 WL 99863, at *4 (upholding the City of Los Angeles' weekly testing requirement as reasonable under the special needs exception).

Under the "special needs" analysis, a court must balance four factors: (1) the nature of the privacy interest affected; (2) the character of the intrusion; (3) the nature and immediacy of the government concern; (4) and the efficacy of the means of addressing the concern, all of which support the reasonableness of the testing. *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 654–64 (1995). First, while the collection of bodily fluids implicates Fourth Amendment Privacy rights, *see Skinner*, 489 U.S. at 617, "students within the school environment have a lesser expectation of privacy than members of the population generally." *Guilfoyle*, 2021 WL 4594780, at *19–20 (quoting *Vernonia*, 515 U.S. 656-57). Thus, given Plaintiffs' reduced privacy interest, the first factor weighs in favor of reasonableness. Second, the nature of intrusion here is minimal. The COVID-19 PCR test "is one of the most minimally-invasive tests available." *Streight*, 2021 WL 4306146, at *6; *Aviles v. Blasio*, No. 20 CIV. 9829 (PGG), 2021 WL 796033, at *22 (S.D.N.Y. Mar. 2, 2021) (noting that a nasal swab "is performed in a matter of seconds; is not painful; and does not involve [a body part or] function traditionally shielded by great privacy.") (internal quotations and citation omitted). Third, as to

the nature and immediacy of the government concern, the threat that the spread of COVID-19 poses to the health and safety of the community is great. Finally, regular testing for unvaccinated[8] individuals who physically access UC locations is an effective means of protecting the health and safety of UC's students and employees. Given UC's immediate need to slow the spread of COVID-19 and maintain a safe environment for its students, faculty, and staff, regular testing of unvaccinated members of its community is a reasonable means of protection.

### E. This Court Should Dismiss the Fourteenth Amendment Claim of State-Created Danger as the Vaccine Policy Is Not an Act of Deliberate Indifference

Plaintiffs cannot establish a state-created danger claim based on a Vaccine Policy plainly designed to protect the health and safety of the UC community. To prevail, Plaintiffs must prove "affirmative conduct on the part of the state in placing the plaintiff in danger" and that the state "acts with 'deliberate indifference' to a 'known or obvious danger.'" *Patel v. Kenti,* 648 F.3d 965, 974 (9th Cir. 2011).

UC's issuance of the Vaccine Policy is a far cry from "deliberate indifference." Deliberate indifference is a "stringent standard of fault" and requires that defendant "recognize an unreasonable risk and actually intend to expose the plaintiff to such risks without regard to the consequences to the plaintiff." *Id.* at 974-975 (brackets omitted). But UC's Policy and accompanying FAQs demonstrate that UC deliberately issued the Policy in an effort to *protect* the health and safety of the University community against the COVID-19 pandemic. RJN, Ex. 1 (Policy). Indeed, the FAQs directly address the issue raised by Plaintiffs—whether and to what extent a prior COVID infection should be a basis of a permanent exemption— and cites to a recent FDA Safety Communication. *Id.* at 19 (Section VII, FAQ No. 9.) As this Court has recognized, "[t]he Policy thus stands in harmony with recommendations by the CDC and FDA, which 'strongly believes that the known

---

[8] Regular testing on UC campuses is not currently limited to those who are unvaccinated.

and potential benefits of COVID-19 vaccination greatly outweigh the known and potential risks of COVID-19.'" TRO Order at 8 (citation omitted).

In light of FDA and CDC guidance supporting the efficacy and safety of COVID-19 vaccines, and the availability of a temporary medical exemption, Plaintiffs cannot establish Defendants placed them in "known or obvious danger." Accordingly, the Third Cause of Action should be dismissed.

### F.     Plaintiffs Lack Standing to Bring Certain Claims

The "irreducible constitutional minimum of standing" requires that a plaintiff must have suffered an "'injury in fact'—an invasion of a legally protected interest." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Here, standing issues exist that preclude some Plaintiffs from proceeding with their claims. As result, should the Court partially grant this motion, some Defendants may be dismissed.

#### 1.     Plaintiff AFLDS lacks standing because it is not subject to the policy and lacks associational standing

Plaintiff AFLDS lacks direct Article III standing to bring this claim because the Policy does not require anything of AFLDS, which is not a Covered Individual under the Policy. RJN, Ex. 1 at 10 (Section II, Definitions, defining "Covered Individuals"); SAC ¶¶ 13-19. AFLDS does not allege that it is "designated as Personnel, Students, or Trainees" under the Policy "who physically access a University Facility or Program in connection with their employment, appointment, or education/training." *See* SAC ¶¶ 13-19; *see* RJN, Ex. 1 at 10 (UC Policy, Section II, Definitions, defining "Covered Individuals"). "Where a party seeks injunctive relief, he must allege a sufficient likelihood that he will be subjected in the future to the allegedly illegal policy." *Hajro v. U.S. Citizenship & Immigr. Servs.*, 811 F.3d 1086, 1102 (9th Cir. 2016) (citing *City of L.A. v. Lyons*, 461 U.S. 95, 105, 110 (1983)). AFLDS cannot establish even the possibility, let alone the required "likelihood," that it will be subjected to the Policy.

AFLDS also lacks "associational standing." To establish "associational

24

standing," AFLDS must show that: (a) its members would otherwise have standing to sue in their own right; (b) its purpose is germane to the interests it seeks to protect; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Ass'n of Christian Sch. Int'l v. Stearns*, 678 F. Supp. 2d 980, 983–84 (C.D. Cal. 2008), *aff'd,* 362 F. App'x 640 (9th Cir. 2010). AFLDS cannot meet these requirements.

