1

2   Christina Gilbertson (California Bar No. 236877)
    christina@jfnvlaw.com
3   Jennings & Fulton, LTD
    2580 Sorrel Street
4   Las Vegas, NV 89146
    Phone: 702-979-3565
5

6   Gregory J. Glaser (California Bar No. 226706)
    greg@gregglaser.com
7   Greg Glaser, Attorney at Law
    4399 Buckboard Drive #423
8   Copperopolis, CA 95228
    Phone: 925-642-6651
9

10

11  Joseph S. Gilbert (Nevada Bar No. 9033)
    joey@joeygilbertlaw.com
12  Joey Gilbert & Associates
    405 Marsh Avenue
13  Reno, NV 89509
    Phone: 775-284-7700
14  *Admitted pro hac vice*
15

16  Attorneys for Plaintiffs

17

18              **UNITED STATES DISTRICT COURT**
            **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
19                    **EASTERN DIVISION**

20  AMERICA'S FRONTLINE          | **Case # 5:21-cv-01243-JGB-KK**
    DOCTORS, *et al.*,           |
21                               | **PLAINTIFFS' OPPOSITION TO**
22              *Plaintiffs*,    | **MOTION TO DISMISS SECOND**
                                 | **AMENDED COMPLAINT**
23        v.                     |

24  KIM A. WILCOX, in his official  | **Date:**      March 7, 2022
25  capacity as CHANCELLOR OF       | **Time:**      9:00 AM
    THE UNIVERSITY OF              | **Location:**  Riverside Courtroom 1
26  CALIFORNIA RIVERSIDE, *et al.*, | **Judge:**     Honorable Jesus G. Bernal

27
                *Defendants*.
28

1

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... ii

I.      Introduction ............................................................................. 1

   A.   The Era of Covid-19 Mandates Is Ending in 2022. The Era of Respecting
   Natural People Is Already Here. ................................................... 1

   B.   As A Public Trust, Defendants' Multi-Billion Dollar Financial Conflicts
   Weigh Heavily Against Any Judicial Deference. ............................... 3

   C.   Getting to the Point ................................................................ 5

   D. Recognizing the Big Picture ....................................................... 7

II.     Plaintiffs Have Standing ............................................................ 9

   A. Student Plaintiffs ...................................................................... 9

   B. AFLDS Has Both Direct and Associational Standing ....................... 11

III.    Emergency Use Authorization ................................................... 14

IV.     Constitutional Rights .............................................................. 15

   A.   Correctly Understanding the Case ........................................... 15

   B.   Understanding Separate But Equal .......................................... 16

   C. Masking and Testing ............................................................... 17

V.      Strict Scrutiny Is Necessary To Prevent The Government's Elimination of
Natural Unvaccinated People ........................................................... 20

VI.     State-Created Danger .............................................................. 22

VII.    Vaccine Exemptions Are Not Arbitrarily Limited to One Constitutional
Right Only. ................................................................................... 24

VIII.   CONCLUSION ........................................................................ 25

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**US Constitution**

1st Amendment ..................................................................6, 15, 21, 24
4th Amendment .........................................................................18, 21
5th Amendment ............................................................... 10, 21, 24-25
14th Amendment ................................................................18-19, 24-25

**Statutes**

21 U.S.C. § 360bbb-3 ......................................................................5
21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(I-III) ......................................14, 15

**Cases**

*AFSCME Council 79 v. Scott*, 717 F.3d 851, 873-74 (11th Cir. 2013)...............19

*Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996)..........................8

*Anderson v. City of Taylor*, 2005 U.S. Dist. Lexis 44706 (E.D. Mich. August 11, 2005) ......................................................................18

*Arizona v. Biden*, No. 2:21-cv-01568-MTL, Dkt. 34 (US District Court for the District of Arizona, 10/22/21)..............................................21

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) .....................................11

*Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 111 S. Ct. 2166, 115 L. Ed. 2d 96 (1991) ..............................................................9

*Austin et al. v. Board of Education et al* (Case No. 2021-CH-500002 in the Circuit Court for the Seventh Judicial Circuit Sangamon County, Illinois).1, 17

*Aviles v. De Blasio*, 2021 U.S. Dist. LEXIS 38930 (S.D.N.Y. Mar. 2, 2021) .....18

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) .................11

*Bostic v. McClendon*, 650 F. Supp. 245, 249 (N.D. Ga. 1986)...........19

*Brown v. Lake Geneva*, 919 F.2d 1299, 1302 (7th Cir. 1990) .............5

*BST Holdings, L.L.C. v. OSHA*, No. 21-60845, 2021 U.S. App. LEXIS 33698 (5th Cir. Nov. 12, 2021)..........................................................2

*Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S. Ct. 1788, 20 L. Ed. 2d 797 (1968)..........................................................................19

*Coley v. Eskaton*, 51 Cal. App. 5th 943, 953, 264 Cal. Rptr. 3d 740, 748 (2020) .4

*Dahl v. Bd. of Trs. of W. Mich. Univ.*, No. 1:21-cv-757, 2021 U.S. Dist. LEXIS 167041, at *5 (W.D. Mich. Aug. 31, 2021)....................................20

*Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1203 (10th Cir. 2003) ...............18

*Friend et al. v. City of Gainesville* (State of Florida, Circuit Court: Alachua County, Case No. 01-2021-CA-2412) ............................................................20

*Garrity v. New Jersey*, 385 U.S. 493, 497-98, 87 S. Ct. 616, 17 L. Ed. 2d 562 (1967)....................................................................................................................19

*Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977).......12

*Jacobson v. Massachusetts,* 197 U.S. 11, 22 (1905)......................................22, 23

*Jenkins v. McKeithen*, 395 U.S. 411, 421-422 (1969)...........................................11

*John Doe #1 #14 & Jane Doe #1 #2 v. Austin*, No. 3:21-cv-1211-AW-HTC, 2021 U.S. Dist. LEXIS 236327 ........................................................................................5

*Johnson v. United States*, 333 U.S. 10, 13, 68 S. Ct. 367, 92 L. Ed. 436 (1948).19

*Kehr Packages v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3rd Cir. 1991)...............11

*Krause v. Rhodes*, 570 F.2d 563 (6th Cir. 1977), cert. denied, 435 U.S. 924 (1978)....................................................................................................................11

Lebron, 710 F.3d at 1214-15 ..................................................................................19

*Mack v. S. Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986)....................9

*Magliulo v. Edward Via Coll. of Osteopathic Med.*, No. 3:21-CV-2304, 2021 U.S. Dist. LEXIS 159265, at *18................................................................17, 20

*Michalski et al. v. St. John Fisher College, et al.* (State of New York, Supreme Court: County of Onondaga, Index No. 8063/2021) ........................................20

*Morales v. Cruse*, 483 F. App'x 375, 376 (9th Cir. 2012)...................................13

*Nat'l Fed'n of Indep. Bus. v. DOL, OSHA*, 142 S. Ct. 661 (2022)........................2

*Powers v. Dickson, Carlson & Campillo*, 54 Cal. App. 4th 1102, 1115, 63 Cal. Rptr. 2d 261, 269 (1997).......................................................................................4

*Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 675 (9th Cir. 2011) ..................................................................................................................................4

