UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 21-1243 JGB (KKx)** | Date | May 5, 2022 |
| Title | *America's Frontline Doctors, et al. v. Kim A. Wilcox, et al.* | | |

| | |
|---|---|
| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING Defendants' Motion to Dismiss (Dkt. No. 58); (2) GRANTING Plaintiffs' Motion for Relief from Excusable Neglect (Dkt. No. 61); and (3) VACATING the May 9, 2022 Hearing (IN CHAMBERS)

Before the Court is Defendants' Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) and (b)(6) ("Motion," Dkt. No. 58) and Plaintiffs' Motion for Relief from Excusable Neglect in Late Filing (Dkt. No. 61). The Court finds these Motions appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motions, the Court GRANTS Defendants' Motion, GRANTS Plaintiffs' Motion for Relief from Excusable Neglect, and VACATES the May 9, 2022 hearing.

## I. BACKGROUND

On July 26, 2021, Plaintiffs America's Frontline Doctors ("FLD"), Carly Powell, and Deborah Choi filed a complaint and an application for a temporary restraining order against Defendants Kim A. Wilcox, Chancellor of the University of California Riverside ("Wilcox" or "UC Riverside Chancellor"); Howard Gillman, Chancellor of the University of California Irvine ("Gillman" or "UC Irvine Chancellor"); The Regents of the University of California ("Regents"); and Michael V. Drake, President of the University of California. ("Complaint," Dkt. No. 1.)

The Court denied the application for temporary restraining order on July 30, 2021. ("TRO Order," Dkt. No. 18.) On August 3, 2021, Plaintiffs applied for a Writ of Mandamus to

the Ninth Circuit, which denied the application on August 11, 2021. Application Denial, In re America's Frontline Doctors, No. 21-71209 (9th Cir. Aug. 11, 2021). Plaintiffs next filed a Petition for a Writ of Mandamus in the United States Supreme Court, which denied the petition on November 2, 2021. In re America's Frontline Doctors, No. 21-295, 2021 WL 5043752 (U.S. Nov. 1, 2021).

On October 14, 2021, Plaintiffs amended as of right. ("FAC," Dkt. No. 30.) On February 2, 2022, Plaintiffs filed a second amended complaint. ("SAC," Dkt. No. 57.) The SAC adds Annabella Page and Lara Ozdemirci as Plaintiffs and Carol Christ as a Defendant.[1] (Id.) The SAC alleges five causes of action arising from the University of California's COVID-19 Vaccination Program: (1) declaratory relief for violation of Fourteenth Amendment right to bodily integrity; (2) injunctive relief for violation of Fourteenth Amendment right to bodily integrity; (3) injunctive relief for violation of Fourteenth Amendment right to freedom from state created danger; (4) injunctive relief for violation of Fourth Amendment right to privacy; and (5) injunctive relief for violation of First Amendment right to freedom of religion. (See SAC.)

Defendants moved to dismiss on February 7, 2022. ("Motion," Dkt. No. 58.) On February 15, 2022, Defendants filed a notice of non-opposition. (Dkt. No. 59.) On February 15, 2022, Plaintiffs opposed ("Opp.," Dkt. No. 60) and moved for relief from excusable neglect (Dkt. No. 61). On February 18, 2022, Defendants replied. ("Reply," Dkt. No. 62.)

## II.   FACTS

The allegations about the policy at issue are described in the TRO Order. (Dkt. No. 18.) Relevant to this Motion are Plaintiffs' amended allegations:

FLD is a non-partisan, not-for-profit organization of "hundreds of member physicians" from across the county. (SAC ¶ 13.) FLD "member physicians" provide care to University of California students who are directly impacted by the UC's vaccinate mandate, which "is impairing physician-patient relationships, and the ability of the patients to exercise informed consent/refusal without duress caused by the [University of California]." (Id. ¶ 15.)

Plaintiff Carly Powell ("Ms. Powell") is an enrolled undergraduate student at the University of California, Riverside. (Id. ¶ 20.) She contracted the virus in December 2020. (Id.) The implementation of the Policy "has put [Ms. Powell] under duress and impaired her ability to exercise informed consent/refusal of the [vaccine] with physicians of her choice." (Id.)

Plaintiff Deborah Choi ("Ms. Choi") is a law student at the University of California, Irvine. (Id. ¶ 21.) She contracted COVID-19 in November 2020. (Id.) The implementation of the Policy "has put [Ms. Choi] under duress and impaired her ability to exercise informed consent/refusal of the [vaccine] with physicians of her choice." (Id.)

---

[1] The SAC does not name the Regents of the University of California as a Defendant. (See SAC.)

Plaintiff Lara Ozdemirci ("Ms. Ozdemirci") is a graduate student at the University of California, Los Angeles. (Id. ¶ 22.) She "recently contracted the virus." (Id.) The implementation of the Policy "has put [Ms. Ozdemirci] under duress and impaired her ability to exercise informed consent/refusal of the [vaccine] with physicians of her choice." (Id.)