First, AFLDS makes no showing that its purpose is germane to the interests it seeks to protect. While the germaneness test requires "only that an organization's litigation goals be pertinent to its special expertise and the grounds that bring its membership together," AFLDS cannot meet this bar. AFLDS lists a host of "programs," "core beliefs," and "deep commit[ments]" (SAC ¶¶ 13-15), but not a single one is germane to the interests AFLDS seeks to protect here, namely "bodily integrity" (SAC ¶ 129), "right to privacy" (SAC ¶ 171), and "freedom of religion" (SAC ¶ 177-181).

Second, given the individualized standing issues raised by each student Plaintiff, these claims require an "ad hoc factual inquiry" for each member represented by the association that is specific to each individual, negating associational standing. *Ass'n of Christian Sch. Int'l*, 678 F. Supp. 2d at 986 (no associational standing because of the individualized nature of plaintiffs' claims); *Harris v. McRae,* 448 U.S. 297, 321 (1980) (organization's "diversity of view[s]" defeated associational standing).

AFLDS lacks direct and associational standing to bring these claims.

### 2. Plaintiffs Powell, Choi, and Ozdemirci lack standing to challenge the vaccine requirement, and Plaintiff Page lacks standing to challenge requirements related to exceptions

Plaintiffs Powell, Ozdemirci, and Choi lack standing to challenge the vaccination requirements (Counts 1-3). They are "no longer subject to [the challenged] policy" requiring vaccination against COVID-19 and therefore lack

standing. *Morales v. Cruse*, 483 F. App'x 375, 376 (9th Cir. 2012) (affirming dismissal for lack of standing). Because of their excepted status under the Policy, Plaintiffs Powell, Ozdemirci, and Choi are not required to show proof of vaccination before physically accessing UC's locations and programs. Bowers Decl. ¶ 5; Deakyne Decl. ¶ 5; Pedone Decl. ¶ 5. As such, Plaintiffs Powell, Ozdemirci, and Choi are not subject to the vaccination requirement that they challenge and therefore lack standing to bring their claims under the three Fourteenth Amendment claims. *Kasza v. Browner*, 133 F.3d 1159, 1174 (9th Cir. 1998) (case mooted when plaintiff "elected to seek an exemption, which [was] issued"); *see also Warth v. Seldin*, 422 U.S. 490, 509–10 (1975) (no standing where plaintiffs "are not themselves subject to [the challenged] practices").

Plaintiff Page lacks standing to bring the Fourth (Fourth Amendment) and Fifth Causes of Action (First Amendment). She alleges that she is not currently accessing a UC campus but staying in Ojai. SAC ¶ 23. As such, she has failed to allege that she is subject to a disclosure of her religious beliefs to apply for an exception, or that she is subject to masking and testing on campus.[9]

### 3.   If the Court dismisses the SAC claims in part, certain defendants should also be dismissed.

As a result of the Plaintiffs' various standing deficiencies, should this Court dismiss any set of claims, certain Defendants should also be dismissed. As explained above, AFLDS lacks standing to bring any claims. If this Court dismisses the Fourteenth Amendment claims, only Plaintiffs Powell, Ozdemirci, and Choi have any plausible argument for standing for the remaining claims. Accordingly, Defendant Carol Christ, the Chancellor of UC Berkeley, associated with Plaintiff Page's claims, should be dismissed.

Similarly, if this Court dismisses the First and Fourth Amendment claims,

---

[9] As explained above, no plaintiff has alleged any specific facts that establish an injury in fact under the First and Fourth causes of action. But, Plaintiff Page cannot even establish the possibility of such allegations.

only Plaintiff Page could have a standing argument for the remaining claims.
Accordingly, Defendants Wilcox, Chancellor of UC Riverside, Gillman, Chancellor
of UC Irvine, and Block, Chancellor of UC Los Angeles should be dismissed.

### G.    This Court Should Grant the Motion to Dismiss Without Leave to Amend

Where a pleading could not possibly be cured by the allegation of other facts,
leave to amend should be denied. *See Shetty v. Wells Fargo Bank*, No. CV-16-
01514 AB (MRWx), 2016 WL 9686987, at *3 (C.D. Cal. Aug. 19, 2016), *aff'd*,
*Shetty v. Wells Fargo Bank*, 696 F. App'x 828 (9th Cir. 2017) (dismissing
plaintiff's claims with prejudice where amendment could not overcome deficiencies
in complaint). Plaintiffs have now filed three complaints in this suit—adding
plaintiffs and defendants, as well as new allegations and claims. Plaintiffs have had
ample opportunity to allege cognizable claims.

UC's Vaccine Policy, including the requirement that individuals who have
previously had COVID-19 must be fully vaccinated before physically accessing
UC's locations (with limited deferrals and exceptions, including a temporary
medical exemption of up to 90 days after a diagnosis of COVID-19), conceivably
furthers UC's legitimate interest in protecting the health and safety of its
community. So long as the nature of Plaintiffs' allegations are that the Vaccine
Policy is unconstitutional because it does not provide a permanent exemption for
prior infection and requires face coverings and testing as alternatives when an
exception or exemption is granted, the pleadings cannot be cured by amendment.

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court
grant their motion to dismiss with prejudice.

DATED:  February 7, 2022              CROWELL & MORING LLP

                                      By:  */s/ Emily T. Kuwahara*
                                           Emily T. Kuwahara
                                           Kristin J. Madigan

1

Suzanne E. Rode
Uri Niv

2

3

Attorneys for Defendants
KIM A. WILCOX, HOWARD
GILLMAN, CAROL CHRIST, GENE
BLOCK, THE REGENTS OF THE
UNIVERSITY OF CALIFORNIA AND
MICHAEL V. DRAKE

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

28