*Scheuer v. Rhodes*, 416 U.S. 232 (1974)..............................................................11

*Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973)....................................................................................................................19

*Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981) ..........................................11

*Texas v. Biden*, No. 3:21-cv-309. Dkt 1. (US District Court for the Southern District of Texas, 10/29/21) ..............................................................................21

*Tomick v. United Parcel Serv., Inc.*, 511 F. Supp. 2d 235, 240 (D. Conn. 2007) 19

*United States v. Seminerio*, 680 F. Supp. 2d 523, 544 (S.D.N.Y. 2010) ..............4

I.      **Introduction**

    A.      **The Era of Covid-19 Mandates Is Ending in 2022. The Era of Respecting Natural People Is Already Here.**

The vast majority of the US does *not* mandate Covid-19 vaccination, testing, or masks.[1] Not surprisingly, courts across the country have begun *granting* relief to plaintiffs challenging Covid-19 vaccines, testing, and masks.[2] The majority of State Attorney Generals openly oppose mandates, and even John Hopkins published this year an influential meta-analysis that prompted the White House to walk back its lockdown promotion policies:

> "While this meta-analysis concludes that lockdowns have had little to no public health effects, they have imposed enormous economic and social costs where they have been adopted. In consequence, lockdown policies are ill-founded and should be rejected as a pandemic policy instrument."[3]

---

[1]    Bunis, D, et al. (February 7, 2022). *List of Coronavirus-Related Restrictions in Every State.* AARP. https://www.aarp.org/politics-society/government-elections/info-2020/coronavirus-state-restrictions.html; see also Ballotpedia (February 2022). *State-level mask requirements in response to the coronavirus (COVID-19) pandemic, 2020-2021.* https://ballotpedia.org/State-level_mask_requirements_in_response_to_the_coronavirus_(COVID-19)_pandemic,_2020-2021.

[2]    See e.g., *Austin et al. v. Board of Education et al* (Case No. 2021-CH-500002 in the Circuit Court for the Seventh Judicial Circuit Sangamon County, Illinois). Temporary Restraining Order, filed February 4, 2022 (court order respecting natural immunity and temporarily voiding Covid-19 emergency rules from the Illinois Board of Education, that attempted to mandate testing, masks, and vaccination in students and staff. In the court's words, "The Plaintiffs have due process rights in need of protection which must be afforded before they can be excluded from the public school building and disallowed to perform their work duties for failure to wear a mask as a type of quarantine, be vaccinated for COVID, or submit to testing for COVID.") See many more court orders in section V below re strict scrutiny.

[3]    Herby, J, et al. (January 2022). *A Literature Review and Meta-Analysis of the Effects of Lockdowns on Covid-19 Mortality.* John Hopkins Institute for Applied Economics, Global Health, and the Study of Business Enterprise.

The first ten pages of the Second Amended Complaint are a must read – they provide this Court up-to-date legal authority and government data to protect Plaintiffs (natural unvaccinated women) who respectfully decline government mandated biotech injections (Covid-19 vaccines) and other EUA products (tests, masks) that are *supposed to be* optional under Federal law. Surely this Court can stand up for these natural women in their time of need, as they are supported now by public health officials and the majority of jurisdictions (who are clearly retreating from mandates in the face of recent government data and court orders respecting natural unvaccinated people).

Upheld last month by the US Supreme Court in *Nat'l Fed'n of Indep. Bus. v. DOL, OSHA*, 142 S. Ct. 661 (2022), see *BST Holdings, L.L.C. v. OSHA*, No. 21-60845, 2021 U.S. App. LEXIS 33698 (5th Cir. Nov. 12, 2021) (granting preliminary relief that halted Defendant's vaccine mandate through OSHA), stating:

> "[T]he Mandate fails to consider what is perhaps the most salient fact of all: the ongoing threat of COVID-19 is more dangerous to some employees than to other employees… a naturally immune unvaccinated worker is presumably at less risk than an unvaccinated worker who has never had the virus….For the individual petitioners, the loss of constitutional freedoms 'for even minimal periods of time…unquestionably constitutes irreparable injury.'... The public interest is also served by maintaining our constitutional structure and maintaining the liberty of individuals to make intensely personal decisions according to their own convictions – even, or perhaps particularly, when those decisions frustrate government officials."

The pro-mandate paradigm is quickly ending in early 2022. For example, two scientific harbingers (or bellwethers):

(1) The CDC published last month that natural immunity to delta

https://sites.krieger.jhu.edu/iae/files/2022/01/A-Literature-Review-and-Meta-Analysis-of-the-Effects-of-Lockdowns-on-COVID-19-Mortality.pdf

offered better protection than Covid-19 vaccination, conceding "Rates among vaccinated persons without a previous COVID-19 diagnosis were consistently higher than rates among unvaccinated persons with a history of COVID-19."[4]

(2) The infamous vaccine developer and mandate enthusiast Dr. Offit penned the following last week (against mandates and boosters) in the Washington Post, "It would be very simple for public health authorities, including the CDC, to acknowledge that a coronavirus infection is at least as protective as two doses of vaccine."[5]

## B.     As A Public Trust, Defendants' Multi-Billion Dollar Financial Conflicts Weigh Heavily Against Any Judicial Deference.

In addition to the new case law precedents cited herein (that were unavailable to this Court during the TRO Request in July 2021), Plaintiffs also offer new evidence supporting the allegations in the Complaint – recently produced public record documents show Defendant University of California (UC) receiving **_billions of dollars_** from Covid-19 vaccine manufacturers (Pfizer, Moderna, Janssen, NIH). *See,* Glaser Declaration highlighting the Defendants' conflicts of interest, and Defendants' systematic failure to notify students about such conflicts.

Defendants' financial conflicts are squarely at issue in this litigation, together with proof that the Plaintiff students' constitutional rights were diminished as a direct result of such conflicts. Deference to the government

---

[4]     León TM, et al. (January 28, 2022). *COVID-19 Cases and Hospitalizations by COVID-19 Vaccination Status and Previous COVID-19 Diagnosis — California and New York, May–November 2021.* MMWR Morb Mortal Wkly Rep 2022;71:125–131.
https://www.cdc.gov/mmwr/volumes/71/wr/mm7104e1.htm
[5]     Offit, P, et al. (February 10, 2022). *People who have had covid-19 don't need three vaccine shots.* Washington Post.
https://www.washingtonpost.com/outlook/2022/02/10/infection-vaccination-protection-mandates-cdc/

would be highly inappropriate to decide this motion. Defendants cite no case law requiring courts to defer to government in cases alleging conflicts of interest, and indeed Defendants completely ignored the conflicts in their moving papers (acting as if the conflicts were unalleged). When an institution owes fiduciary duties (as here with the UC as a public trust), deference becomes inappropriate upon credible evidence of financial conflicts.[6]