Plaintiff Anabella Page ("Ms. Page") is "enrolled as an undergraduate student at the University of California, Berkeley."[2] (Id. ¶ 23.) She lives in Ventura County. (Id.) She has "contracted the virus." (Id.) The implementation of the Policy "has put [Ms. Page] under duress and impaired her ability to exercise informed consent/refusal of the [vaccine] with physicians of her choice." (Id.) "Remote learning under duress has been so difficult for [Ms. Page], because of the shortage of available classes to complete her architecture major requirements and the disparate treatment (isolation) of the unvaccinated, that [Ms. Page] has been staying home in Ojai rather than be subjected to daily unequal and inadequate online education at the [University of California]." (Id.) Her physician "declined to issue her a medical exemption to COVID-19 vaccination" because the Policy "limit[s] medical exemptions for natural immunity to 90-days." (Id.)

Plaintiffs "plead for relief, to be freed from Defendants' tactics of coercion and discrimination amounting to duress as a consequence of their choice not to submit to the myriad risks of COVID-19 vaccine injury that Defendants are unable to quantify." (Id. ¶ 24.)

### III.   LEGAL STANDARD

### A.   Rule 12(b)(1)

A motion under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction, without which a federal district court cannot adjudicate the case before it. See Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375 (1994). Pursuant to Rule 12(b)(1), a party may seek dismissal of an action for lack of subject matter jurisdiction "either on the face of the pleadings or by presenting extrinsic evidence." Sierra v. Dep't. of Family and Children Servs., 2016 WL 3751954, at *3 (C.D. Cal. Feb. 26, 2016) (quoting Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003)). Thus, a jurisdictional challenge can be either facial or factual. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).

In a facial attack, the moving party asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). When evaluating a facial attack, the court must accept the factual allegations in the plaintiff's complaint as true. Comm. for Immigrant Rights of Sonoma Cty. v. Cty. of Sonoma, 644 F.Supp. 2d 1177, 1189 (N.D. Cal. 2009).

---

[2] Although Plaintiffs allege that Ms. Page is an "enrolled" undergraduate student, in the same paragraph Plaintiffs contend that her "enrolled is blocked by University Health Services." (SAC ¶ 23.)

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Safe Air for Everyone, 373 F.3d at 1039.  In resolving a factual challenge, the court "need not presume the truthfulness of the plaintiff's allegations" and "may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment." White, 227 F.3d at 1242.  "Where jurisdiction is intertwined with the merits, [the Court] must 'assume the truth of the allegations in the complaint . . . unless controverted by undisputed facts in the record.'" Warren, 328 F.3d at 1139 (quoting Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987)).

**B. Rule 12(b)(6)**

Under Rule 12(b)(6), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted.  Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Horosny v. Burlington Coat Factory, Inc., No. 15–05005, 2015 WL 12532178, at *3 (C.D. Cal. Oct. 26, 2015).  When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).  Courts are not required, however, "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.2d 1049, 1055 (9th Cir. 2008) (internal citation and quotation omitted).  Courts also need not accept as true allegations that contradict facts which may be judicially noticed. See Mullis v. U.S. Bankr. Court, 828 F.2d 1385, 1388 (9th Cir. 1987).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570; Ashcroft v. Iqbal, 556 U.S. 662 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556).  The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to

relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

## IV. DISCUSSION

### A. Rule 8(a)

Under Federal Rule of Civil Procedure 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Although the Federal Rules adopt a flexible pleading policy, a complaint must give fair notice and state the elements of the claim plainly and succinctly. Jones v. Community Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984). Therefore, Plaintiffs must allege with at least some degree of particularity the overt acts which the Defendants engaged in that support Plaintiffs' claim. Id. "[A] pleading that [is] needlessly long, or… highly repetitious, or confused, or consist[s] of incomprehensible rambling" violates Rule 8(a). Cafasso v. Gen. Dynamics C4 Sys., 637 F.3d 1047, 1059 (9th Cir. 2011) (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1217 (3d ed. 2010)).

Far from a "short and plain statement" of Plaintiffs' claims, the Complaint is 78 pages long. (See SAC.) Approximately twenty pages are relevant to Plaintiffs' causes of action. See, e.g., SAC ¶¶ 112-114 (lofty descriptions of a conspiracy involving "Big Pharma.")

### B. Request for Judicial Notice

The Court "may judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be question." Fed. R. Evid. 201(b)(2). Judicial notice is appropriate for documents "made publicly available by governmental entities…and neither party disputes the authenticity of the web site[ ] or the accuracy of the information displayed therein." Japanese Village, LLC v. Federal Transit Admin., 843 F.3d 445, 454 (9th Cir. 2016) (quoting Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998-99 (9th Cir. 2010)); see also In re Amgen Inc. Sec. Litig., 544 F. Supp. 2d 1009, 1023 (C.D. Cal. 2008); County of Santa Clara v. Astra USA, Inc., 401 F. Supp. 2d 1022, 1024 (N.D. Cal. 2005) (taking judicial notice of a publication in the Federal Register and of a description on an HHS website).