---

[6]    See e.g., *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 675 (9th Cir. 2011) ("Even without the special skepticism we are to apply in cases of conflict of interest, deference to the plan administrator's judgment does not mean that the plan prevails. 'Deference' is not a 'talismanic word[ ] that can avoid the process of judgment.'"); *Coley v. Eskaton*, 51 Cal. App. 5th 943, 953, 264 Cal. Rptr. 3d 740, 748 (2020) (rejecting deference for a director where a conflict of interest is present, "A director, however, cannot obtain the benefit of the business judgment rule when acting under a material conflict of interest…. Deference under the business judgment rule is premised on the notion that corporate directors are best able to judge whether a particular transaction will further the company's best interests."); *United States v. Seminerio*, 680 F. Supp. 2d 523, 544 (S.D.N.Y. 2010) ("Anthony Seminerio breached the public trust not only by failing to disclose his conflict of interest, but also by receiving payments for certain actions that plainly would be expected of a reasonably diligent legislator. What is more, Seminerio received payments for actions that would <u>not</u> be expected of a diligent public servant, such as collecting debts, using official clout to maintain contracts that were lucrative to the Assemblyman, and even trading state funding for jobs."); *Powers v. Dickson, Carlson & Campillo*, 54 Cal. App. 4th 1102, 1115, 63 Cal. Rptr. 2d 261, 269 (1997) (discussing whether to strictly scrutinize contractual provision if there were a conflict of interest, the court stated "No conflict of interest rules are applicable and, thus, strict scrutiny is not required.").

UC (2017). *Regents Policy 1100: Statement of Expectations of the Members of the Board of Regents.* "Regents shall serve the public trust and fulfill their responsibilities ethically in a manner consistent with that obligation. This means that decisions are to be made solely to promote the best interests of the University as a public trust, rather than the interests of a particular constituency, and that Board members will disclose personal, familial, business relationships, or other potential conflicts of interest as appropriate. "
https://regents.universityofcalifornia.edu/governance/policies/1100.html (accessed February 10, 2022).

Compare the body of law on legislative deference that applies to

1     As a public trust, the UC cannot ask this Court for an unchecked hall pass

2  on their financiers' biotech. But the UC is unabashedly doing just that in its

3  Opposition Brief (p. 14, line 25, "UC is not even required to 'articulate its

4  reasons for enacting' the Policy") – asking this Court to ignore the financial

5  conflicts, ignore mainstream and independent science refuting the UC's product

6  promotion, and grant raw deference to government mandated genetic biotech "in

7  every arm". That's not law. Law is narrow, circumscribed, and specific.

### C.   Getting to the Point

On a motion to dismiss, courts take the facts alleged in the Complaint as true. Applied here, this Court can rule at trial for Plaintiffs on *either* of the following independent grounds:

    **1.**    A narrow statutory ruling that Covid-19 emergency use authorized (EUA) products cannot be mandated, for the simple reason that federal statute (and recent federal case law) explicitly prohibit it.[7]

    **2.**    A comprehensive ruling that healthy Americans have the fundamental constitutional right to decline a government injection of biotechnology, even in an emergency.

The Defendants are correct on one point: this Court's job is not peer-review. Judicial review requires the legal process specified in the FRCP: expert vetted review with opportunity for cross-examination of live witnesses. This allows the lawyers to actually do their jobs. Indeed, in public health

---

*legislators* and limits use of legislative intent, *Brown v. Lake Geneva*, 919 F.2d 1299, 1302 (7th Cir. 1990) ("Additionally, we note that, while some bias or conflict of interest may have shaped this legislation, the motives of legislators are irrelevant to rational basis scrutiny.")

[7]    21 U.S.C. § 360bbb-3; *John Doe #1 #14 & Jane Doe #1 #2 v. Austin*, No. 3:21-cv-1211-AW-HTC, 2021 U.S. Dist. LEXIS 236327, at *17 (N.D. Fla. Nov. 12, 2021) (finding that EUA vaccines cannot be mandated, "Because the plaintiffs have not shown they are (or will be) required to receive an EUA-labeled, non-BLA-compliant vaccine, the plaintiffs have not shown a likelihood of success").

constitutional challenges, lawyers are supposed to carefully review epidemiological evidence and public records to assist the court with its duty to hear cases and controversies.[8]

Here are Plaintiffs' rebuttals to each of Defendants' four points in the moving papers:

**(1) Standing.** Recognizing Plaintiffs' case theory, standing is detailed in the Second Amended Complaint (SAC) -- the vaccine mandate actively harms Plaintiffs' individual health and public health, and causes them to experience unlawful 'separate but equal' schooling.

**(2) Constitutional Rights.** The SAC shows that when natural people dare to decline injectable biotech, they are not welcome at the UC. When these natural people assert religious rights, Defendants treat them as second-class citizens to be disparately masked (a bodily intrusion affecting their oxygen intake), tested (a bodily intrusion that extracts DNA), and quarantined (isolated for inevitable false positives from said tests). Most jurisdictions reject such dystopian rules, and public discourse has not shied away from strong language criticizing vaccines, masks, and tests. Quite simply, the era of Covid-19 mandates is ending in 2022. The era of protecting natural people is a win-win for all concerned. Importantly, natural unvaccinated people are necessary to do control group science (i.e., to study vaccine safety and efficacy).

**(3)  Strict Scrutiny.** The UC is a public trust that receives billions of dollars annually from Covid-19 vaccine manufacturers. The UC now mandates

---

[8]     Wendy E. Parmet, *Public Health and Constitutional Law: Recognizing the Relationship*, 10 J. Health Care L. & Pol'y 13 (2007). Available at: http://digitalcommons.law.umaryland.edu/jhclp/vol10/iss1/3 ("Epidemiology, however, also plays an important role in constitutional law, especially in many doctrines and cases, some of which were discussed above, in which the state's purported attempt to protect public health is relevant to the determination of the constitutionality of state action… To answer each of these questions, the Court had to review and assess epidemiological evidence.")

its financiers' genetic biotech injections, and even helped develop the biotech. It is highly inappropriate (as history will judge) for courts to defer to government mandated genetic biotech injections.  Defendants are attempting to use the judiciary as another face of mandatory biotech. By contrast, Plaintiffs ask our judiciary to represent the substance of our Constitution.

**(4) State-Created Danger.** Plaintiffs clearly allege Defendants' vaccine mandate is actively harming public health and individual health, which is why governments around the world are now retreating from mandates. Plaintiffs' top expert physicians and PhDs support this case and have been instrumental to advise governmental officials of the existence and meaning of their own government data.

### D.    Recognizing the Big Picture

Plaintiffs are offering this Court mainstream consensus science and independent scientific data[9] from respected experts who routinely advise

---

[9]    Plaintiff America's Frontline Doctors is widely supported in explaining mainstream and independent data. See for example:

Public Health and Medical Professionals for Transparency (December 8, 2021). *FOIA Documents.* https://phmpt.org/wp-content/uploads/2021/11/5.3.6-postmarketing-experience.pdf (Pfizer's own report reveals that from December 1, 2020 to February 28, 2021, the first 90 days that Pfizer's Covid vaccine had been rolled out, there were 1,223 deaths recorded and 42,086 adverse reactions and vaccine injuries reported worldwide. The largest number of adverse reactions was recorded in the United States (13,739) and the UK (13,404). Researchers only included reports that they deemed to be serious cases. Reports are submitted voluntarily, and the magnitude of underreporting is unknown).

International Alliance of Physicians and Medical Scientists (January 21, 2022). *Declaration.* https://doctorsandscientistsdeclaration.org.