Defendants request judicial notice of the University of California's ("UC") Vaccine Policy, ("the Policy," Dkt. No. 58-6, Ex. 1), and several COVID-19 vaccine guidance materials issued by government agencies. ("RJN," Dkt. No. 58-5.)

The SAC incorporates the Policy in its allegations. Documents that are not physically attached to a complaint may be considered "when the authenticity of the documents is not disputed and the plaintiff's complaint necessarily relies on the documents." Bryan v. Wal-Mart Stores, Inc., 669 F. App'x 908, 909 (9th Cir. 2016) (citing Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001)). The Policy is subject to judicial notice.

Defendants also request judicial notice of guidance issued by the U.S. Food and Drug Administration ("FDA"): Antibody Testing Is Not Currently Recommended to Assess Immunity After COVID-19 Vaccination: FDA Safety Communication. (Dkt. No. 58-6, Ex. 2.) The guidance is made publicly available by a government entity and is subject to judicial notice.

Plaintiffs object to the content in various documents, not their authenticity, that are subject to judicial notice and suggest various alterations. (Dkt. No. 60-2.) Plaintiffs misunderstand what is judicially noticeable. The Court's judicial notice of a document does not mean that it takes as true of any scientific findings in the cited sources for the purposes of this Motion. Rather, the Court takes judicial notice of the fact that a particular entity issued a statement or guidance in the document. For example: although Plaintiffs dispute the veracity of the CDC's scientific findings on masks and vaccines (which forms the basis of their objections), Plaintiffs cannot reasonably dispute the fact that the CDC has issued that guidance, nor do they.

The Court declines to take judicial notice of the remaining fourteen exhibits because they are not necessary to the resolution of this Motion.

**C. Standing**

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may challenge jurisdiction either on the face of the pleadings or by presenting extrinsic evidence for the court's consideration. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004) (holding a jurisdictional attack may be facial or factual). Where an attack is facial, the court confines its inquiry to allegations in the complaint. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). When ruling on a facial jurisdictional attack, courts must "accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." De La Cruz v. Tormey, 582 F.2d 45, 62 (9th Cir. 1978) (cleaned up). However, the plaintiff bears the burden of alleging facts that are legally sufficient to invoke the court's jurisdiction. Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014).

Plaintiffs' complaint must meet Article III's standing requirements to establish subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Maya v. Centex Corp., 658 F.3d 1060, 1067 (9th Cir. 2011). Federal courts may only interpret actual "cases" or "controversies" under U.S. Const. art. III § 2. California v. U.S. Dep't of Homeland Sec., 476 F. Supp. 3d 994, 1004 (N.D. Cal. 2020). Plaintiffs must allege the following to establish standing: (1) "[plaintiffs] must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical," (2) "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court," and (3) "it must be likely as opposed to merely speculative that the injury will be redressed by a favorable decision." Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992) (internal citations and quotations omitted).

1. **America's Front-Line Doctors ("FLD")**

Organizations may assert standing in two ways; either on behalf of their own members, see Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 181 (2000), or in their own right, Havens Realty Corp. v. Coleman, 455 363, 378-79 (1982).

FLD alleges that it is a non-partisan, not-for-profit organizations of "hundreds of member physicians" who represent "a range of medical disciplines and practical experience on the front lines of medicine." (SAC ¶ 13.) FLD's "programs focus on a number of critical issues" which include providing "Americans with science-based facts about COVID-19," "protecting physician independence from government overreach," "fighting medical cancel culture and media censorship," "advancing healthcare policies that protect the physician-patient relationship," "expanding COVID-19 treatment options," and "strengthening the voices of frontline doctors in the national healthcare conversation." (Id. ¶ 14.) FLD "member physicians" believe that "inject[ing] young people with the experimental COVID-19 vaccine is truly irreparable [because] such harm strikes at the moral and ethical underpinnings of their calling as a physician…" (Id. ¶ 20.)

   a. **Independent Standing**

An organization can demonstrate that it has independent standing to sue by showing "both a diversion of resources and a frustration of its mission." La Asociavion de Trabajadores de Lake Forest v. City of Lake Forest, 624 F.3d 1083, 1088 (9th Cir. 2010). "Standing emerges from the fact that the organization itself could not avoid suffering an injury as a result of the challenged policy or diverting resources to avoid the injury." Meister v. City of Hawthorne, 2014 WL 3040175 , *6 (C.D. Cal. May 13, 2014). The allegations do not indicate that the Policy has resulted either in a "diversion of resources" or a frustration of [FLD's] mission." La Asociacion de Trabajadores, 624 F.3d at 1088.