Johnson, R (February 3, 2022). *Sen. Johnson to Secretary Austin: Has DOD Seen an Increase in Medical Diagnoses Among Military Personnel?* Press Release. https://www.ronjohnson.senate.gov/2022/2/sen-johnson-to-secretary-austin-has-dod-seen-an-increase-in-medical-diagnoses-among-military-personnel (Evidencing alarming amounts of vaccine injury, "Based on data from the Defense Medical Epidemiology Database (DMED), Thomas Renz, an attorney who is representing three Department of Defense (DoD) whistleblowers, reported

decision-makers. Respectfully, Plaintiffs' position is more *balanced* than Defendants'. Perhaps this would be surprising if one were unapprised of the character evidence that Covid-19 biotech comes from convicted felons.[10]

One of the scholarly criticisms of our judiciary in the Covid-19 era has been the judiciary's rushed deference to pharma science hiding behind the curtain 'mainstream government information only'. This often comes across to the public as a form of partiality rather than faithful compliance with FRE 702 (re qualification of experts), especially to the extent that a judge summarily dismisses all evidence/cases of widespread vaccine harm regardless of plaintiffs' top experts proffered.

Indeed, Defendants here are fallaciously attempting to mislead this Court to work from an entirely different set of facts than those alleged in the SAC. If the Court acquiesces to Defendants' efforts, it would technically convert the Motion to Dismiss into one for summary judgment,[11] thereby allowing Plaintiffs

---

that these whistleblowers found a significant increase in registered diagnoses on DMED for miscarriages, cancer, and many other medical conditions in 2021 compared to a five-year average from 2016-2020. For example, at the roundtable Renz stated that registered diagnoses for neurological issues increased 10 times from a five-year average of 82,000 to 863,000 in 2021.")

The point here is not to provide an exhaustive list of independent medical sources, but to emphasize that *independent* information is essential to *independent* judgment. Both historically and today, mainstream public health information is routinely wrong and then clarified later, at which point the public is happy that not everyone was forced to go along. The judiciary serves a key checks and balances role to ensure that people are not forcefully injected by the government.

[10]     Here is just a sample: Department of Justice data cited by Groeger, L (2014). *Big Pharma's Big Fines.* ProPublica. https://projects.propublica.org/graphics/bigpharma.

For more detail, please refer to attached Glaser Declaration, ¶16.

[11]     FRCP 12(d), "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." See also, *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996) ("A motion to dismiss . . . must

early discovery (yet Defendants recently declined Plaintiffs' request to propound early discovery, so the attached public records will have to suffice for now).

## II.   Plaintiffs Have Standing

### A.   Student Plaintiffs

Defendants' Motion to Dismiss disingenuously takes issue with Plaintiff Annabella Page's lack of *enrollment* in classes. In reality, the SAC shows Defendants' vaccine mandate actively prevents her enrollment in classes. For example, Annabella has no exemption (so she is not allowed on campus per Defendants' mandates). She is eager to attend classes, and remains a student enrolled in the UC system, but she is forced into solitude solely because of the mandates. SAC ¶¶ 23, 32-36, 47, 144, 149, 171-172, especially this excerpt from ¶ 23:

> Remote learning under duress has been so difficult for Annabella, because of the shortage of available classes to complete her architecture major requirements and the disparate treatment (isolation) of the unvaccinated, that Annabella has been staying home in Ojai rather than be subjected to daily unequal and inadequate online education at the UC. She has also lost nonrefundable fees paid to the UC. Annabella would gladly return to in person learning at the UC if afforded the equal opportunity (i.e., if Annabella were not discriminated against based on her natural mRNA genetic status). Based upon the UC's arbitrary policy of limiting medical exemptions for natural immunity to 90-days, Annabella's physician declined to issue her a medical exemption to Covid-19 vaccination. Her enrollment is blocked by University Health Services because she has not received Covid-19 vaccination.

> What should one do in Plaintiff's position under duress, threatened by the

be treated as a motion for summary judgment… if either party… submits materials outside the pleadings in support or opposition to the motion, and if the district court relies on those materials."). However, reliance on matters of public record "does not convert a Rule 12(b)(6) motion to one for summary judgment." *Mack v. S. Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *abrogated on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 111 S. Ct. 2166, 115 L. Ed. 2d 96 (1991).

UC with potential injury/death by vaccine? Unless this Court intervenes, her only "option" is to suffer the UC's draconian measures that most jurisdictions do not force on natural unvaccinated people.

The other three Plaintiff students only obtained 'exceptions' to the vaccine mandate (allowing them to go to class after masking and testing) under duress. Duress is explicitly cited in the SAC, and again in student declarations in support of Plaintiffs' Request for Temporary Restraining Order.[12]

The SAC alleges that the evidence shows Defendants are engaged in an unlawful segregation campaign that harms individual health and public health.

> "Plaintiffs' protected right to bodily integrity is secured by the Due Process Clause of the United States Constitution, allowing Plaintiffs to navigate the UC campuses free from forced medical experimentation and segregation based on medical condition and genetic status." SAC ¶149

> Defendants' unscientific decision to reject Prescreening will increase the short-term and long-term vaccine injury rate thereby making UC campuses less safe from SARS-CoV-2, and other pathogens. Defendants' direct attack, under color of law, on Plaintiffs' bodily integrity is an unconstitutional abuse of power that is harming public health, not advancing it." SAC ¶144

All four Student Plaintiffs are currently enrolled as students. They are not required to trigger Defendants' Covid-19 vaccine trap in order to sue for the

---

[12]     Here is a representative example, "UC Irvine's implementation of the UC's Covid-19 vaccine mandate has put Deborah under duress and impaired her ability to exercise informed consent/refusal of the Covid-19 vaccine with physicians of her choice."  SAC ¶21. "This mandate also puts me under duress by requiring an immediate decision within the next week. It presents me with an ultimatum between accepting this novel genetic medical intervention (the Covid-19 vaccine) and standing to lose everything I have worked for at UCI--my scholarship, my connections to the UCI community, mentorship relationships with professors, leadership opportunities this fall, financial stability, and even my very academic enrollment." Deborah Choi Declaration in Support of Plaintiffs' Request for Temporary Restraining Order, ¶6.

harm caused by the very existence of the trap itself that is preventing them from entering campus as natural persons who are unvaccinated.

Defendants cast raw speculation on whether natural immunity even exists or how long it exists for. Such matters are for discovery and expert testimony, not a motion to dismiss. Indeed, see attached Glaser Declaration ¶ 18 showing examples that Defendants' request for judicial notice is contested. On a motion to dismiss, this Court must accept as true[13] the allegations in the SAC that Plaintiffs got Covid-19, speedily recovered, and currently have natural immunity. Indeed, to this day every Plaintiff has remained healthy without any issues whatsoever for themselves or others, yet another testament to natural immunity for self and public.