FLD "member physicians" believe that "inject[ing] young people with the experimental COVID-19 vaccine is truly irreparable [because] such harm strikes at the moral and ethical underpinnings of their calling as a physician…" (Id. ¶ 20.)   First, FLD's member physicians' moral or ethical qualms against the COVID-19 vaccine are not tantamount to an injury. Second, no Plaintiff has received the vaccine and there are no allegations to support a theory that Defendants will require vaccination without exemptions. (Opp. at 9-10.) In its Opposition, FLD argues that "the harm the organization suffers" is that FLD "cannot write medical exemptions based on prescreening," which is not alleged in the SAC. (Opp. at 11.) Further, FLD fails to allege that it has diverted resources as a result of the Policy. Thus, FLD fails to demonstrate independent standing.

### b. Associational Standing[3]

When an association asserts standing solely on behalf of its members, it "must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." Warth v. Seldin, 422 U.S. 490, 511 (1975). The three-prong test for associational standing requires that the organization show:

> (a) Its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members of the lawsuit.

Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, X (1977).

The requirement that an association may only sue on behalf of its members is a meaningful constitutional limitation on associational standing. Meister, 2014 WL 3040175, *7 (C.D. Cal. May 13, 2014) (citation omitted). "Associational standing is reserved for organizations that express the[] collective views and protect the [ ] collective interests[] of their members," Cal. Cmties. Against Toxics v. Armorcast Prod. Co., 2015 WL 519083, *3 (C.D. Cal. Feb. 9, 2015) (citations and internal quotations omitted), thus "the association's members must possess sufficient indicia of membership—enough to satisfy the purposes that undergird the concept of associational standing: that the organization is sufficiently identified with and subject to the influence of those it seeks to represent as to have a personal stake in the outcome of the controversy." Id. (citing Or. Advocacy Ctr. V. Mink, 322 F.3d 1101, 1111 (9th Cir. 2003)) (internal quotations omitted). At this stage of the proceedings, the Court does not require evidence to determine whether the association's members possess sufficient indicia of membership. However, the allegations fail to allege associational standing.

Plaintiffs argue that FLD has established standing because Individual Plaintiffs are FLD members. The Court does not agree. FLD is an "organization of hundreds of member **physicians**," which tracks the official name of the organization, "America's Frontline Doctors." (SAC ¶ 13) (emphasis added). Individual Plaintiffs, however, are not doctors—they are two undergraduate students, one graduate student, and one law student. (Id. ¶¶ 20-23.) The SAC merely alleges that the Individual Plaintiffs are "non-physician Citizen Corps member[s]" of FLD. (Id.) This equivocation is insufficient to confer standing. Plaintiffs fail to explain how Individual Plaintiffs' membership in FLD's "non-physician Citizen Corps" is equivalent to being a member of a group comprised of "hundreds of member physicians." In fact, the only mention of the "non-physician Citizen Corps" is in relation to each Individual Plaintiffs' alleged membership, while there are at least sixteen references to FLD's "member physicians" or health

---

[3] Plaintiffs fail to allege the first Hunt requirement, thus the Court declines to address the remaining two requirements.

care professionals, which indicates that the two groups should not be considered a single membership group for associational standing.

Defendants' Motion is GRANTED as to FLD's standing. FLD is DISMISSED from the SAC.

**2. Individual Plaintiffs**

As noted above, no Plaintiff has been vaccinated or forced to be vaccinated. Three Plaintiffs have received religious exemptions. (SAC ¶ 177; Opp. at 9-10.) These Plaintiffs allege that Defendants "coerc[ed]" them into the "unnatural false choice" between vaccination and "disclosing under duress their religious beliefs to Defendants" in requesting an exemption. (SAC ¶ 177.) They also allege that they are harmed by the Policy which requires unvaccinated or not fully vaccinated people to be regularly tested for COVID-19, and wear masks indoors, which applied to both unvaccinated and vaccinated people at the time of filing. (See SAC.) Although Plaintiffs' allegations as to their injuries are unclear, the Court interprets that the additional burdens imposed upon exempted unvaccinated individuals, as alleged, constitute Plaintiffs' injuries and they have standing to pursue their claims at this stage of the proceedings.

Ms. Page, however, has not applied for an exemption. (Opp. at 9-10.) The Court assumes that even though Ms. Page is enrolled in school, she cannot register for in-person classes because she has received neither a vaccine nor an exemption. As a result, she is not subject to the Policy's testing or mask requirements. Thus, she cannot allege a Fourth or First Amendment injury and does not have standing to pursue those claims.

**D. Fourteenth Amendment Substantive Due Process**

"The substantive component of the Due Process Clause forbids the government from depriving a person of life, liberty, or property in such a way that…interferes with rights implicit in the concept of ordered liberty." Engquist v. Oregon Dep't of Agri., 478 F.3d 985, 996 (9th Cir. 2007) (internal quotations and citations omitted). "Substantive due process protects individuals from arbitrary deprivation of their liberty by government." Sylvia Landfield Tr. v. City of Los Angeles, 729 F.3d 1189, 1195 (9th Cir. 2013). Only "the most egregious official conduct can be said to be arbitrary in the constitutional sense." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) (internal quotations and citations omitted). "To constitute a violation of substantive due process, the alleged deprivation must shock the conscience and offend the community's sense of fair play and decency." Sylvia Landfield, 729 F.3d at 1195 (internal quotations and citations omitted). The "shock the conscience" standard is satisfied "where the conduct was intended to injure in some way unjustifiable by any government interest or in some circumstances if it resulted from deliberate indifference." Rosales-Mireles v. United States, --- U.S. ---, 138 S. Ct. 1897, 1906 (2018) (internal quotations and citations omitted).