## B.   AFLDS Has Both Direct and Associational Standing

SAC ¶¶ 13-19 address America's Frontline Doctors (AFLDS) and the harm the organization suffers as a direct result of the UC vaccine mandate. Specifically, Defendants have removed from AFLDS the ability to protect their naturally immune patients from physical injury. The direct result is AFLDS physicians cannot write medical exemptions based on prescreening. On one

---

[13]   "In passing on a motion to dismiss for failure to state a claim, the allegations of the complaint should be construed favorably to the pleader. *Scheuer v. Rhodes*, 416 U.S. 232 (1974), later app., *Krause v. Rhodes*, 570 F.2d 563 (6th Cir. 1977), cert. denied, 435 U.S. 924 (1978). Further, the allegations of the complaint must be taken as true, *Jenkins v. McKeithen*, 395 U.S. 411, 421-422 (1969). Because of the liberal pleading standard prescribed by F.R.C.P. Rule 8(a), dismissal for failure to state a claim is viewed with disfavor, and is rarely granted." *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (a claim is sufficient to withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure when, accepting as true the facts alleged in the complaint but not any legal conclusions, the claim has "facial plausibility," that is, it allows the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Kehr Packages v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3rd Cir. 1991)("[U]nder Rule 12(b)(6) the defendant has the burden of showing no claim has been stated.").

11

1   hand, Defendants allow AFLDS doctors to prescreen for other viral infections

2   such as measles, yet on the other, Defendants baselessly and unscientifically

3   decree that this time-tested medical experience will not be accepted for Covid.

4       The SAC alleges that Defendants' position is novel and radical. And yes,

5   sometimes the government promotes scientific positions that are wrong, novel,

6   and radical. Respectfully, much of scientific history class is actually devoted to

7   that observation, especially as applied to big pharma's recalled products, such as

8   the swine flu vaccine, Pfizer's Bextra, Merck's Vioxx, Wyeth's Fen-Phen, etc.

9       AFLDS does have representative standing to assert the rights of its

10  members. Courts have long held that organizations are permitted to assert the

11  rights of their members. Even in the absence of direct organizational standing, an

12  organization may be able to establish representational standing to assert the

13  rights of their members, based on injuries to its members. An organization can

14  establish representative standing by showing that: (a) at least one of its members

15  has standing to sue in their own right; (b) the interests that it seeks to protect are

16  germane to the organization's purpose; (c) and that neither the claim nor the

17  relief requires participation of the organization's individual members in the

18  lawsuit. *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 343

19  (1977).

20      The SAC is clear that AFLDS is seeking redress for the rights of its

21  members. *See e.g.*, SAC ¶¶ 15-19 in particular. It is asserted that its members,

22  some of which are listed as Plaintiffs in the SAC, have standing to sue in their

23  own right, as they have personally suffered harm. Furthermore, the interests that

24  AFLDS seek to protect are germane, and at the very core of the organizations

25  purpose, as set forth in the SAC. Lastly, neither the claims, nor the relief

26  requested, requires participation of individual AFLDS members because it would

27  render the litigation cumbersome to have too many plaintiffs all stating the same

28  harm, when a single well-crafted court order can fix everything.

1        Defendants' reliance on *Morales v. Cruse*, 483 F. App'x 375, 376 (9th Cir.

2   2012) to support their assertion of mootness is misplaced, because Morales

3   involved a prisoner alleging constitutional violations in connection with him

4   being placed in a unit, which he was later released from, rendering his claim

5   moot. This is not the factual basis of Plaintiff's claim, and the doctrine of

6   mootness does not apply here.

7        The UC's arbitrary 90-day rule means that AFLDS doctors are *currently*

8   unable to write science-based medical exemptions for naturally immune patients

9   at the UC.  While Defendants are correct that the CDC guidance is limited to 90-

10   day exemptions for evidence of previous infection, the SAC and Plaintiffs'

11   experts unequivocally dispute the arbitrariness of the 90-day limitation.

12   Furthermore, even the Defendants' relied upon "authorities" of the CDC and

13   Infectious Disease Society of America acknowledge that the 90-day limitation is

14   arbitrary, to wit: "…vaccination should be deferred for *at least* 90 days…" and

15   "the durability of protection from natural infection versus vaccination cannot be

16   determined…"  (Document 58-6)

17        Ultimately, on a motion to dismiss, such dispute must be resolved in favor

18   of the Plaintiffs, especially as here where Defendants openly concede their

19   scientific conjecture. See e.g., SAC ¶123,

20       Defendants' novel theories for the novel coronavirus and its
21       experimental vaccine are expressly based on conjecture that fails
22       strict scrutiny when applied as a healthcare mandate, as Defendants
    *suggest* without confirmed data, for example:
23

24       **a.**    Covid-19 vaccines 'could' 'may' 'possibly' 'ideally' create a
    larger immune response[14] and therefore perhaps hypothetically
25

26   _____

27   [14]    https://mediasources.ucr.edu/articles/2021/03/03/what-uc-riverside-
scientists-have-say-about-vaccines-variants-and-antibodies ("ideally");
28   https://campusreturn.ucr.edu/sites/g/files/rcwecm4671/files/2021-04/COVID-
19%20Vaccine%20education%20slide%20deck_UCLA_UCR%20%281%29.pdf

1   create superior immunity that just hasn't been observed yet but
2   might be observed in the unknown future by some unknown
    institution.

3   **b.**      Sars-Cov-2 'could' 'may' 'possibly' be more likely to mutate
4   in the bodies of unvaccinated persons rather than vaccinated
5   persons[15], even though that too hasn't been observed yet but only
    might be observed in the unknown future by some unknown
6   institution.

7   **III.    Emergency Use Authorization**

8       SAC ¶¶ 124-127 states the legal argument plain as day, which requires a
9   ruling for Plaintiffs:

10      Presently all Covid-19 vaccines available to the Plaintiffs are
11      authorized only for emergency use. And the federal law governing
12      such authorization, 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(I-III), grants
        the patient explicitly "the option to accept or refuse administration
13      of the [EUA] product".

14      Every FDA fact sheet for a Covid-19 vaccine available to Plaintiffs
15      states the same disclaimer, "It is your choice to receive or not
16      receive the [Pfizer-BioNTech, Moderna, Janssen] COVID-19
        Vaccine. Should you decide not to receive it, it will not change your
17      standard medical care." This precise language is required by federal
18      statute because available Covid-19 vaccines are *not* FDA approved
        but rather are Emergency Use Authorization (EUA) only. The same
19      precise statutory language also applies for all Covid-19 tests and
20      face coverings – they too are EUA and so pursuant to federal statute
        if an individual declines these EUA products, it cannot change the
21      individual's standard medical care.

22      And yet, as the Plaintiffs in this case respectfully decline these EUA
23      products, Defendants openly threaten to disenroll them and remove

24

25

26  ───────────────────
    , page 31 ("There is not enough information" "suggests"));
27  https://uci.edu/coronavirus/testing-response/covid-19-vaccine.php ("usually").
    [15]      https://www.universityofcalifornia.edu/news/are-we-stuck-covid-19-
28  forever ("may be").

their standard healthcare offered through Student Health Services.[16] Therefore, Defendants are openly violating federal law (in a field preempted by federal law) in their zeal to rush a vaccine mandate to promote Defendants' highly suspect 'separate but equal' campus segregation policies. Students with natural immunity are treated like second class citizens (weekly swabs up the nose, daily masks on the face, and more).