1. **Standard of Review**

The Due Process Clause "provides heightened protection against government interference with certain fundamental rights and liberty interests." Washington v. Glucksberg, 521 U.S. 702, 720 (1997). The Supreme Court has established a "threshold requirement—that a challenged state action implicate a fundamental right—before requiring more than a reasonable relation to a legitimate state interest to justify the action." Id. at 722. To determine the correct level of scrutiny to apply, the Court determines whether Plaintiffs have identified a fundamental right that is violated by the Policy.

Plaintiffs aver that "Defendants' vaccine mandates, together with the additional bodily intrusion mandates based expressly thereon (namely forced testing and masking), violate the…right of self-determination, personal autonomy, and bodily integrity, as well as the right to reject medical treatment." (SAC ¶ 130.) Plaintiffs appear to clarify that the fundamental right at stake is bodily integrity, drawn from Cruzan v. Director, Mo. Dep't of Health, 497 U.S. 261, 278 (1990). (SAC ¶¶ 130-35.) However, courts follow a "tradition of carefully formulating the interest at stake in substantive-due-process cases." Glucksberg, 521 U.S. at 722. In Glucksberg, the Supreme Court clarified that Cruzan's narrow holding "assumed that the Constitution granted competent persons a 'constitutionally protected right to refuse lifesaving hydration and nutrition.'" Glucksberg, 521 U.S. at 723 (quoting Cruzan, 497 U.S. at 279). The Vaccine Policy does not concern the same liberty interests; Plaintiffs are not refusing "lifesaving hydration and nutrition." Kheriaty v. Regents of University of California, 2021 WL 4714664, *5 (C.D. Cal. Sept. 29, 2021). They seek an injunction against the University of California's community-wide COVID-19 vaccination mandate against an infectious disease.

The Supreme Court considered the same liberty interest at stake in Jacobson v. Massachusetts, 197 U.S. 11, 29 (1905). Kheriaty, 2021 WL 4714664, *5. Jacobson involved a challenge to a Massachusetts law which provided for cities to enforce vaccination for smallpox if "necessary for the public health and safety." 197 U.S. 11, 12 (1905). Plaintiffs unsuccessfully endeavor to distinguish their case from Jacobson. The SAC is a thinly disguised policy argument against COVID-19 vaccination in favor of alternative treatments/prophylactics/prior "natural" immunity. Although Plaintiffs maintain that the smallpox vaccine at issue in Jacobson was safer because it was based on "decades old science,"[4] there were vocal vaccine critics who filed documents in support of Mr. Jacobson's challenge.[5] The Supreme Court found that their offers of proof:

---

[4] Plaintiffs do not provide a citation for this proposition, which is not in Jacobson.

[5] Mr. Jacobson also argued that "vaccination does not tend to prevent smallpox, but tends to bring about other diseases, and that it does much harm, with no good." (Id. at 34.) The Court "conceded that some laymen, both learned and unlearned, and some physicians of great skill and repute, do not believe that vaccination is a preventative of smallpox." (Id.) However, the "common belief" which existed at the time—though not universal—was that the [vaccine] not (continued . . . )

> [S]eem[ed] to have had no purpose except to state the general theory of those of the medical profession who attach little or no value to vaccination as a means of preventing the spread of smallpox, or who think that vaccination causes other diseases of the body.

Jacobson, 197 U.S. at 30. The Court explicitly acknowledged that it did not and could not decide whether vaccination was a preventative of smallpox, and that the science behind vaccination could prove to be wrong.[6] (Id. at 35.) That calculus was—and remains—strictly within the purview of the state's authority to require vaccination for public health under police powers. Plaintiffs fail to establish that the Policy implicates a fundamental right. Accordingly, rational basis review is applicable here.

The two-tiered rational basis inquiry first asks whether the challenged law has a legitimate purpose and then evaluates whether the challenged law promotes that purpose. Erotic Serv. Provider Legal Educ. and Research Project v. Gascon, 880 F.3d 450, 457 (9th Cir. 2018). When a court applies rational basis review, the government policy carries "a strong presumption of validity." F.C.C. v. Beach Commc'ns, 508 U.S. 307, 314-15 (1993) (citation omitted). "Those attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might support it." Id. (internal quotations and citations omitted). That presumption exists "even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous." Romer v. Evans, 517 U.S. 620, 632 (1886). The government has "no obligation to produce evidence to sustain the rationality of a statutory classification." Heller v. Doe, 509 U.S. 312, 320 (1993).