The previously referenced section (21 U.S.C. § 360bbb-3) of the Federal Food, Drug, and Cosmetic Act governing medical products approved for emergency states that the FDA-approved fact sheet must state "the consequences, if any, of refusing administration of the product." Nowhere in an FDA fact sheet for vaccines, face masks, or Covid-19 tests, does it specify that a person may be denied education, denied student health services, disciplined, required to seek religious belief accommodation, or otherwise discriminated against for refusal. Nor does any fact sheet state that people declining will be forced to use still other EUA products.

## IV.    Constitutional Rights

### A.    Correctly Understanding the Case

The SAC contains legal citations supporting each of the constitutional rights at issue.  Defendants' moving papers lack merit in their attempt to diminish civil rights, except for one technical point: while Defendants are correct that the religious accommodation process can involve *disclosure* of a sincerely held religious belief, that puts the cart before the horse in this particular case. Plaintiffs allege that they should not be required to apply for religious exemption *in the first place* because the UC implemented an unfair segregation policy targeted to their natural genetic status. See e.g., SAC ¶¶ 177-181.

For example, if the UC required doctors to declare their religious beliefs to

---

[16]    See e.g., "Student Health Insurance Plan (SHIP). All registered UCR students are automatically enrolled in the SHIP, a comprehensive and affordable insurance plan that is covered by financial aid…. All UCR students have access to SHS [Student Health Services], even if you aren't covered by SHIP." https://studentdocs.ucr.edu/studenthealth/uc-riverside_student_health_services-brochure.pdf.

the college before they could decline a patient's request for unnecessary surgery, then the proper legal issue would be whether the surgery was necessary in the first place, not whether the doctor's religious beliefs must be invoked in order to stop an unnecessary surgery. Plaintiffs repeatedly alleged there is no personal or public health justification *in the first place* for the mandate.  A growing amount of independent data proves that Covid-19 vaccination is actively harming the public health generally and individuals specifically. SAC ¶10.

The SAC further confirms that the UC's behavior is an unlawful scattershot approach to health. The UC targeting everyone with naturally functioning mRNA genetic status[17] and pretending they are unclean is unscientific, and amounts to vaccine salesmanship, especially given the UC's recent receipt of billions of dollars from vaccine manufacturers.

### B.    Understanding Separate But Equal

Plaintiff Students are currently being subjected to 'separate but equal' schooling at the UC on a daily basis -- it is oppressive and Orwellian. UC management is engaged in unscientific practices to target natural and religious peoples for committing the 'offense' of simply existing with natural immunity. *See* especially SAC ¶31-36 ("Defendants Harm Plaintiffs").

Although student plaintiffs have been temporarily permitted to continue enrollment at the UC, the harms described in the SAC remain in full force under the 'separate but equal' policies implemented by Defendants. *See e.g.*, SAC ¶32, "Defendants are unconstitutionally coercing and segregating Plaintiffs without scientific justification because Plaintiffs are exercising their Constitutional, and federal and state statutory, rights to decline involuntary injection of harmful experimental drugs."

It is transparent that the testing/sequestration regime for the Covid

---

[17]    Both Federal law (GINA) and California law (i.e., CalGINA, Unruh Act) prohibit certain forms of discrimination based on genetic status.

1  unvaccinated is much stricter than for the Covid vaccinated (https://ucop.edu/uc-

2  health/_files/fall-2021-covid-19-prevention-strategies-july.pdf shows the current

3  rules). For example, it is particularly striking that a negative test result upon

4  return does not release the Covid unvaccinated person from their sequestration

5  requirement. Such 'separate but equal' school policies deserve to be litigated.

6          Most of the square footage on campus is outdoors. It is impossible to go to

7  class without navigating around campus outdoors. The unvaccinated are easy to

8  spot on campus – they're the ones forced to mask. The history of forced

9  segregation is exactly this – falsely and indiscriminately branding an entire group

10  of natural people as dirty and unclean. History shows the effects of such

11  segregation are *generational*. When the UC says today in essence 'this drinking

12  water fountain is for vaccinated people only', the stain is upon the entire

13  university, both today and in the future. History will prove this true. Plaintiffs

14  realize the UC may think that naturally immune people are unclean, but science

15  proves the UC wrong. Plaintiffs realize the UC is deferring to authority, but

16  history proves that is a frequently failed strategy, including recently with FDA-

17  approved and then recalled swine flu vaccine. Opioids is another recent example.

18  And federal courts are routinely the bodies to intervene and stop such misplaced

19  thoughts and deference.

20      **C.   Masking and Testing**

21          The vast majority of counties and states have stopped Covid-19 vaccine

22  passports, and stopped mandatory testing and masking. (See footnote 1) Recent

23  case law has criticized mandatory testing and found it unenforceable in context.[18]

24

25  ───────────────

26  [18]     *Magliulo v. Edward Via Coll. of Osteopathic Med.*, No. 3:21-CV-2304,
2021 U.S. Dist. LEXIS 159265, at *18 (W.D. La. Aug. 17, 2021). *Austin, supra,*

27  (Case No. 2021-CH-500002 in the Circuit Court for the Seventh Judicial Circuit
Sangamon County, Illinois) (court order respecting natural immunity and voiding

28  Covid-19 emergency rules from the Illinois Board of Education that attempted to
mandate testing, masks, and vaccination in students and staff). Compare *Aviles v.*

As people with natural immunity, it is unreasonable to require Plaintiffs to submit to disparate masking and testing.[19]

Plaintiffs' experts confirm it is a statistical certainty that a person who is Covid-recovered is *not* at risk of reacquiring Covid-19. But should such a person undergo repeated PCR testing at a lab which uses a cycle threshold (Ct) >30, it is inevitable that sooner or later this person will have a false positive result. The popular commercial labs in California use a Ct >40, guaranteeing false results. A false positive result will force Plaintiffs into a wholly unnecessary and punitive quarantine.

Defendants' attempts to push nasal swabs into natural women is invasive. PCR nasal testing involves a swab being placed inside a student's nose (sometimes by a stranger) to remove genetic material that is then sent to a PCR laboratory for evaluation. Although some promote the test as painless and quick, many students experience it as painful and traumatic. Well-recognized side effects include bloody nose, nasal discomfort, headaches and nasal lesions.[20]

Mandatory public health testing is disfavored in American law. *See e.g.*, *Anderson v. City of Taylor*, 2005 U.S. Dist. Lexis 44706 (E.D. Mich. August 11, 2005) (mandatory blood draws for a firemen's "wellness program" under FEMA auspices was invalidated as a Fourth Amendment seizure because the blood draws were mandatory and the firemen were subject to punishment for not agreeing); *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1203 (10th Cir. 2003) (reversing pretrial dismissal of parents' 14th Amendment challenge to the school's practice of requiring blood tests and physical examinations without

---

*De Blasio*, 2021 U.S. Dist. LEXIS 38930 (S.D.N.Y. Mar. 2, 2021) pending appeal in the 2nd Circuit.

[19]    See SAC ¶72.