The stated purpose of the Policy is to facilitate protection of the health and safety of the University community from COVID-19. (See Policy.) "Stemming the spread of COVID-19 is unquestionably a compelling interest." Diocese of Brooklyn v. Cuomo, 141 S. Ct 67 (2021). This is sufficient to establish that the Policy has a legitimate purpose which satisfies the first step of rational basis review.

Under the second step, courts "do not require that the government's action actually advance its stated purposes, but merely look to whether the government could have had a legitimate reason for acting as it did." Wedges/Ledges of California, Inc. v. City of Phoenix, 24 F.3d 56, 66 (9th Cir. 1994). Plaintiffs argue that individuals with prior infection have superior immunity to the virus, thus the Policy is not rationally related to the goal of public safety. However, the question at hand is not whether the Policy is the best approach, but whether Defendants could have had a legitimate reason for acting as they did. Kheriaty, 2021 WL 6298332, *8. The Policy indicates that Defendants considered scientific literature and evidence before they developed the Policy, even if it is not the scientific literature Plaintiffs prefer. Given the number of people within

---

only had a tendency to prevent the spread, but also "render [smallpox] less dangerous to those who contract it." (Id.)

the University community, Defendants' conclusion that the policy was necessary to protect public health is rational.

The Court finds that the Policy survives rational basis review and that Plaintiffs' substantive due process claim fails as a matter of law. While the Court is skeptical that Plaintiffs can allege a substantive due process claim on amendment, the substantive due process claim is DISMISSED WITH LEAVE TO AMEND.

### E. State Created Danger

"[T]he general rule is that [a] state is not liable for its omissions." Munger v. City of Glasgow Police Dep't, 227 F.3d 1082, 1086 (9th Cir. 2000). As such, the Fourteenth Amendment "generally does not confer any affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests." Patel v. Kent Sch. Dist., 648 F.3d 965, 971 (9th Cir. 2011). "There are two exceptions to this rule: (1) when a 'special relationship' exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the state-created danger exception)." Id. at 971-72 (citations omitted). The "danger creation" exception provides that state actors may be held liable where they affirmatively place an individual in danger, and they act with deliberate indifference to that danger. Kennedy v. City of Ridgefield, 439 F.3d 1055, 1062 (9th Cir. 2006) (citations omitted). The two exceptions apply where defendant(s)' **omission** to pursue a course of conduct or failure to protect violated a plaintiff's constitutional or statutory rights. Patel, 648 F.3d at 972.

It appears that Plaintiffs' "state-created danger" cause of action is based upon both the state-created danger and special relationship doctrines. They allege that Defendants have placed Plaintiffs in a situation of "involuntary vaccination," "a position of actual, particularized danger based upon the deliberate indifference of Defendants to a known and obvious danger of" the COVID -19 vaccine. (SAC ¶ 166.) Plaintiffs also allege that they are "in a special relationship with Defendants, in that Plaintiffs are students enrolled at UC campuses." (Id. ¶ 169.) Both claims fail.

"To succeed on [a state-created danger] claim, [plaintiffs] must establish three elements. First, [plaintiffs] must show that [defendants'] affirmative actions created or exposed her to an actual, particularized danger that [they] would not otherwise have faced. Second, [they] must show that the injury [they] suffered was foreseeable. Third, [they] must show that [defendants were] deliberately indifferent to the known danger." Martinez v. City of Clovis, 943 F.3d 1260, 1271 (9th Cir. 2019).

Plaintiffs fail to establish a state-created danger claim for several reasons; the Court need not list them all because "by its very nature, the doctrine only applies in situations in which the plaintiff was directly harmed **by a third party**…" Id. (citing Henry A. Willden, 678 F.3d 991, 1002 (9th Cir. 2012) (emphasis in original). Plaintiffs do not allege that a third party harmed

them, and that Defendants failed to protect against that third party. Thus, Plaintiffs' state-created danger claim fails at the outset.

The special-relationship exception applies when a state "takes a person into its custody and holds him there against his will." Patel, 648 F.3d at 972. The types of custody triggering the exception are "incarceration, institutionalization, or other similar restraint of personal liberty." Id. (citations omitted.) "When a person is placed in these types of custody, we allow due process claims against the state for a fairly simple reason: a state cannot restrain a person's liberty without also assuming some responsibility for the person's safety and well-being." Id. (citations omitted.) The state's constitutional duty arises "not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which [the State] has imposed on his freedom." Id. (citations omitted.) The special-relationship exception does not apply when a state fails to protect a person who is not in custody. Id. (citing DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 195-202 (1989)). Even when school attendance is mandatory, parents—not the state—remain the student's primary caretakers. (Patel at 973.)

Plaintiffs are not in custody; they are UC undergraduate and graduate students. (See SAC.) Plaintiffs do not allege that Defendants are their primary caretakers. Thus, Plaintiffs cannot allege a substantive due process violation under the special relationship doctrine.

The Court finds that amendment would be futile because Plaintiffs cannot establish a substantive due process violation under either the state-created danger or special relationship theory. Thus, Defendants' Motion is GRANTED as to Plaintiffs' state-created danger claim WITHOUT LEAVE TO AMEND.