[20]    Gupta, K et al (2021). *Adverse effects of nasopharyngeal swabs: Three dimensional printed versus commercial swabs*. INFECT CONTROL HOSP EPIDEMIOL. 2021;42(5):641-642.
https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7308627/.

parental consent; the 10th Circuit cited the United States Supreme Court to protect "fundamental rights" in medical decision making); *Tomick v. United Parcel Serv., Inc*., 511 F. Supp. 2d 235, 240 (D. Conn. 2007) ("Consent to a drug test under threat of termination has been found to be involuntary and thus not a waiver of the right to assert a violation of § 31–51(x) Id. "[A choice between discharge or submitting to a drug test] is tantamount to no choice at all....").[21]

Citations in the SAC confirm naturally immune people are in the class least likely to transmit the virus to others. Vaccinated people are more likely to transmit the virus to others. The UC's brand of segregation is unequal application of the law, and a violation of the Equal Protection clause. [22]

---

[21]    *See also*, *AFSCME Council 79 v. Scott*, 717 F.3d 851, 873-74 (11th Cir. 2013) ("To begin with, we do not agree that employees' submission to drug testing, on pain of termination, constitutes consent under governing Supreme Court case law. *See* Lebron, 710 F.3d at 1214-15. Although a "search conducted pursuant to a valid consent is constitutionally permissible," *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973), consent must be "in fact voluntarily given, and not the result of duress or coercion, express or implied." *Id*. at 248; *see also Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S. Ct. 1788, 20 L. Ed. 2d 797 (1968); *Johnson v. United States*, 333 U.S. 10, 13, 68 S. Ct. 367, 92 L. Ed. 436 (1948) (consent invalid when "granted in submission to authority rather than as an understanding and intentional waiver of a constitutional right"). Employees who must submit to a drug test or be fired are hardly acting voluntarily, free of either express or implied duress and coercion. *See Bostic v. McClendon*, 650 F. Supp. 245, 249 (N.D. Ga. 1986); *cf. Garrity v. New Jersey*, 385 U.S. 493, 497-98, 87 S. Ct. 616, 17 L. Ed. 2d 562 (1967) (holding that the government cannot require its employees to relinquish their Fifth Amendment rights on pain of termination because "[t]he option to lose their means of livelihood or to pay the penalty of self-incrimination" was "the antithesis of free choice").")

[22]    Parasidis, E et al. (February 16, 2021). *Assessing The Legality Of Mandates For Vaccines Authorized Via An Emergency Use Authorization*. Health Affairs. https://www.healthaffairs.org/do/10.1377/hblog20210212.410237/full/ (prominent health law scholars state that individuals should not suffer reprisal for refusing an EUA product).

1

2   **V.     Strict Scrutiny Is Necessary To Prevent The Government's**

3         **Elimination of Natural Unvaccinated People**

4         Plaintiffs realize the government is quite pleased with its mandatory

5   biotech injections "in every arm" that operate at the DNA level.

6         Fortunately, across the country, District Courts are beginning to apply the

7   proper standard of strict scrutiny to vaccine mandates at schools and places of

8   employment, such as *Magliulo v. Edward Via Coll. of Osteopathic Med.*, No.

9   3:21-CV-2304, 2021 U.S. Dist. LEXIS 159265, at *18 (W.D. La. Aug. 17, 2021)

10  (agreeing with State attorney general and granting TRO for student challenging

11  college vaccine mandate because "VCOM can likely show a compelling state

12  interest (safety of students, employees, and patients), but is unlikely to meet the

13  second prong, that it used the least restrictive means of compelling that

14  interest."); *Dahl v. Bd. of Trs. of W. Mich. Univ.*, No. 1:21-cv-757, 2021 U.S.

15  Dist. LEXIS 167041, at *5 (W.D. Mich. Aug. 31, 2021) (granting TRO for

16  student challenging college vaccine mandate because "Plaintiffs have established

17  a likelihood of success on the merits of the Free Exercise Claims. Plaintiffs have

18  established that WMU's vaccination requirement is subject to strict scrutiny.")

19  Many state courts are also applying strict scrutiny. *See e.g.*, *Michalski et al. v. St.*

20  *John Fisher College, et al.* (State of New York, Supreme Court: County of

21  Onondaga, Index No. 8063/2021). Emergency Order to Show Cause With

22  Temporary Restraining Order, dated September 21, 2021 (granting TRO and

23  Burden Shifting for students asserting strict scrutiny in challenge to college

24  vaccine mandate); *Friend et al. v. City of Gainesville* (State of Florida, Circuit

25  Court: Alachua County, Case No. 01-2021-CA-2412). Order Granting Plaintiffs'

26  Petition for Temporary Injunction, dated September 22, 2021 (applying strict

27  scrutiny to grant TRO for city employees challenging city's vaccine mandate).

28        There are 27 States of the Union (the majority) challenging vaccine

mandates in Court.  It appears the days of deferential mandatory vaccination are numbered.  *See e.g.*, strong court filings against Covid-19 vaccine mandates from the Attorney Generals for Texas, Arizona, and Oklahoma:

- Texas Attorney General, "Even one American being forced by their government to receive a vaccine that they do not want out of fear of losing their job is an irreparable injury and a stain on Defendants' records." Complaint in *Texas v. Biden*, No. 3:21-cv-309. Dkt 1. (US District Court for the Southern District of Texas, 10/29/21). https://www.texasattorneygeneral.gov/sites/default/files/global/images/20211029_TX%20v%20Biden%20et%20al%20(file%20marked).pdf.

- Arizona Attorney General, "The federal employee mandate violates employees' constitutional right to bodily integrity and to refuse medical procedures…While Buck v. Bell has never been overruled, its inapplicability today is not seriously disputed. The same result should obtain for Jacobson." *Arizona v. Biden*, No. 2:21-cv-01568-MTL, Dkt. 34 (US District Court for the District of Arizona, 10/22/21). https://www.azag.gov/sites/default/files/docs/press-releases/2021/motions/034%20Renewed%20Motion%20for%20TRO%20and%20PI.PDF.

- Oklahoma Attorney General, "Here are some related and non-exhaustive considerations that compel the conclusion that this [vaccine] mandate is arbitrary and capricious:… Defendants' failure to exempt those who have a natural immunity to COVID-19…. Being vaccinated does not stop anyone from being a carrier of COVID-19…. This mandate forcibly intrudes into the physical person of the federal contractor's employee; it penetrates not just into the individual's skin but into her bloodstream—and becomes a component of her body. *See Skinner*, 489 U.S. at 616; *Schmerber*, 384 U.S. at 767–68. This involves the person's privacy, bodily integrity, and dignity. Society certainly recognizes the right to avoid such a compelled intrusion as reasonable." *Oklahoma v. Biden*, No. 5:21-cv-01069-G (US District Court for the Western District of Oklahoma, 11/4/21). https://www.oag.ok.gov/sites/g/files/gmc766/f/okla._v._biden_com

pl.pdf.

## VI.    State-Created Danger

*Jacobson v. Massachusetts*, 197 U.S. 11, 25 S. Ct. 358 (1905) is discussed at length in SAC ¶¶ 96-114. The case has been referenced to justify the sacrifice of the individual's body for the perceived benefit of the masses. Indeed, the official syllabus to *Jacobson* refers to "sacrifice" explicitly, "That the legislature has large discretion to determine what personal sacrifice the public health, morals and safety require from individuals is elementary." *Jacobson, supra,* 197 U.S. at 22. Compelled sacrifice under *Jacobson* has increasingly been found archaic.