**F. Equal Protection**

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws" and therefore requires the state to treat all "similarly situated" people equally. See Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008). To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause, plaintiffs must show that defendants acted with an "intent or purpose to discriminate against the plaintiff based upon membership in a protected class." Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013). Plaintiffs must show that defendants acted in a "discriminatory manner" and that the discrimination was "intentional." Bingham v. City of Manhattan Beach, 341 F.3d 939, 948 (9th Cir. 2003). "Intentional discrimination" means that defendants acted "at least in part because of [plaintiffs'] protected status." Serrano v. Francis, 345 F.2d 1071, 1082 (9th Cir. 2003).

Plaintiffs vaguely allege an equal protection claim based on a "class of one," which does not depend on a suspect classification such as race or gender. The "class of one" theory requires Plaintiffs to allege that they have been (1) "intentionally treated differently from others similarly situated" and (2) "there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); see also Gerhart v. Lake County, Mont., 637

F.3d 1013, 1022 (9th Cir. 2011).  "Such circumstances state an Equal Protection claim because, if a state actor classifies irrationally, the size of the group affected is constitutionally irrelevant." Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008).  The rationale is that "[w]hen those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires a rational reason for the difference, to assure that all persons subject to legislation or regulation are indeed being 'treated alike, under like circumstances and conditions.'" Engquist v. Oregon Dep't of Agric., 553 U.S. 591, 602 (2008).

Plaintiffs fail to plead sufficient facts to establish that they were treated differently from others similarly situated.  Plaintiffs state that the "vaccine mandates create two classes of students: vaccinated and unvaccinated.  The members of one class, the unvaccinated, get treated in a punitive way, unable to enjoy normal campus life, activities and school and subjected to irrational testing and masking.  The other class, the vaccinated, gets to enjoy all the normal rights and privileges." (SAC ¶ 157.)  Plaintiffs misunderstands the class-of-one doctrine, in which a plaintiff must claim that she has been "irrationally singled out as a so-called 'class of one.'" Engquist, 553 U.S. at 601.  The plaintiff in a "class of one" action does not allege that the defendants discriminate **against a group with whom she shares characteristics**, but rather that the defendants simply harbor animus **against her in particular** and therefore treated her arbitrarily.  See N. Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008) (emphasis added) ("When an equal protection claim is premised on unique treatment rather than on a classification, the Supreme Court has described it as a 'class of one' claim." (citing Olech, 528 U.S. at 564)).  Plaintiffs' allegations cannot support a class of one claim because the claim is based on vaccination classification.  Plaintiffs do not allege that they were treated arbitrarily on an individual basis because each individual who is unvaccinated is subject to the Policy.

Thus, Defendants' Motion is GRANTED as to Plaintiffs' equal protection claim.  The Court DISMISSES the equal protection claim WITHOUT LEAVE TO AMEND.

### G.  Fourth Amendment Privacy Claim

Plaintiffs allege that masks violate their right to privacy because it requires them to "publicly display their [unvaccinated] status." (SAC ¶ 171.)  They also allege that testing violates their right to privacy because it requires them to "give routine samples of their DNA-containing bodily fluid to Defendants for laboratory testing." (Id. ¶ 172.)

The Fourth Amendment protects against unreasonable searches and seizures.  Florida v. Jimeno, 500 U.S. 248, 500 (1991).  Although searches conducted without reasonable suspicion are generally prohibited, exceptions may apply where the government has "special needs, beyond the normal need for law enforcement." Griffin v. Wisconsin, 483 U.S. 868, 873 (1987).  Fourth Amendment intrusions unrelated to law enforcement purposes are analyzed under the special-needs rubric.  See Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 653 (1995).  Such a search is constitutional when special, non-law enforcement needs make obtaining a warrant or determining the existence of probable cause "impracticable." Id.

To determine whether a special-needs exception applies, a court must balance four factors: (1) the nature of the privacy interest affected; (2) the character of the intrusion; (3) the nature and immediacy of the government concern; and (4) the efficacy of this means of addressing the concern.  See id. at 654-64.

Defendants argue that the Policy's masking and testing requirements do not amount to a violation of the right to privacy under the Fourth Amendment because (1) Plaintiffs have not alleged that they have worn a mask or participated in testing and (2) under the "special needs" exception to the Fourth Amendment, the testing is constitutional.  (MTD at 21-22.)

Plaintiffs fail to respond to Defendants' arguments; failure to oppose constitutes waiver or abandonment of the issue.  Stichting Pensioenfonds ABP v. Countrywide Fin. Corp., 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011).   In what the Court determines is a vague, non-responsive Fourth Amendment argument, Plaintiffs claim for the first time[7] that "mandatory testing is disfavored in American law."  (Opp. at 18.)  With regard to the latter argument, Plaintiffs rely on three non-binding, out of circuit cases. [8]  None of them supports such a broad proposition.  (Id.)