To be perfectly clear, one hundred and fifteen years after *Jacobson,* law and justice confirm that the government does not have the right to sacrifice Plaintiffs.  It was foundational to *Jacobson* that the vaccine was to halt the transmission of a virus with 30% mortality. In contrast, Covid-19 has greater than 99.9% survivability in plaintiff age group and >99.6% survivability overall for the American population of all ages.[23]

 The average age of death from Covid *exceeds* a person's life expectancy (age 82 vs. age 79.) It is manifestly unjust and unlawful to compel the sacrifice of young people, especially in order to hypothetically protect individuals already exceeding average life expectancy.

Defendants are requiring Plaintiffs to sacrifice themselves to Plaintiffs' own personal detriment, and to the detriment of public health. SAC ¶¶37-114. If this is not a state-created danger, what is?

---

[23]    Reese, H. et al (November 25, 2020). *Estimated Incidence of Coronavirus Disease 2019 (COVID-19) Illness and Hospitalization—United States, February–September 2020*. Clinical Infectious Diseases*,* Volume 72, Issue 12, 15 June 2021, Pages e1010–e1017. https://doi.org/10.1093/cid/ciaa1780. US Centers for Disease Control and Prevention (2021). *Weekly updates by select demographic and geographic characteristics: provisional death counts for coronavirus disease (COVID-19)*. https://www.cdc.gov/nchs/nvss/vsrr/covid_weekly/index.htm#AgeAndSex.

1    Moreover, the entire worldwide scientific consensus is that Covid-19

2    vaccination does <u>not</u> prevent infection or transmission of the coronavirus.

3    Therefore, as a matter of law, Covid-19 vaccination cannot be considered a

4    public health measure, lest public health be redefined to support an

5    unprecedented power grab.[24] All credible scientific experts and sources have

6    found that these injections do not in fact prevent the transmission or acquisition

7    of the coronavirus. Thus, the injections are a personal health measure only.[25]

8    To the extent this Court claims authority to mandate biotech under

9    *Jacobson*, 197 U.S. at 35, "common belief of the people", then consider the

10   following recent poll results of the American people that confirm the common

11   belief supports natural immunity rather than vaccination:

12   
13   Do you believe people recovered from COVID-19 with natural immunity from antibodies have the same level of protection as those that are fully vaccinated? Yes: 46.5%, No: 29.2%, Not Sure:
14   24.3%. The Trafalgar Group, *Nationwide Issues Survey – Covid*

15   [24]    The fact that the CDC literally changed the definition of the word

16   "vaccine" in August 2021 to attempt to include these injections under a

17   "vaccination" branding, certainly to manipulate public sentiment, and likely to also avoid the proper standard of judicial review, does not permit the judiciary to

18   defer to the State with anything less than strict scrutiny. Indeed, the *Jacobson* Court limited its holding to vaccine mandates that were "adapted to prevent the

19   spread of contagious diseases[.]" 197 U.S. at 35.

20   [25]    *See e.g.*, Moderna (November 2021). *Program Patents.* https://www.modernatx.com/patents.

21   United States Securities and Exchange Commission (August 6, 2020).

22   *Moderna Form 10Q.* https://www.sec.gov/Archives/edgar/data/1682852/000168285220000017/mrna-

23   20200630.htm.

24   Nakagami H. (September 2021). *Development of COVID-19 vaccines utilizing gene therapy technology.* Int Immunol. 2021 Sep 25;33(10):521-527.

25   https://pubmed.ncbi.nlm.nih.gov/33772572/.

26   FDA (October 2021). *Comirnaty.* Vaccines, Blood, and Biologics. https://www.fda.gov/vaccines-blood-biologics/comirnaty.

27   A partial list of prominent scientists and persons who have stated this

28   publicly include: the CDC Director Dr. Walensky and the Director of the NIAID Dr. Anthony Fauci.

*Immunity* (October 2021). https://thetrafalgargroup.org/COSA-National-COVIDimmunity-Full-Report.pdf

How confident are you that the federal government is reporting unbiased information on the effectiveness of COVID-19 vaccines? Confident: 44.5%, Not Confident: 50.8%. The Trafalgar Group, *Nationwide Issues Survey – Vaccine Confidence* (July 2021). https://thetrafalgargroup.org/COSA-National-Vaccine-Confidence-Full-Report.pdf

Countless U.S. government officials have also rejected the vaccines (at one point Anthony Fauci admitted live on CSPAN that "probably around 60%" of government scientists took the Covid vaccine).[26] It is now commonplace for officials and reporters to be caught on camera donning masks solely for public display, and otherwise flaunting their own rules. That era is ending, and that's a good thing.

## VII.   Vaccine Exemptions Are Not Arbitrarily Limited to One Constitutional Right Only.

When it comes to asserting constitutional rights (i.e., 1st Amendment freedom of religion, 14th Amendment bodily integrity), an individual is not required to make an 'election of remedies' by choosing only one constitutional right. An individual is entitled to the full suite of Constitutional rights, and if denied any constitutional right (i.e., here the UC is denying a 14th Amendment bodily integrity exemption based on natural immunity), the individual is entitled to a remedy.

It would be an injustice if the converse were true – if a defendant could freely infringe the right to freedom of speech so long as the defendant "allows" freedom of assembly.

Here, just because Defendants have *temporarily* granted a few religious

---

[26]     *Dr. Fauci and CDC Director Walensky Testify on Efforts to Combat COVID-19*, United States Senate, C-SPAN (May 11, 2021), https://www.c-span.org/video/?511511-1/dr-fauci-cdc-director-walensky-testify-efforts-combat-covid-19.

exemptions for some of the Plaintiffs, this does not grant Defendants a license to injure every Plaintiffs' other constitutional rights with impunity.

In America, the government cannot claim that only religious people have the right to opt-out of government biotech injections. Indeed, Plaintiffs specifically pled for declaratory relief here in regards to their 14th Amendment right of bodily integrity, which Defendants are actively subverting to enforce a 'separate but equal' policy. *See e.g.*, SAC, ¶¶135 and 137.

## VIII.    CONCLUSION

There comes a time for everyone to want to decline a vaccine – for many it is a Covid booster, or a swine flu shot, or any of the 250+ vaccines currently in R&D according to the trade publication PhRMA.[27] Natural immunity works. It is just and right to respect natural people. Most jurisdictions do.

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the unmeritorious Motion to Dismiss and allow students affected by this mandate to have their day in court.

Respectfully submitted this February 15, 2022

*/s/ Gregory J. Glaser*
Gregory J. Glaser (California Bar No. 226706)
greg@gregglaser.com
Greg Glaser, Attorney at Law
4399 Buckboard Drive #423
Copperopolis, CA 95228
Phone: 925-642-6651

Attorney for Plaintiffs

---

[27]     PhRMA (July 21, 2020). *Report: Medicines in Development for Infectious Diseases 2020 Report.* https://phrma.org/resource-center/Topics/Report/Medicines-in-Development-for-Infectious-Diseases-2020-Report; PhRMA (2016). *New report highlights more than 250 vaccines in development.* https://catalyst.phrma.org/new-report-highlights-more-than-250-vaccines-in-development.