The Court GRANTS Defendants' Motion as to Plaintiffs' Fourth Amendment claim, which is DISMISSED WITHOUT LEAVE TO AMEND.

**H.  First Amendment Religious Freedom**

Plaintiffs contend that Defendants' enforcement of the Policy violates their right to free exercise of religion.  The SAC alleges that Defendants "coerc[e] students to make an unnatural choice…either quickly injecting themselves…[with a COVID-19 vaccine]…or…disclosing under duress their religious beliefs to Defendants' religious exemption approval panels."  (SAC ¶ 177.) They also contend that Defendants "prejudicially segregate religious people in order to subject them to…testing."  (Id. ¶ 178.)  Plaintiffs have religious exemptions from the Policy.  Even so, Plaintiffs contend that testing and masks "substantially interfere with students' religious practices of prayer, speech, and deed."  (Id. ¶ 180.)  A bare assertion of religious belief is insufficient to establish a religious belief or to distinguish it from a personal belief.  See Middleton v. Pan, 2016 WL 11518596 (C.D. Cal. Dec. 15, 2016) ("A way of life, however virtuous and admirable, may not be imposed as a barrier to reasonable state regulation of education if it is based on a purely secular consideration; to have the protection of the Religion Clauses, the claims

---

[7] Plaintiffs allege that "invasive testing" violates the Due Process Clause and free exercise under the First Amendment, but not under the Fourth Amendment.  (SAC ¶¶ 146, 178.)

[8] Two of the cases involve blood draws: the first in the employment context, where the blood test was mandatory, and the second arose out of school's policy of conducting blood tests on minor children without parental consent.  (Opp. at 18.)  The third case involves a mandatory urinanalysis drug test in the employment context, which stated a claim for violation of a Connecticut statute, not the Fourth Amendment.  Tomick v. United Parcel Service, Inc., 511 F. Supp. 2d 235, 240 (D. Conn. 2007).

must be rooted in religious belief.") (citations omitted)).[9] However, the Court will proceed in the analysis as if Plaintiffs had established a claim.

The Free Exercise Clause of the First Amendment, incorporated through the Fourteenth Amendment, prohibits laws "prohibiting the free exercise" of religion. U.S. Const., amend. I. The threshold inquiry is whether a challenged law is "neutral or generally applicable." Employment Div., Dep't of Human Res. of Oregon v. Smith, 394 U.S. 872, 881 (1990). If a law is neutral and of general applicability, that law "need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 531 (1993). Instead, rational basis review applies.

The Policy is a neutral and generally applicable. It applies to all students, professors, and staff at the University of California and seeks to protect public health and safety. Defendants offer exemptions for religious beliefs, medical reasons, and disability. (See Policy.) The Policy's exemptions pass constitutional muster. See Church of the Lukumi Babalu Aye, Inc., 508 U.S. at 537 ("[I]n circumstances in which individualized exemptions from a general requirement are available, the government may not refuse to extend that system to cases of religious hardship without compelling reason.") (internal quotations and citations omitted). Plaintiffs allege that they requested religious exemptions under "duress" but fail to explain how their decisions to voluntarily submit a one-page exemption form were executed under "duress." Plaintiffs also fail to describe how masks and testing interfere with the students' religious practices of prayer, speech, and deed. Plaintiffs are only required to mask while indoors—a restriction that also applied to vaccinated students at the time the SAC was filed. Presumably Plaintiffs would be indoors to attend class, so it is unclear how the Policy interferes with religious practices.

Further, the allegation that Defendants "prejudicially segregate religious people" contradicts Plaintiffs' equal protection argument that the Policy discriminates against "unvaccinated students" through "forced testing and masking." (Compare SAC ¶¶ 160, 164 with ¶ 178.) The SAC alleges that both unvaccinated students **generally** and unvaccinated students with religious exemptions are subject to the same requirements under the Policy. (Id.) Unvaccinated status is not synonymous with holding a religious belief. One may be unvaccinated for reasons unrelated to religion, which is why the Policy provides for medical and disability exemptions. Plaintiffs do not—and it appears they could not—allege that unvaccinated students with religious exemptions are subject to different or additional restrictions than unvaccinated students with a medical or disability exemption.

The Court GRANTS the Motion as to Plaintiff's Free Exercise claim, which is DISMISSED WITH LEAVE TO AMEND.

---

[9] Undoubtedly, "[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds." Hernandez v. Comm'r of Internal Revenue, 490 U.S. 680, 699 (1989). However, Plaintiffs must state a faith.

## V. CONCLUSION

For the reasons above, the Court GRANTS the Motion. Plaintiff FLD is DISMISSED for lack of standing. Plaintiffs' substantive due process and Free Exercise claims are DISMISSED WITH LEAVE TO AMEND; the state created danger, equal protection, and Fourth Amendment claims are DISMISSED WITHOUT LEAVE TO AMEND. An amended complaint, if any, shall be filed by May 13, 2022. The May 9, 2022 hearing is VACATED.

**IT IS SO ORDERED.**